



**FILED**

NOV – 2 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

**R. ALEXANDER ACOSTA**, Secretary of Labor,
United States Department of Labor,

                    Plaintiff,

          v.

**AEU BENEFITS, LLC,**
**AEU HOLDINGS, LLC,**
**BLACK WOLF CONSULTING, INC.,**
**SD TRUST ADVISORS, LLC,**
**and the AEU HOLDINGS, LLC**
**EMPLOYEE BENEFIT PLAN,**

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

: **CIVIL ACTION NO.**

:

1:17-cv-07931
Judge Joan H. Lefkow
Magistrate Judge Sheila M. Finnegan

### COMPLAINT

**R. ALEXANDER ACOSTA**, Secretary of the United States Department of Labor ("the Secretary"), alleges:

1.    The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., which establishes, among other things, standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans.

2.    ERISA ensures "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively, and

1

prudently in the interests of plan participants.  ERISA § 404(a)(1)(A) and (B), 29 U.S.C.

§ 1104(a)(1)(A) and (B).

3.      ERISA prohibits fiduciaries from using plan assets for their own benefit, ERISA

§ 406(b), 29 U.S.C. § 1106(b), or in transactions with or for the benefit of "parties in interest," as

defined in ERISA § 3(14); 29 U.S.C. § 1002(14), ERISA § 406(a), 29 U.S.C. § 1106(a), unless

those transactions meet the strict requirements of statutory, class, or individual exemptions.

ERISA § 408, 29 U.S.C. § 1108.

4.      When ERISA's strict fiduciary standards are not met, the Secretary has the

authority to seek relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and

1132(a)(2) and (5), to restore plan losses, to recover unjust profits, and to obtain other remedial

and equitable relief.  The Secretary may also seek to enjoin a breaching fiduciary from acting as

a fiduciary or service provider to employee benefit plans in the future.


**BACKGROUND**

5.      Defendants **AEU HOLDINGS, LLC** ("AEU Holdings") and **AEU BENEFITS,**

**LLC** ("AEU Benefits") (collectively, "AEU Defendants"), and **BLACK WOLF**

**CONSULTING, INC.** ("Black Wolf") (collectively "defendants") operate a multi-employer

welfare arrangement ("MEWA") to provide health and welfare benefits for employer-sponsored

ERISA-covered employee benefit plans.  As set forth more fully below, the AEU Defendants and

Black Wolf are fiduciaries with control over the plan assets and management of at least 261

ERISA-covered plans participating in the MEWA ("Participating Plans").

6.      Contributions received from the Participating Plans are pooled together as part of

the MEWA for purposes of paying participant and beneficiary claims.  The contributions are

pooled in at least two offshore accounts in Bermuda ("Bermuda Accounts") that are controlled by the AEU Defendants.

7.     As a result of the defendants' fiduciary breaches, alleged more fully below, the assets of the Participating Plans are used to pay excessive fees and expenses to the defendants and to the other service providers, and re-insurance providers retained to provide services to the Participating Plans through the MEWA. Due to the considerable amount of undisclosed fees removed from the contributions paid by the Participating Plans, the remaining contributions are insufficient to cover the claims costs, resulting in over $26 million in unpaid, processed claims, covering the time period of January 1, 2016 to October 2, 2017.

8.     Even though the defendants owe a duty of prudence and loyalty to all of the Participating Plans' participants and beneficiaries, they have breached their fiduciary duties and engaged in prohibited transactions causing a loss of ERISA-covered plan assets, resulting in millions in unpaid medical claims. Nevertheless, the defendants continue to pay themselves exorbitant fees and enroll new, unsuspecting employers in the MEWA. Meanwhile, current participants and beneficiaries are receiving collections notices and forgoing life-saving treatments. Based on the ever growing backlog of unpaid claims, the declining number of participating employers, and the continual payment of excessive fees, the MEWA will not be able to pay all outstanding and future claims and is on the verge of collapse.

9.     The Secretary now brings this suit for declaratory and injunctive relief including a temporary restraining order and preliminary injunction that removes Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** as fiduciaries and service providers of the Participating Plans, and appoints an independent fiduciary to take control of the MEWA, the Participating Plans, and their assets. In addition to

the foregoing, this suit also seeks a final judgment to undo the prohibited transactions, to recover any residual losses to the Participating Plans, to permanently bar all defendants from acting as an ERISA fiduciary or service provider in the future, and for other remedial and equitable relief.

## JURISDICTION AND VENUE

10.     This action arises under ERISA and is brought by the Secretary to obtain relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). The subject of the Secretary's Complaint is a non-ERISA covered MEWA encompassing employer-sponsored ERISA-covered employee benefit plans (*i.e.*, the Participating Plans) to provide medical and other health and welfare benefits to employees and eligible employee dependents.

12.     Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Defendant Black Wolf, headquartered in Monee, Will County, Illinois, resides within this Court's jurisdiction. In addition, several of the alleged breaches took place within, and the MEWA is partially administered by Black Wolf within this Court's jurisdiction. The MEWA is marketed to employers, medical benefits are provided, and claims are paid for participants and beneficiaries in this forum and the state of Illinois generally. As of October 18, 2017, this included at least 1,697 Illinois residents, 229 of them residents of the City of Chicago. Based on information presently available to the Secretary, Illinois residents account for over 25 percent of participants in the MEWA's Participating Plans.

## PARTIES

13.     The Secretary is vested with the authority to enforce the provisions of Title I of

ERISA by, among other means, the filing and prosecution of civil claims against fiduciaries and

other parties who violate ERISA. ERISA § 502(a)(2) & (5), 29 U.S.C. § 1132(a)(2) & (5).

14.     Defendant AEU Holdings, LLC Employee Benefit Plan ("AEU Plan") is the name

of the MEWA that provides benefits and holds assets for at least 261 ERISA-covered

Participating Plans. For the remainder of this Complaint, the MEWA is referred to as the "AEU

Plan," while the ERISA-covered plans participating in the MEWA are referred to as the

"Participating Plans." Each Participating Plan was established or maintained by an employer for

the purpose of providing medical and other health and welfare benefits pursuant to ERISA §

3(2), 29 U.S.C. § 1002(2), and is thus an employee benefit plan pursuant to ERISA § 3(3), 29

U.S.C. § 1002(3). As an entity with authority and control over ERISA-covered plan assets, the

AEU Plan is subject to the provisions of Title I of ERISA. Because each Participating Plan is

covered by ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a), the Participating Plan's assets

controlled by the AEU Plan are also subject to coverage of ERISA pursuant to section 4(a), 29

U.S.C. § 1003(a). The AEU Plan is named as a defendant herein pursuant to Rule 19(a) of the

Federal Rules of Civil Procedure to assure that complete relief can be granted.

15.     Defendant AEU Benefits is a Texas limited liability company, formed on or about

July 1, 2015. Defendant AEU Benefits exercises authority and control over the assets of the

Participating Plans covered by the AEU Plan and over the management and administration of the

Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of

the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and

(iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

16.     Defendant AEU Holdings is a Delaware limited liability company, formed on or

about December 12, 2014.  Defendant AEU Holdings exercises authority and has control over

the assets of the Participating Plans covered by the AEU Plan and over the management and

administration of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and

thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C.

§ 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. §

1002(14)(A).

17.     The names AEU Benefits and AEU Holdings are used interchangeably on various

AEU Plan documents, with the shortened form "AEU" also being used frequently in documents

and by the Defendants themselves.  As it is difficult to decipher to which entity "AEU" refers,

the term AEU Defendants is used in this Complaint to refer to AEU Benefits and AEU Holdings

collectively.

18.     Defendant Black Wolf is an Illinois corporation, formed on or about November

24, 2013.  Defendant Black Wolf's sole client is the AEU Plan.  Defendant Black Wolf exercises

authority and has control over the assets of the Participating Plans covered by the AEU Plan and

exercises authority and discretionary control over the management of the Participating Plans

covered by the AEU Plan and the AEU Plan itself, and thus is a fiduciary of the Participating

Plans pursuant to ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest

pursuant to ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

19.     Defendant SD Trust Advisors, LLC ("SD Trust") is a District of Columbia limited

liability company formed on or about December 12, 2016.  SD Trust's sole client is the AEU

Plan. SD Trust provides services to the Participating Plans by holding the assets of the

Participating Plans in SD Trust's name at Iberia Bank, and paying money out of these accounts

to other service providers at the AEU Defendants' direction, and thus, is a party in interest

pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). SD Trust is named as a defendant

herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete

relief can be granted.

## GENERAL ALLEGATIONS

### A. The AEU Plan is a Multiple Employer Welfare Arrangement

20.     On April 26, 2016, AEU Holdings purchased all of the operations and assets of

ALLInsurance Solutions Management, LLC ("ALLInsurance"). The effective date of the sale

was backdated to March 31, 2016. ALLInsurance operated a health benefits program in which

employers from multiple industries across the United States would enroll and pay monthly

contributions to receive health care benefits for their employees. AEU took over this program

when it purchased ALLInsurance.

21.     This program has been referred to in the past and present by many names,

including the Veritas Employee Benefits Plan, Employers Network Association Plan, PHCS

Multi-Plan Network, CIGNA VEBA Trust Program, VEBA Health Benefit Plan, Black Wolf

Plan, Veritas Plan, and AEU Benefit Plan. For purposes of this Complaint, the program is

referred to as the AEU Holdings, LLC Employee Benefit Plan ("AEU Plan"), as reflected in the

AEU Holdings, LLC Plan Document and Summary Plan Description effective January 1, 2016.

22.     The AEU Plan operates as a non-ERISA covered MEWA. Participating

employers are headquartered in multiple States across the Country and come from a wide range

of industries. There is no evidence of common control among the participating employers, nor any cohesive bond. Participating employers are heterogeneous and unrelated, with the only common purpose being a shared desire for employee medical coverage under a self-funded benefit plan.

23.     Although the AEU Plan itself is not an ERISA-covered plan, employers sponsor Participating Plans that comprise the AEU Plan, each of which is covered by ERISA and which imposes fiduciary responsibilities on the Defendants.

24.     The Participating Plans obtain medical and other health and welfare benefits, including dental, vision, and prescription drug benefits, for their employees through their participation in the AEU Plan. The AEU Plan offers 36 different coverage and deductible options.

25.     The Participating Plans were created with the intent to provide benefits, and have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits. When participating employers transfer employee and employer contributions to the AEU Plan on behalf of the Participating Plans, it is the employers' intent that these contributions are to be used to pay for claims and necessary administrative expenses.

26.     Black Wolf provided the Secretary with 135 agreements labeled "VEBA Trust Agreement and Declaration of Trust" ("VEBA Trust Agreement"), which demonstrate the existence of individual plans, signed by employers between January 1, 2016 to October 31, 2016. Each Agreement designates the participating employer as the "Employer Sponsor."

27.     VEBA stands for "Voluntary Employees' Beneficiary Association," a type of trust fund established for tax purposes by the Internal Revenue Service ("IRS"). Upon information and belief, the Participating Plans do not meet the requirements to be classified as

VEBAs under Internal Revenue Code § 501(c)(9), nor to the Secretary's knowledge have defendants ever filed the necessary paperwork for the AEU Plan or its Participating Plans to receive VEBA classification with the IRS.

28.     The majority of participating employers did not complete a "VEBA Trust Agreement."

29.     Each VEBA Trust Agreement is signed by an official on behalf of the "Employer Sponsor," and also by a "Trustee" (typically a manager of the participating employer).  Each Agreement provides, "[t]his Agreement and the Fund are intended to meet all of the requirements of ERISA and no part of the net earnings of the Fund shall inure (other than payment of such benefits) to any private shareholder or individual."  The "Fund" is defined as "the trust estate created and maintained hereunder, which shall consist of contributions or otherwise, and any other property received and held by the Trustee for uses and purposes set forth in this Agreement."

30.     The AEU Plan Document and summary plan descriptions state that the AEU Plan provides medical benefits paid from employer and employee contributions.

### B.  Marketing and Enrollment in the AEU Plan

31.     Part of Black Wolf's role is to market the AEU Plan to employers, along with numerous sub-brokers working on behalf of Black Wolf.

32.     The marketing materials describe the AEU Plan as a "VEBA health plan" with multiple benefit options, available to employers of all sizes in all 50 states with identical contribution rates each year for all participating employers, regardless of location or industry. The importance of volume purchasing, *i.e.*, pooling employers to obtain benefits at lower prices, is emphasized.

33.     The marketing materials further state that each participating employer is its own self-funded trust, and the "premium equivalents represent the maximum cost to a participating employer and their employees for the coverage period paid for." Any surplus is supposed to "remain as client funds for [the Participating Plan's] future use."

34.     The AEU Plan is described as "a group self-insured health benefits program that feels like a fully-insured plan."

35.     With respect to fees, the marketing materials outline as follows: "Other than the cost for plan and coverage elected[,] 2 other fees apply[:] (1) A one[-]time case set up fee of $100.00 applies. That is 1 fee for all members under a group plan. (2) A $20.00 per month billing fee applies on an ongoing basis."

36.     An employer desiring to participate in the AEU Plan completes Black Wolf's enrollment forms. Black Wolf then processes these enrollment forms and transfers this information to the claims administrator. Black Wolf is also responsible for processing any changes to enrollment each month.

### C. Contributions and Invoices

37.     Black Wolf is also responsible for billing employers and collecting Participating Plans' contributions to remit to the AEU Plan.

38.     Each month, Black Wolf sends each of the Participating Plans an invoice detailing the amount owed to the AEU Plan. The employers then pay contributions to Black Wolf, which is made up of employer and employee contributions. The percentage of the contribution that is made up of employer and employee contributions varies by each employer and is set by the employer.

10

39.     The AEU Defendants determine the "base" contribution amounts to be charged to the Participating Plans, and the AEU Defendants provide these rates to Black Wolf on a yearly basis.

40.     The invoices provided to the Participating Plans disclose a list of participants, description of the plan for each participant, "price each" for each participant, and a $20.00 monthly billing fee paid to Black Wolf.

41.     Black Wolf imposes its own fees on top of the contribution amounts set by AEU. Participating Plans are unaware that Black Wolf assesses these additional fees, ranging anywhere from 17 to 50 percent of the assessed contributions, to the invoiced "price each" amounts. Black Wolf's undisclosed additional fees are simply lumped together with the contribution on the invoices received by the Participating Plans.

42.     After receiving contributions from the Participating Plans each month, Black Wolf takes its additional fees from the payment received and forwards the remaining "base" contributions to the asset custodian, SD Trust Advisors, LLC ("SD Trust"). Black Wolf also pays its sub- brokers from these undisclosed additional fees.

43.     An Administration Agreement provided to some of the Participating Plans states that the amounts paid by Participating Plans will be used to pay benefits or contributions on behalf of the AEU Plan and for no other purposes.

44.     A trust agreement provided to some of the Participating Plans states that the employers are creating a trust to segregate employer and employee contributions from other company assets "to fund the welfare benefit claims, stop loss insurance, and necessary administrative expenses."

45.     A Small Employer Benefits Trust Agreement provided to a limited number of the Participating Plans states that each Participating Plan's contributions shall be deposited in the bank accounts for the AEU Plan and no part of the AEU Plan's funds shall inure to any private person.

46.     Marketing materials provided to some Participating Plans discuss a $20 monthly billing fee and $100 "set up fee." No other fees are disclosed.

47.     These documents combined with Black Wolf's failure to separate the "base" contribution from its own additional fees, have led and continue to lead Participating Plans to believe that the entire amounts paid to Black Wolf were and are plan assets.

48.     The Participating Plans' contributions become plan assets once remitted to Black Wolf.

### D.  Administration and Governing Documents

49.     SD Trust is owned and operated, in part, by Tom Stoughton, one of ALLInsurance's former managers. SD Trust is responsible for holding Participating Plans' assets, receiving the "base" contributions from Black Wolf, forwarding these amounts to the Bermuda Accounts, paying service providers, and remitting payments to the claims administrator.

50.     Pursuant to several plan documents, SD Trust is the named Plan Administrator and Trustee. However, these documents are unsigned, and SD Trust states that it performs its duties solely at the AEU Defendants' direction.

51.     At the AEU Defendants' direction, SD Trust transfers funds to and from the Bermuda Accounts (discussed in more detail below), pays service providers and administration fees, pays the AEU Defendants and its subsidiary CoreCare, and pays itself. SD Trust maintains

the Participating Plans' assets in various accounts with Iberia Bank, but it does not have individual accounts for each Participating Plan.

52. In addition to setting the "base" contribution rates as discussed *supra*, the AEU Defendants are responsible for hiring and firing service providers, serving as the final decision-maker regarding enrollment of new employers, and overseeing the operation of the AEU Plan and the Participating Plans.

53. In a letter to Participating Plans, Black Wolf referred to the AEU Defendants as the "plan managers."

54. Additionally, AEU Holdings is named as the Plan Sponsor and Plan Administrator in the "AEU Holdings, LLC Plan Document and Summary Plan Description," effective January 1, 2016 ("Plan Document"). This plan document was a template created by Tall Tree and signed by Stephen Satler. Mr. Satler is the Chief Executive Officer of the AEU Defendants. The current claims administrator, Benefit Plan Administrators, Inc. ("BPA"), received this same plan document when it began providing services in December 1, 2016, and currently relies on this document to process claims.

### E. Bermuda Accounts

55. The Participating Plans' contributions received from Black Wolf, less Black Wolf's "fees," are forwarded by SD Trust to two off-shore accounts in Bermuda, called First Bermuda Purchasing Trust ("BPT1") and Second Bermuda Purchasing Trust ("BPT2"). The contributions sent by SD Trust to BPT1 and BPT2 are not segregated by Participating Plan.

56. BPT2 is in the name of Omnium Trust company Limited ("Omnium"), a Bermuda company, at The Bank of N.T. Butterfield & Son Limited in Bermuda ("Bank of Butterfield").

57. BPT1 is in the name of State House Trust Co. Lmt., a Bermuda company, also at Bank of Butterfield.

58. Both BPT1 and BPT2 hold plan assets of the Participating Plans to pay the AEU Plan's claims.

59. The operations of BPT1 and BPT2 appear to be the same, but different entities perform the administrative functions for the two accounts. Upon information and belief, the AEU Defendants created BPT2 in order to separate the unfunded claims for 2016 from all claims going forward in 2017.

60. Pursuant to a trust agreement, State Street is the Trustee of BPT1 with ALLInsurance as the "Protector" who controls the trust and its assets. AEU purchased ALLInsurance and now has the rights and powers of ALLInsurance as the "Protector."

61. Pursuant to a trust agreement, Omnium is the Trustee of BPT2 and certain powers are given to a defined "Protector" under the contract. The "Protector" is Halo Insurance Group ("Halo"), another Bermuda company. Halo's directors are Stephen Satler, Steven Goldberg, and James Kilduff. Stephen Satler and Steven Goldberg are also officers of the AEU Defendants. The "Protector" under BPT2 is responsible for determining if participating employers have rights to the assets in the account, to terminate employers' rights to the trust, for the accounting of contributions paid into the account, to direct the payment of all AEU Plan assets to pay claims to either the "Plan Administrator" or the "Third Party Administrator," and the power to remove the trustee.

62. Currently, AEU authorizes certain funds to be paid to one of the AEU Plan's current claims administrators and the funds are either paid from SD Trust's account with Iberia

Bank or one of the Bermuda Accounts. AEU directs SD Trust how much to transfer to and from the Bermuda Accounts.

63.     In addition to sending the money to the Bermuda Accounts, SD Trust also receives the Participating Plans' assets back from BPT1 and BPT2, and then sends money to pay claims to the third-party claims administrators.

64.     Some of the Participating Plans' assets in the Bermuda Accounts are used to pay for stop-loss insurance policies with Hannover Life Reassurance Company of America and Lloyds of London.

65.     The majority of Participating Plans' assets in BPT1 are transferred to a "segregated account" managed by Uberrimae Fidei Insurance Company, Ltd. ("Uberrimae"), another Bermuda company. The bulk of Participating Plans' assets in BPT2 are transferred to another "segregated account" called "AEUB #1 Segregated Account," managed by a Bermuda entity called R&Q Quest Insurance ("R&Q").

66.     For both BPT1 and BPT2, the AEU Plan pays for reinsurance to cover high-dollar claims. For BPT1, claims over $125,000 were to be covered by reinsurance, and for BTP2, the reinsurance pays claims over $175,000.

67.     The AEU Defendants continue to route all AEU Plan and Participating Plans' assets to Bermuda and continue to have full control these assets.

### F. Service Providers

68.     On January 1, 2016, Tall Tree Administrators, Inc. ("Tall Tree") entered into a contract with AEU Holdings to serve as the AEU Plan's claims administrator, to administer all claims received from participants in the Participating Plans. Tall Tree served as claims administrator for the AEU Plan and Participating Plans until December 1, 2016.

69. Tall Tree ceased providing services on December 1, 2016, after receiving notice of a letter sent to Participating Plans by Black Wolf that the AEU Defendants had terminated Tall Tree as claims administrator.

70. The AEU Plan's main current claims administrator is BPA, which took over administrative duties from Tall Tree on December 1, 2016.

71. On or about December 1, 2016, BPA entered into an administrative services agreement with AEU Benefits to provide claims administration services for the AEU Plan and thus the Participating Plans.

72. Before paying claims, the claims administrator confirms with Black Wolf whether participants or beneficiaries are enrolled. Black Wolf is responsible for enrolling participants and beneficiaries in BPA's system.

73. Claims are administered based on the Plan Document and a Summary of Benefits and Coverage ("SBC") for each health plan. Black Wolf provided the SBCs to BPA.

74. After approving claims, the claims administrator contacts the AEU Defendants and SD Trust to request payment.

75. Typically, at AEU's direction, SD Trust sends a lump sum amount of money to the claims administrator via wire transfer to pay claims, without any itemized breakdown of where the funds should go. The claims administrator then distributes the sums based on the order in which claims were incurred.

76. Additional claims administrators also administer claims for the AEU Plan, including Capital Administrators, Taylor Benefit Resources, Inc., Pequot Health Care, and Benefit Administrative Systems, LLC.

### G. Unpaid Claims

77.    On or about June 2016, the AEU Plan stopped transferring plan assets to Tall Tree to pay processed claims.  In August or early September 2016, the AEU Plan began transferring plan assets to Tall Tree so it could pay claims again, but only paid a fraction of the amounts owed.

78.    As of October 6, 2017, of the claims Tall Tree processed, there were approximately $15 to $16 million that remain unpaid.

79.    Unpaid claims continued after BPA took over as claims administrator.  In 2017, SD Trust did not forward the full amount of funds requested by BPA to pay claims.  Beginning February 13, 2017, BPA began sending weekly "unfunded claims registers" to the AEU Defendants and SD Trust.

80.    BPA began complaining to the AEU Defendants about the unpaid claims beginning in early March 2017.

81.    As of July 31, 2017, the unpaid claims processed by BPA totaled $5,798,011.92.

82.    In July 2017, BPA was receiving over 2,000 calls per week from participants and beneficiaries covered by Participating Plans in the AEU Plan, and informed the AEU Defendants of this call volume in an email dated August 1, 2017.

83.    On August 7 and 14, 2017, SD Trust wired approximately $946,000.00 to BPA for payment of claims.  Still, as of September 1, 2017, there remained $5,135,723.75 in unpaid claims.

84.    As of October 2, 2017, there were $11,761.545.41 in unpaid claims administered by BPA, in addition to the approximately $15 to $16 million in unpaid claims administered by Tall Tree.

85.     As a result of these unpaid claims, Participating Plan participants and beneficiaries are receiving collections notices from medical providers and forgoing treatment.

86.     Numerous Participating Plan participants have contacted Black Wolf, BPA, Tall Tree, the Department of Labor's Employee Benefits Security Administration, and other administrative agencies seeking payment of claims.

87.     The number of Participating Plans in the AEU Plan has been steadily declining as a result of unpaid claims, with employers seeking out alternative health care options for their employees.

88.     Defendant Black Wolf is named as a defendant in at least two lawsuits relating to the AEU Plan. *See Employers' Innovative Network, LLC v. Black Wolf Consulting, Inc.*, No. 17C-1-H (Cir. Ct. Raleigh County, W. Va.); *PFS HR Solutions, LLC v. Black Wolf Consulting, Inc.*, No. 1:17-cv-00277-JRG-SKL (E.D. Tenn.).

<u>COUNT ONE</u>

**The AEU Defendants Failed to Appoint a Named Trustee and
Keep Plan Assets in Trust within the United States**

89.    Paragraphs 1-88 above are incorporated by reference.

90.    The AEU Plan documents do not identify a trustee for the AEU Plan or the
Participating Plans.

91.    The AEU Defendants have not specifically appointed a trustee for the AEU Plan
or the Participating Plans.

92.    The AEU Plan and Participating Plans' assets are held in accounts first in Black
Wolf's name, then SD Trust's name, and finally in various accounts in Bermuda.  Neither Black
Wolf, nor SD Trust, nor any Bermuda entity was named trustees of the AEU Plan or
Participating Plans.

93.    Some of the VEBA Trust Agreements completed by employers to enroll in the
AEU Plan designate a representative of the employer as a trustee.  In practice, these
representatives play no role in the management or administration of the Participating Plans or the
AEU Plan, and no assets are held in their name.  Furthermore, most employers did not sign one
of these VEBA Trust Agreements.

94.    AEU Plan and Participating Plans' assets are held in at least two off-shore bank
accounts in Bermuda, outside of the jurisdiction of the United States.

95.    By the actions and failures to act as described above, Defendants **AEU
HOLDINGS** and **AEU BENEFITS**:

A.    failed to hold all assets of an employee benefit plan in trust by one
or more trustees named in the trust instrument or plan instrument or appointed by a

person who is a named fiduciary, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

        B.     maintained the indicia of ownership of plan assets outside the jurisdiction of the district courts of the United States, in violation of ERISA § 404(b), 29 U.S.C. § 1104(b).

96.     As a result of the foregoing breaches of duty, Defendants **AEU BENEFITS** and **AEU HOLDINGS** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief.  ERISA § 409, 29 U.S.C. § 1109.

97.     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendant **BLACK WOLF** is liable for the breaches of its co-fiduciaries as described above, because it knowingly participated in or concealed an act or omission of its co-fiduciaries, knowing that such act or omission was a breach; it enabled its co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and it had knowledge of a fiduciary breach by its co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

COUNT TWO

**The AEU Defendants Pay Themselves and Others Unreasonable Aggregate Administrative Fees and Expenses from Plan Assets**

98.     Paragraphs 1-97 above are incorporated by reference.

99.     The AEU Defendants are fiduciaries and parties-in-interest to the   Participating Plans.

100.    The AEU Defendants are responsible for managing the AEU Plan and Participating Plans, monitoring service providers, hiring and firing services providers, and controlling expenses.

101.    The AEU Defendants permit Black Wolf to continue to collect a fee that ranges from between 17 and 44 percent of the contribution amounts Black Wolf charges the participating employers in the AEU Plan.

102.    The AEU Defendants caused the AEU Plan and Participating Plans to maintain at least two accounts in Bermuda, incurring unnecessary management fees, trustee fees, and attorney fees.

103.    The AEU Defendants caused the AEU Plan and Participating Plans to pay substantial fees for compliance with certain federal reporting requirements, but these reporting requirements are not being met.

104.    The AEU Defendants caused the AEU Plan and Participating Plans to pay for excessive reinsurance, amounting to $10.5 million in reinsurance costs in 2016, when this insurance only covered $3.5 million in claims.

105.    The AEU Defendants also pay themselves from the AEU Plan and Participating Plans' assets, including a program management fee of approximately 11 to 13 percent of the expected claims cost, as well as a separate management fee of approximately 2.5 percent to a subsidiary called CoreCare.

106.    The AEU Defendants caused the AEU Plan and Participating Plans to pay aggregate administrative fees and expenses that represent 41 percent of the contribution amounts Black Wolf charged to the participating employers in the AEU Plan.  Including Black Wolf's fees, the expenses are well over 50 percent of the contribution amounts.

21

107. By the actions and failures to act as described above, Defendants **AEU HOLDINGS** and **AEU BENEFITS**:

      A.      failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

      B.      failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

      C.      used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the and Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

      D.      used the Participating Plans' assets in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the AEU Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

      E.      dealt with assets of the Plans in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

108. As a result of the foregoing breaches of duty, Defendants **AEU BENEFITS** and **AEU HOLDINGS** caused losses to the ERISA-covered employee benefit plans participating in

the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

COUNT THREE

**Black Wolf Takes Undisclosed, Excessive Compensation from Plan Assets**

109.     Paragraphs 1-108 above are incorporated by reference.

110.     Black Wolf is a fiduciary and party-in-interest to the Participating Plans.

111.     Black Wolf adds an undisclosed amount of additional compensation to the monthly contributions it bills to each Participating Plan. Black Wolf makes no effort to inform Participating Plans of these fees.

112.     Black Wolf sets its own compensation, and the amount of compensation varies among Participating Plans and for different plan options (*e.g.*, Self, Family, *etc.*). Whereas the AEU Defendants have designated 36 different contribution rates for the 36 different plan options, Black Wolf is charging 192 different contribution rates to various employers.

113.     Black Wolf's compensation ranges from 17 to 44 percent of the contribution assessed per participant.

114.     The AEU Defendants approved Black Wolf assessing a contribution "spread," which is assessed at Black Wolf's discretion, on top of the contributions charged to Participating Plans.

115.     Neither Black Wolf nor the AEU Defendants have disclosed Black Wolf's additional compensation to the Participating Plans. Black Wolf's invoices issued to Participating Plans combine Black Wolf's "spread" and the "base" contribution amount for each participant, such that the two are indistinguishable, and simply labels the amount due as the "Price Each."

The marketing materials presented to the Participating Plans disclose only two fees: (1) a one-time, $100 set-up fee, and (2) a $20 monthly billing fee. The Participating Plans have no way of knowing the amount of additional compensation collected by Black Wolf for the various plan options.

116. The AEU Defendants have acknowledged that Black Wolf's setting of rates was done in an "ad hoc" manner.

117. From the plan assets that Black Wolf retains, it also pays a portion of its "fees" to the sub-brokers working on its behalf, pursuant to contractual obligations or other agreements with these brokers.

118. Given the disproportionate amount of fees assessed and Black Wolf's payment from plan assets of portions of these fees to brokers who provide no services to the AEU Plan or the Participating Plans, Black Wolf's undisclosed compensation is excessive and unreasonable, and does not constitute an ordinary and necessary plan expense.

119. By the actions described above, Defendant **BLACK WOLF**:

A. failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

B. failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B

24

        C.      used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

        D.      used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

        E.      dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

        F.      acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

120.    As a result of the foregoing breaches of duty, **BLACK WOLF** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief.  ERISA § 409, 29 U.S.C. § 1109.

121.    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants **AEU HOLDINGS** and **AEU BENEFITS** are liable for the breaches of their co-fiduciaries because, as described above, they knowingly participated in or concealed an act or omission, knowing that such act or omission is a breach; they enabled the other fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach and did not make reasonable efforts under the circumstances to remedy it.

<u>COUNT FOUR</u>

**The AEU Defendants and Black Wolf Failed to Pay Claims, and Failed to
Disclose Both the AEU Plan's Failure to Pay Claims and the Inadequate Plan Funding
to Existing and New Participating Plans**

122.    Paragraphs 1-121 above are incorporated by reference.

123.    The AEU Defendants and Black Wolf are fiduciaries and parties-in-interest with respect to the Participating Plans.

124.    Starting in the summer of 2016, the AEU Plan stopped paying most claims.  Since that time the AEU Plan has been unable to pay medical claims for all participants and beneficiaries.

125.    The AEU Defendants and Black Wolf have been aware of unpaid claims since being put on notice in fall of 2016, continuing throughout 2017.

126.    The amount of unpaid claims continues to rise, suffering from a significant funding shortage with current unpaid claims exceeding $26 million.

127.    The current claims administrator, BPA, has sent numerous emails to the AEU Defendants requesting funding to pay the unpaid claims in 2017.  On July 26, 2017, BPA sent an email to the AEU Defendants noting the very high call volumes BPA was receiving as a result of unpaid claims.

128.    Employers and brokers contacted Black Wolf directly regarding unpaid claims in 2017.

129.    In March 2017, the AEU Defendants acknowledged that the AEU Plan is materially underfunded with approximately 21,000 unpaid claims.

130.    Despite these unpaid claims, Black Wolf continues to attempt to enroll new employers in the AEU Plan without advising them of the AEU Plan's inability to pay claims.

131.     Neither Black Wolf nor the AEU Defendants have disclosed the fact that the AEU Plan is unable to pay claims to either the current or newly enrolled Participating Plans, while unwitting participants and beneficiaries continue to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims.

132.     By the actions and failures to act as described above, Defendants **AEU HOLDINGS, AEU BENEFITS,** and **BLACK WOLF**:

> A.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

> B.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

133.     As a result of the foregoing breaches of duty, **AEU BENEFITS, AEU HOLDINGS,** and **BLACK WOLF** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

134.     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants **AEU BENEFITS, AEU HOLDINGS,** and **BLACK WOLF** are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary

duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary

breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to

remedy it.

WHEREFORE, the Secretary asks that this Court enter an Order:

1.     Preliminarily and permanently removing Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction, as fiduciaries, service providers, trustees, and administrators of the Participating Plans or the AEU Plan;

2.     Preliminarily and permanently enjoining Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction from acting as a fiduciary, service provider, trustee, or administrator to the Participating Plans or the AEU Plan.

3.     Preliminary enjoining SD Trust Advisors, LLC and their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction from moving AEU Plan or Participating Plans assets, except at the direction of the Independent Fiduciary defined in Paragraph Four.

4.     Appointing Receivership Management, Inc. ("Independent Fiduciary") as the independent fiduciary, successor Trustee and Plan Administrator to the AEU Plan and Participating Plans, with full and exclusive fiduciary authority over their administration and management, and full and exclusive control over the AEU Plan and Participating Plans' assets, including, but not limited to:

a. Authority to exercise all fiduciary responsibilities relating to the AEU Plan and Participating Plans;

b. Authority to take exclusive control of all plan assets of the AEU Plan and the Participating Plans.

c. Authority given to trustees under the terms of the documents governing the AEU Plan and Participating Plans;

d. Authority to amend the documents governing the AEU Plan;

e. Exclusive authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers as the Independent Fiduciary shall, in the Independent Fiduciary's sole discretion, determine are necessary to aid the Independent Fiduciary in the exercise of the Independent Fiduciary's powers, duties, and responsibilities to the AEU Plan and Participating Plans;

f. Authority to conduct an accounting of all medical claims and negotiate all medical claims;

g. Authority to terminate the AEU Plan and Participating Plans, if in the best interest of the AEU Plan and Participating Plans and, in that event, to establish a claims submission deadline and to adjudicate all claims filed by such deadline and to deny claims not filed by the claims submission deadline;

h. Authority to adjudicate and pay or deny any and all claims submitted to the AEU Plan and Participating Plans;

i.   Authority to pursue recovery of monies owed and due to the AEU Plan and Participating Plans from any person obligated to make such payments under the terms and conditions of the AEU Plan and Participating Plans;

j.   Authority to identify and pursue recovery of AEU Plan and Participating Plans' assets as well as any monies to which the AEU Plan or and Participating Plans have a right of recovery;

k.   Authority to identify and pursue claims on behalf of the AEU Plan and Participating Plans;

l.   Except as provided herein, the authority to delegate to such administrators, trustees, attorneys, employees, assigns, agents, and service providers such fiduciary responsibilities as the Independent Fiduciary shall determine appropriate.  The Independent Fiduciary may not, however, delegate the authority to appoint, replace and remove such administrators, trustees, attorneys, employees, assigns, agents, and service providers or the responsibility to monitor the activities of AEU Plan and Participating Plans' trustees, attorneys, agents, and service providers; and

m.   Authority to pay itself reasonable and necessary fees from the AEU Plan and Participating Plans' assets and pay the reasonable and necessary fees of service providers.

5.      Requiring Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** to restore all losses they caused to the Participating Plans;

6.  Requiring Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** to jointly and severally reimburse the fees and expenses of the Independent Fiduciary to the AEU Plan and Participating Plans;

7.  Requiring Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** to disgorge to the AEU Plan all profits and fees and other monies earned in connection with their violations;

8.  Permanently enjoining Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC,** and **BLACK WOLF CONSULTING, INC.,** or anyone acting on their behalf including their principals, officers, directors, owners, agents, assigns or subsidiaries, from ever acting as a fiduciary or service provider to any plan covered by Title I of ERISA and from marketing or enrolling any employers, professional employer organizations, or participants in any ERISA or non-ERISA covered health plan or any plan purporting to provide any type of medical benefits; and

9.  Granting such other relief as may be equitable, just, and proper.

For the Secretary:

**NICHOLAS C. GEALE**
Acting Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

Bruce C. Canetti
Trial Attorney

Brooke E. Worden
Trial Attorney

Ruben R. Chapa
Counsel for ERISA

Attorneys for **R. ALEXANDER ACOSTA,**
Secretary of Labor, United States
Department of Labor, Plaintiff

**P.O. ADDRESS**:
U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn St.
Room 844
Chicago, IL 60604
T: (312) 353-3271
F: (312) 353-5698
Canetti.bruce@dol.gov
Worden.brooke.e@dol.gov