**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **R. ALEXANDER ACOSTA,** | ) | |
| Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) | **1:17-cv-07931-JHL-SMF** |
| | ) | |
| **AEU BENEFITS, LLC,** | ) | |
| **AEU HOLDINGS, LLC,** | ) | |
| **BLACK WOLF CONSULTING, INC.,** | ) | |
| **SD TRUST ADVISORS, LLC,** | ) | |
| and the **AEU HOLDINGS, LLC** | ) | |
| **EMPLOYEE BENEFIT PLAN,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF INDEPENDENT FIDUCIARY'S MOTION 1) TO TERMINATE ALL AEU PLANS AND PARTICIPATING PLANS, EXCEPT AS TO THOSE PLANS RELATED TO THE AEUB-2 SEGREGATED ACCOUNT/FOCUS HEALTH SOLUTIONS AND 2) FOR AEU TO SHOW CAUSE WHY FUNDS HELD IN THE AEUB-2 SEGREGATED ACCOUNT ARE NOT PLAN ASSETS COVERED BY THE PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Comes now the Independent Fiduciary appointed by the Court in this matter, Receivership Management, Inc., through its undersigned counsel, to submit this Memorandum of Law in Support of Independent Fiduciary's contemporaneously filed Motion 1) To Terminate All AEU Plans and Participating Plans Except as to Those Plans Related to the AEUB-2 Segregated Account/Focus Health Solutions and 2) for AEU to Show Cause Why Funds Held in the AEUB-2 Segregated Account are not Plan Assets Covered by the Preliminary Injunction.

## II. BACKGROUND

As set forth in more detail herein, the Court's November 3, 2017 Ex Parte Temporary Restraining Order (DE # 14), and its recently entered Preliminary Injunction (DE #59), give the

Independent Fiduciary the authority to terminate the AEU Plan and Participating Plans, as defined in those orders, if such was in the best interest of the AEU Plan and Participating Plans. (DE #14 at ¶ 13.f.; DE #59 at ¶ 14.f.). Through its Motion, the Independent Fiduciary recommends that termination of the AEU Plan and the Participating Plans, with the one exception noted immediately below, is in the best interest of those Plans.

However, as set forth in the Preliminary Injunction, there is a lack of consensus as to whether plans associated with a particular Bermuda segregated account - i.e. AEUB#2 – are plans covered by the Court's orders and whether the funds contained in the AEUB#2 segregated account are plan assets available to the Independent Fiduciary. (DE #59 at ¶ 10). Based upon the Independent's Fiduciary's current knowledge, AEUB#2 is a Bermuda segregated account that holds funds in relation to plans that were aggregated by an entity known as Focus Health Solutions. Because of the lack of consensus (as demonstrated by the Preliminary Injunction) regarding the funds in AEUB#2, the Independent Fiduciary moves the Court to set a Show Cause Hearing for AEU (and other entities interested in the AEUB-2/Focus Health Solutions matter) to demonstrate why the funds held in the AEUB-2 Segregated Account are not Plan Assets covered by the Preliminary Injunction - i.e. whether the funds in the AEUB-2 segregated account and/or Focus Health Solutions plans are, or are not, part of this case.

### III. TERMINATION OF ALL AEU PLANS AND PARTICIPATING PLANS EXCEPT THOSE ASSOCIATED WITH AEUB-2/FOCUS HEALTH SOLUTIONS

**A.    Plans Recommended for Termination**

The Independent Fiduciary asserts that its analysis set forth below supports the termination of the AEU Plan and all Participating Plans other than those associated with AEUB-2/Focus Health Solutions, the latter being excluded from the request to terminate because of the

above-referenced "lack of consensus" regarding the AEUB#2 account. The Participating Plans

that are covered by the following analysis include those under the following "aggregators":

Black Wolf Consulting
Veritas
OEM America
AGC Las Vegas
Quality Business Solutions
PMI
Corporate Solutions

A copy of this Motion is being sent to all of these entities, or to their counsel, known by the

Independent Fiduciary.

**B.      Assets Available to Independent Fiduciary/Unpaid Claims Information**

The Independent Fiduciary has done an analysis of the assets possessed by the AEU Plan

and Participating Plans as well as claims that are known. As of the end of November, 2017, the

AEU Plan and Participating Plans, excluding the amounts in the AEUB#2 account[1], have assets

covered by the Preliminary Injunction Order of $11,726,106. (*See* Exhibit A to Motion.) As

reported to the Independent Fiduciary by the numerous third party administrators associated with

the AEU Plan and Participating Plans, as of mid-December 2017, the total outstanding and

expected claims amount, excluding the claims that could be associated with AEUB#2/Focus

Health Solutions[2], is approximately $45,380,623 (*see* Exhibit B to Motion). That analysis shows

---

[1]      Current information shows that the AEUB#2 Segregated Account has approximately $559,714.
As set forth herein, that $559,714 would not have impact on termination of the AEU Plan and
Participating Plans because the $559,714 amount is well short of the shortfall as between available assets
and outstanding claims even if the AEUB#2 funds are made available to the Independent Fiduciary.

[2]      The Independent Fiduciary is informed that there are no outstanding claims or amounts owed
relating to the Focus Health Solution group/AEUB-2, other than those which have not been paid since the
Court's November 3, 2017 TRO. Upon information received by the Independent Fiduciary, the post-
November 3, 2017 amounts claimed as owed by the Focus Health Solutions group is approximately
$106,775.00, which consists of $22,000.00 in processed claims and $84,775.00 in premiums owed on a
reinsurance/stop loss policy.

that there is a total of $33,528,663 in claims that have been processed, but not paid and an expected claims amount of $11,851,960 in claims that have not been processed[3]. Therefore in comparing assets available to the total unpaid claims, a deficit of approximately $33,654,517 exists.

The analysis of the Independent Fiduciary does not include post-November 3, 2017 payments to pharmacy vendors associated with the AEU Plan and/or Participating Plans. Under the discretion afforded it under the Injunction Orders, the Independent Fiduciary has consented to 100% payment of various pharmacy claims from the funds over which it has control. This has been done in an effort to keep pharmacy vendors from exiting the plans prior to the completion of the analysis as to whether termination should or should not be recommended. Accordingly, the amount of assets available to the Independent Fiduciary set forth above – i.e. the $11.7 million – is after it has made various pharmacy claim payments. The unpaid claim amount set forth above (i.e. the $45,380,623 amount) does not, to the Independent Fiduciary's investigation, contain material amounts of pharmacy claims for the bulk of the AEU Plan and Participating Plans, but the Independent Fiduciary has received pharmacy vendor claims on an on-going basis, and presently is paying those claims at 100%, at the approximate rate of $50,000/week. These pharmacy payments would continue until the applicable plans are terminated. Likewise,

---

[3]       There is an amount of some $21,916,646.20 of unprocessed claims reported by BPA and an amount of some $1,117,407 of unprocessed claims reported by Taylor. *See* Exhibit B. Based on conversations between the Independent Fiduciary and representatives of BPA, it is expected that the unprocessed claim amount would be reduced by 50% through the review and claim processing procedure. Accordingly, the Independent Fiduciary sets forth an amount of $10,958,323.10 regarding the unprocessed claims reported by BPA for purposes of the Independent Fiduciary's unpaid claim analysis. Based on conversations between the Independent Fiduciary and Taylor, it is expected that the $1,117,047 unprocessed claim amount would be reduced by 20% through the review and claims processing procedure. Accordingly, the Independent Fiduciary sets forth an amount of $893,637 regarding the unprocessed claims reported by Taylor for purposes of the Independent Fiduciary's unpaid claim analysis. *Id.*

4

the Independent Fiduciary has paid fees owed to various third party administrators so as to maintain the ability to efficiently access claim information and other data needed and the assets set forth as available to it are after payment of those fees.

The only material income for the Plans, at this time, is the collection of premiums from the employee/employer plan participants covered by the Plans. From review of information gathered, the Independent Fiduciary asserts that prior to its appointment through the filing of this action, numerous employer groups had already left/cancelled the AEU Plan and Participating Plans for failure to pay claims. As of November 5, 2017, based on information obtained by the Independent Fiduciary, there were 480 active employer groups under the AEU Plan and the Participating Plans. Since November 5, 2017, that number has decreased by approximately 92 employer groups which have expressly terminated/left the Plans. That number of employer groups exiting the Plans is expected to grow as information regarding lack of payment of premiums (i.e. a de facto exit from the Plans) develops. Only 210 employer groups have paid premiums since November 3, 2017, which translates, to the Independent Fiduciary, that as many as 175 employer groups that were active prior to November 5, 2017 have not paid premiums into the AEU Plan and/or the Participating Plans. That 175 of employer groups that have not paid premiums due, plus the 93 employer groups that have expressly exited the Plans, means that over 55% of employer groups active as of November 5, 2017 have exited or are indicating (through lack of premium payment) that they are exiting the Plans.

Based on this information which demonstrates huge amounts of unpaid claims and a shrinking number of "paying" employer groups, it is the conclusion of the Independent Fiduciary that it will be impossible for it to pay, in full, all of the legitimate claims that have been, and will be submitted for payment relating to the AEU Plan and the Participating Plans.

C.    **Non-viability of Plans Going Forward**

Along with the claims deficit set forth above, the Independent Fiduciary has examined the feasibility of the operation of the AEU Plan and Participating Plans on a going-forward basis. That analysis examined monies incoming to the plans as well as existing obligations of the plans, especially unpaid claims obligations of the AEU Plan and Participating Plans. Such analysis also examined the expected continued participation of necessary entities such as health networks as service providers to the Plans. A number of problems exist that seriously undermine the continued viability of the Plans.

First, the Plans will not continue to receive employer premium payments at the level they had. Indeed, as noted above, numerous employer groups had exited the Plans before the filing of this action due to the failure of the Plans to pay claims. A number of employer groups have ceased their involvement in the AEU Plan and/or Participating Plans since the filing of this action either through express terminations or via non-payment of premiums. Since the filing of this action and the appointment of the Independent Fiduciary, only 210 employer groups have paid premiums for coverage through December 2017, and the gross amount of those premiums is only $431,713.00. If the Plans continue, the Independent Fiduciary would expect the number of employer groups and the amount of monthly premium received from those employer groups to further decrease. Based upon a review of the history of claims, even with a reduced number of employer groups staying with the Plans, the Independent Fiduciary believes, in good faith, that claims made would be in the millions of dollars. In the Independent Fiduciary's opinion, the current premium dollars being paid (here again assuming the unlikely event of no further exits from the Plans) would not be able to address, on an on-going basis, the expected claims.

Second, as shown above, the Plans' existing unpaid claims obligations far exceed funds on hand to pay such claims and the monthly premium dollars being received currently (even if those premium payments continue – which is unlikely to occur) would provide no reasonable amounts to address the huge backlogged amounts of unpaid claims.

Third, because of the existence of the unpaid claims, a number of health networks have ceased providing services to members of the AEU Plan and Participating Plans. The Independent Fiduciary and/or the TPAs (e.g. BPA and Taylor) have received notifications from a number of health networks to this effect.

The problems discussed above warrant the termination of the AEU Plan and Participating Plans (other than those associated with AEUB-2 Focus Health Solutions – there being no consensus as to such) since the cumulative effect of such problems is to render the Plans not viable to continue operations.

**D.    Insurance / Reinsurance Will Not Address the Unpaid Claim Deficit**

The Preliminary Injunction places under the Independent Fiduciary's exclusive control all insurance policies relating to the AEU Plan and Participating Plans. Preliminary Injunction at ¶ 8.h. Analysis of the existence of insurance coverage is part of the analysis leading to the Independent Fiduciary's recommendation that the AEU Plan and Participating Plans (save those relating to the AEUB-2/Focus Health Solutions) should be terminated.

**i)    General Discussion Regarding Insurance/Reinsurance Available**

In general, the insurance/reinsurance in place for the AEU Plan and the Participating Plans fall into two categories. In general, insurance/reinsurance coverage for claims from employee participants whose employer groups joined the AEU Plan or Participating Plans before November 1, 2016 were provided through off-shore Bermuda trusts and segregated accounts.

7

The monies would be deposited in a trust entity known as the Bermuda Purchasing Trust ("BPT-1"). BPT-1 then contracted with Uberrimae Fidei Insurance Company, Ltd. ("UFIC") to provide "primary insurance" as to the claims made through BPT-1. BPT-1 in addition to being the insured under the UFIC policy also purchased stop loss insurance through Lloyd's with, in general, a per person claim/trigger (i.e. attachment point) amount of $125,000.

In general, insurance and reinsurance coverages for claims from employee participants whose employer groups joined the AEU Plan or Participating Plan after November 1, 2016 were also provided through off-shore Bermuda trusts and segregated accounts. The monies would be deposited in a trust entity known as the Second Bermuda Purchasing Trust ("BPT-2") which were, in turn, deposited in a "primary insurance" segregated account in the name of R & Q Quest Insurance Ltd. known as the "AEUB-1 Segregated Account."[4] R & Q Quest then purchased stop loss insurance through Hanover Re with, in general, a per person claim/trigger (i.e. attachment point) amount of $175,000.

As demonstrated through the discussion below, the existence of the "primary insurance" and the stop loss insurance further provides reason to terminate the AEU Plan and Participating Plans.

### a) UFIC/Lloyd's

The nature and circumstances of the "primary insurance" provided by UFIC supports the termination recommended by the Independent Fiduciary. Under documents reviewed by the Independent Fiduciary the amount of exposure that UFIC has as "primary insurer" is limited to

---

[4]     As referenced earlier, there is also an AEUB-2 account held by R & Q Quest over which there is a "lack of consensus" regarding whether the funds are Plan Assets and as to whether the Focus Health Solutions Plans are part of this case. For the purpose of the insurance/reinsurance analysis, the Independent Fiduciary does not include discussion of insurance/reinsurance for AEUB-2/Focus Health Solutions.

the amount maintained in a Bermuda segregated account – UFIC Segregated Account. As shown in **Exhibit 1**, the UFIC Segregated Account has a current balance of $74,153. While it can be debated as to whether the "primary insurance" provided by UFIC was insurance at all, the existence of primary insurance obligated only in the amount of $74,153 does little to address the deficit of unpaid claims, payment of which could call upon that "primary insurance."

The stop loss policy at Lloyd's has, in general, a $125,000.00 per covered individual attachment point. Information available to the Independent Fiduciary indicates that historically while Lloyd's has paid under its stop loss policy, the bulk of the claims submitted relating to BPT-1 were below the trigger point of $125,000. Preliminary review of detail regarding claim runs received from third party administrators of the unpaid claims further indicate such to be the case as to the bulk of the unpaid claims. Because, the Independent Fiduciary, in good faith, believes that most of the unpaid claims related to BPT-1 will be under the $125,000.00 Lloyd's deductible/trigger, the ability to call upon the Lloyd's stop loss policy as to unpaid claims is limited and certainly not expected to be at the point of addressing the bulk of the unpaid claims.

### b) R & Q Quest/Hanover Re

The "primary insurance" provided, as to BPT-2, by R & Q Quest supports the termination recommended by the Independent Fiduciary. Under documents reviewed by the Independent Fiduciary, the amount of exposure that R & Q Quest has as "primary insurer" is limited to the amount in the AEUB-2 account, which is $584,384.66 (**Exhibit 1**). While it can be debated as to whether the "primary insurance" provided by R & Q Quest was insurance at all, the existence of primary insurance obligated only as to $584,384.66 does little to address the deficit of unpaid claims payment of which could call upon that primary insurance.

R&Q Quest contracted with Hanover RE for a stop loss reinsurance policy as to BPT-2. That stop loss insurance policy set forth, in general, a $175,000 per covered individual attachment point. The Hanover Re stop loss policy expired in November 2017 and currently is in runoff. Based upon information provided to the Independent Fiduciary, very few claims have been submitted to Hanover Re, presumably because of the higher $175,000 trigger point. Based upon an initial review of the unpaid claims, the Independent Fiduciary, in good faith, believes that the existence of the Hanover Re policy, currently in runoff, will not address the deficit of unpaid claims.

It is based upon the above-described matters that the Independent Fiduciary seeks the Court's approval of its recommendation that it is in the best interests of the Plans to take action to terminate the AEU Plan and Participating Plans, excepting only the plans associated with Focus Health Solutions/AEUB#2. Therefore, Independent Fiduciary seeks approval to terminate the AEU Plan and Participating Plans using the following termination plan:

First, Independent Fiduciary believes that it is necessary to issue on or before December 29, 2017, a notice to the employer groups and participants of the AEU Plan and Participating Plans (excepting employer groups associated with AEUB-2/Focus Health Solutions) informing them of (1) the current status of the AEU Plan and Participating Plans, (2) that the AEU Plan and all Participating Plans are being terminated, and (3) the Termination Date of January 31, 2018 has been set. Such notice can contain information as to the termination plan including the claims submission deadline.

Second, the Termination Date will be the date after which the AEU Plan and Participating Plans will no longer provide any coverage to any members of the AEU Plan or Participating Plans.

10

Third, the Independent Fiduciary, within a reasonable time after the Termination Date, will submit to the Court, the Secretary, and all other parties a report detailing the results of these termination steps and the establishment of a procedure to be followed in submitting and addressing a claims procedure and other matters related to going forward, which will incorporate the appeal process regarding any adverse claim determination as set forth in Exhibit A to the Preliminary Injunction.

Based on the above, and subject to the one exception related to AEUB-2/Focus Health Solutions for which show cause relief is requested herein, Independent Fiduciary respectfully requests the Court's approval of the termination of the AEU Plan and Participating Plans as well as the Court's approval of the specific steps to be taken to terminate the AEU Plan and Participating Plans set forth above.

## IV. REQUEST FOR SHOW CAUSE HEARING AS TO WHETHER THE FUNDS HELD IN THE AEUB-2 ACCOUNT ARE PLAN ASSETS COVERED UNDER THE PRELIMINARY INJUNCTION ORDER

This Court has both the inherent power to address matters relating to its appointment of an independent fiduciary and, under the Preliminary Injunction, has the express power to do so regarding the enforcement of the appointment of the Independent Fiduciary. Preliminary Injunction at ¶ 25; *see also* ¶ 27 (DE #59).

In the Preliminary Injunction, there is acknowledgment that a lack of consensus exists as to whether the funds existing in the Bermuda account AEUB-2 are assets of the AEU Plan or the Participating Plans. *Id.* at ¶ 10. While the Preliminary Injunction places the funds contained in the AEUB-2 account under the exclusive control of the Independent Fiduciary (*see* ¶ 8.g.), the Preliminary Injunction prohibits the Independent Fiduciary from using the AEUB-2 funds to pay

claims and reasonable and necessary plan expenses because of the lack of consensus as to whether the AEUB-2 funds are assets of the AEU Plan or the Participating Plans (¶ 10).

With such being the situation under the Preliminary Injunction, the Independent Fiduciary is in an awkward position, untenable with the passage of time. On the one hand, the Independent Fiduciary is unable to treat the AEUB-2 account assets as available to pay claims/expenses; on the other hand, the Independent Fiduciary has control over the AEUB-2 account assets which may not be plan assets covered by the Preliminary Injunction in the first instance. Further issues are present as to whether the Focus Health Solution plans, which are tied to the AEUB-2 account, are covered under the Preliminary Injunction such that the Independent Fiduciary can terminate them because there is "lack of consensus" as to whether the funds tied to the Focus Health Solutions plans are plan assets covered by the Preliminary Injunction.

From the language of the Preliminary Injunction, it is clear that AEU is taking the position that the AEUB-2/Focus Health Solutions funds are not plan assets and thus are not covered by the Preliminary Injunction. That being the case, the Independent Fiduciary moves the Court to set a show cause hearing, with appropriate briefing schedule, for AEU to appear and present evidence and argument as to why the funds in the AEUB-2 are separate from the plan assets subject to the Preliminary Injunction. Critical to that determination, from the Independent Fiduciary's perspective, would be a showing that the Focus Health Solution plans (to which AEU maintains the AEUB-2 funds are designated) are or are not Participating Plans under the factors listed at Page 2 of the Preliminary Injunction. Also critical to that determination would be a showing that the flow of employee contributions, from the employers that are aggregated through Focus Health Solutions into and out of AEUB-2 be supported by appropriate trust agreements and/or contracts, that the fees assessed be appropriate and that insurance and/or

reinsurance in relation to the Focus Health Solutions plans provided real risk-bearing, not illusionary, coverage free of gaps in any said coverages.

Because they may want to file papers on the issue, the Independent Fiduciary is sending a copy of this filing to counsel for Focus Health Solutions as well as to counsel for Omnium Trust Co. Lmt. (the trustee of BPT-2 through which the Focus Health Solutions funds flow) and R & Q Quest Insurance Company (the insurance company at issue regarding AEUB-2 and, to the Independent Fiduciary's information, the holder of the AEUB-2 account).

In sum, because there is a "lack of consensus" regarding the nature of the funds held in AEUB-2 which are supposedly dedicated to the Focus Health Solutions plans, a determination by this Court is needed. Accordingly, the Independent Fiduciary moves the Court to set a show cause hearing, with appropriate allowance for briefing, at which AEU and any other interested party can appear and demonstrate that AEUB-2 funds are not plan assets under the Preliminary Injunction and/or that the Focus Health Solution plans are not Participating Plans under the Preliminary Injunction.

## V.     CONCLUSION

The Independent Fiduciary, for the reasons set forth herein, moves the Court for an order:

1)     approving the termination of the AEU Plan and the Participating Plans, excepting the Focus Health Solution plans, as requested herein and

2)     Setting a show cause hearing, with appropriate briefing schedule, for AEU to appear and demonstrate why the funds held in AEUB-2 are not Plan Assets under the Preliminary Injunction Order and/or that the Focus Health Solutions plans are not Participating Plans under the Preliminary Injunction Order.

Respectfully submitted,


_s/ Alan F. Curley_____
Alan F. Curley
ROBINSON CURLEY P.C.
300 South Wacker Drive
Suite 1700
Chicago, Illinois 60606
(312) 663-3100
acurley@robinsoncurley.com


J. Graham Matherne (*pro hac vice* pending)
Andrew J. Pulliam (*pro hac vice* pending)
WYATT, TARRANT & COMBS, LLP
333 Commerce Street, Suite 1400
Nashville, Tennessee 37201
(615) 244-0020
gmatherne@wyattfirm.com
apulliam@wyattfirm.com

*Counsel for Independent Fiduciary*

# EXHIBIT A

**SUMMARY OF ACCOUNT BALANCES**
**LISTED IN PRELIMINARY INJUNCTION**
**(AS OF END OF NOVEMBER, 2017)**

| | | |
|---|---|---|
| I. | BANK OF PONTIAC ACCOUNTS (BLACK WOLF CONSULTING, INC.) | $ 10,426,534.43 |
| II. | BANK OF IBERIA (SD TRUST ADVISORS, LLC) | $ 220,249.16 |
| III. | FIRST FINANCIAL BANK (ASSURANCE COLLECTING & DISTRIBUTING, LLC) | $ 417,411.52 |
| IV. | BERMUDA TRUST & ACCOUNTS (EXCLUDING THE AEUB#2 ACCOUNT OF $559,714.47) | $ 661,911.26 |
| | TOTAL: | $ 11,726,106.37 |

## I. BANK OF PONTIAC ACCOUNT
### BLACK WOLF CONSULTING, INC.

|                              | 10/31/2017    | 11/30/2017      |
|------------------------------|---------------|-----------------|
| **Primary Account 966428**   | 331,157.05    | 1,324,392.96    |
| **MM Account 8501983**       | 8,864,381.07  | 9,025,126.07    |
| **REGIONS - 9962**           |               | 77,015.40       |
| **TOTAL FUNDS**              | 9,195,538.12  | 10,426,534.43   |

**NOTE:**

THIS REPORT ALSO INCLUDE REGIONS ACCT 9962.
REGIONS ACCT 9962 RECEIVES TRANSFERS FROM PONTIAC 966428 FOR TPA & PHARMACY EXPENSES.

II. **BANK OF IBERUA**
   **SD TRUST ADVISORS, LLC**

|  | 10/31/2017 | 11/30/2017 |
|---|---|---|
| ACCOUNT 0054 | (75.07) | 362.94 |
| ACCOUNT 0259 | 1,025.25 | 1,025.25 |
| ACCOUNT 0275 | 5,479.75 | 5,479.75 |
| ACCOUNT 0283 | 67,876.41 | 72,740.24 |
| ACCOUNT 0291 | 2,135.44 | 2,135.44 |
| ACCOUNT 0623 | 980.00 | 980.00 |
| ACCOUNT 0631 | 3,921.02 | 2,308.44 |
| ACCOUNT 0658 | 13,598.54 | 13,598.54 |
| ACCOUNT 6187 | 94.39 | 94.39 |
| ACCOUNT 6195 | 36,547.22 | 36,547.22 |
| ACCOUNT 6233 | 30,828.36 | 30,828.36 |
| ACCOUNT 6241 | 629.92 | 54,163.59 |
| ACCOUNT 0267 |  |  |
| ACCOUNT 6225 |  |  |
| ACCOUNT 6454 |  | (15.00) |
| **TOTAL FUNDS** | 163,041.23 | 220,249.16 |

### III. FIRST FINANCIAL BANK
### ASSURANCE COLLECTING & DISTRIBUTING, LLC ACCT.

|              | 10/31/2017 | 11/30/2017 |
|--------------|-----------:|-----------:|
| FNB - 2628   | 247,796.62 | 262,130.27 |
| FNB - 2560   | 139,416.48 | 94,508.59  |
| FNB - 2610   | -          | -          |
| FNB - 2941   | 24,254.50  | 24,254.50  |
| FNB - 2958   | 36,518.16  | 36,518.16  |
| **TOTAL FUNDS** | 447,985.76 | 417,411.52 |

IV. BLACK WOLF CONSULTING INC.

   BERMUDA TRUST/ ACCOUNT BALANCES

|  | 11/30/2017 |
|---|---|
| BPT1 | 1,153.84 |
| BPT2 • 0033 | 1,464.00 |
| UFIC- 0116 | 74,908.76 |
| AEUB#1 - 0019 | 584,384.66 |
| * AEUB#2 - 0014 | 559,714.47 |
| TOTAL FUNDS | 1,221,625.73 |

NOTE:

   ADDITIONAL REQUEST HAVE BEEN SENT TO RECEIVE MOST RECENT BANK STATEMENTS.
   *FUNDS IN AEUB#2 ACCOUNT ARE DISPUTED AS TO WHETHER THEY ARE PLAN ASSETS
   SUBJECT TO THE PRELIMINARY INJUNCTION.

# EXHIBIT B

## ESTIMATED UNPAID CLAIMS

I.    Processed, but unpaid claims as of mid-December 2017, as reported from the identified third party administrators:

| BAS | $ 157,738 |
|---|---|
| BPA | $ 15,810,247 |
| CAPITOL | $ 965,101 |
| PEQUOT | $ 111,319 |
| TALL TREE | $ 15,881,621 |
| TAYLOR | $ 565,899 |
| UNIV of COLORADO | $ 36,738 |
| TOTAL | $ 33,528,663 |

II.   Unprocessed claims submitted as of mid-December 2017, as reported by BPA:

| BPA | $21,916,646* |
|---|---|
| Taylor | $1,117,047** |

* Based on discussions with BPA, the unprocessed claims amounts are typically reduced by 50% through the claim review and adjustment process.

** Based on discussions with Taylor, the unprocessed claim amounts are typically reduced by 20% through the claim review and adjustment process.

III.  Total of Estimated Unpaid Claims:

$33,528,663
  10,958,323 (50% of the unprocessed claims amount reported by BPA)
+    893,637 (80% of the unprocessed claim amount reported by Taylor)
$45,380,623

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing has been served upon the following, via the Court's Electronic Case Filing System upon:

Bruce C. Canetti, Esq.
Brooke Eileen Worden, Esq.
Martha Plante Frydl, Esq.
Ruben Richard Chapa, Esq.
U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn St., Rm 844
Chicago, IL 60604
(312) 353-3271
Email: canetti.bruce@dol.gov
Email: worden.brooke.e@dol.gov
Email: FRYDL.MARTHA@DOL.GOV
Email: chapa.ruben@dol.gov

Erica McKinney, Esq.
Daly Temchine, Esq.
Epstein Becker & Green
227 W. Monroe
Suite 3250
Chicago, IL 60606
(312) 499-1401
Email: emckinney@ebglaw.com
Email: dtemchine@ebglaw.com

Joshua Thomas Buchman, Esq.
John Christian Nemeth, Esq.
Sean Michael Koller, Esq.
McDermott Will & Emery LLP
444 West Lake Street Suite 4000
Chicago, IL 60606-0029
(312) 372-2000
Email: jbuchman@mwe.com
Email: jcnemeth@mwe.com
Email: sekoller@mwe.com

Andrea Verney, Esq.
Terrence Patrick Canade, Esq.
Locke Lord Llp
111 S. Wacker Drive
Chicago, IL 60606
(312) 443-0406
Email: Averney@lockelord.com
Email: tcanade@lockelord.com

**and via e-mail transmission to:**

Jason M. Rosenthal, Esq.
Honigman, Miller, Schwartz & Cohn
155 N. Wacker Drive
31st Floor
Chicago, IL 60606
(312) 701-9349
Email: jrosenthal@honigman.com

David Cowart, Esq.
Dentons US LLP
2000 McKinney Avenue
Suite 1900
Dallas, TX 75201-1858
(214) 259-0906
Email: David.cowart@dentons.com

This the 15th day of December, 2017.

*s/ Alan F. Curley*
Alan F. Curley