# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **R. ALEXANDER ACOSTA**, Secretary of Labor, <br> United States Department of Labor, <br><br> Plaintiff, <br><br> **AEU BENEFITS, LLC,** <br> **AEU HOLDINGS, LLC,** <br> **BLACK WOLF CONSULTING, INC.,** <br> **SD TRUST ADVISORS, LLC,** <br> **and the AEU HOLDINGS, LLC** <br> **EMPLOYEE BENEFIT PLAN**, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Case No. 17-cv-07931 <br> ) <br> ) Honorable Joan H. Lefkow <br> ) Judge <br> ) <br> ) Honorable Sheila M. Finnegan <br> ) Magistrate Judge <br> ) <br> ) <br> ) |

## DEFENDANTS AEU BENEFITS, LLC, AEU HOLDINGS, LLC AND AEU HOLDINGS, LLC EMPLOYEE BENEFIT PLAN'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES

### ANSWER

Defendants AEU Benefits ("AEUB"), LLC, AEU Holdings, LLC ("AEUH") and AEU

Holdings, LLC Employee Benefits Plan ("AEU Plan") (collectively the "AEU Defendants")

answers the Complaint by the Plaintiff R. Alexander Acosta, Secretary of Labor, United States

Department of Labor ("DOL") as follows[1]:

1. The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., which establishes, among other things, standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 1 of the Complaint.

2. ERISA ensures "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively, and prudently in the interests of plan participants. ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

---

[1] The AEU Defendants utilize defined terms as they have defined them in this Answer and Affirmative and Other Defenses, without regard to how the DOL utilized defined terms in its Complaint.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 2 of the Complaint.

3. ERISA prohibits fiduciaries from using plan assets for their own benefit, ERISA § 406(b), 29 U.S.C. § 1106(b), or in transactions with or for the benefit of "parties in interest," as defined in ERISA § 3(14); 29 U.S.C. § 1002(14), ERISA § 406(a), 29 U.S.C. § 1106(a), unless those transactions meet the strict requirements of statutory, class, or individual exemptions. ERISA § 408, 29 U.S.C. § 1108.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 3 of the Complaint.

4. When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief. The Secretary may also seek to enjoin a breaching fiduciary from acting as a fiduciary or service provider to employee benefit plans in the future.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 4 of the Complaint.

## BACKGROUND

5. Defendants **AEU HOLDINGS, LLC** ("AEU Holdings") and **AEU BENEFITS, LLC** ("AEU Benefits") (collectively, "AEU Defendants"), and **BLACK WOLF CONSULTING, INC.** ("Black Wolf") (collectively "defendants") operate a multi-employer welfare arrangement ("MEWA") to provide health and welfare benefits for employer-sponsored ERISA-covered employee benefit plans. As set forth more fully below, the AEU Defendants and Black Wolf are fiduciaries with control over the plan assets and management of at least 261 ERISA-covered plans participating in the MEWA ("Participating Plans").

**ANSWER:** The AEU Defendants deny that they operated or operate a "Multiple Employer

Welfare Association" as defined in Section 3(40)(A) of ERISA, 29 U.S.C. §1002(40)(A)

("MEWA") as alleged against them in Paragraph 5 of the Complaint and deny each and every

allegation of Paragraph 5 of the Complaint as to them. The allegations of Paragraph 5 of the

Complaint directed at Black Wolf do not require a response from the AEU Defendants. To the

extent such a response is required, on information and belief, the AEU Defendants admit only

that Black Wolf was a fiduciary with control over the assets and management of a Multiple

Employer Welfare Plan (collectively the "Participating Plans.") The AEU Defendants deny each

and every other allegation of Paragraph 5 of the Complaint.

6.     Contributions received from the Participating Plans are pooled together as part of the MEWA for purposes of paying participant and beneficiary claims.  The contributions are pooled in at least two offshore accounts in Bermuda ("Bermuda Accounts") that are controlled by the AEU Defendants.

**ANSWER:**    The AEU Defendants admit that contributions received from the Participating

Plans are pooled together for purposes of paying participant and beneficiary claims.  The AEU

Defendants deny that the Participating Plans are MEWA's and deny all remaining allegations of

Paragraph 6 of the Complaint not expressly admitted herein.

7.     As a result of the defendants' fiduciary breaches, alleged more fully below, the assets of the Participating Plans are used to pay excessive fees and expenses to the defendants and to the other service providers, and re-insurance providers retained to provide services to the Participating Plans through the MEWA.  Due to the considerable amount of undisclosed fees removed from the contributions paid by the Participating Plans, the remaining contributions are insufficient to cover the claims costs, resulting in over $26 million in unpaid, processed claims, covering the time period of January 1, 2016 to October 2, 2017.

**ANSWER:**    The AEU Defendants deny each and every allegation of Paragraph 7 of the

Complaint.

8.     Even though the defendants owe a duty of prudence and loyalty to all of the Participating Plans' participants and beneficiaries, they have breached their fiduciary duties and engaged in prohibited transactions causing a loss of ERISA-covered plan assets, resulting in millions in unpaid medical claims.  Nevertheless, the defendants continue to pay themselves exorbitant fees and enroll new, unsuspecting employers in the MEWA.  Meanwhile, current participants and beneficiaries are receiving collections notices and forgoing life-saving treatments.  Based on the ever growing backlog of unpaid claims, the declining number of participating employers, and the continual payment of excessive fees, the MEWA will not be able to pay all outstanding and future claims and is on the verge of collapse.

**ANSWER:**    The AEU Defendants admit that prior to the Court's appointment of an

Independent Fiduciary ("IF"), Defendants received fees from the Participating Plans.  The AEU

Defendants deny that they owed or owe a duty of prudence and loyalty to the Participating Plans'

participants and beneficiaries, or that they breached their fiduciary duties and engaged in

prohibited transactions causing a loss of ERISA-covered plan assets, resulting in millions in

unpaid medical claims.  The AEU Defendants deny that they took exorbitant fees for any

services in connection with the Participating Plans and deny that they continue to pay themselves

exorbitant fees and enroll new, unsuspecting employers. The AEU Defendants deny that the

Participating Plans constitute a MEWA. The AEU Defendants lack knowledge or information

sufficient to admit or deny the allegation that current participants and beneficiaries are receiving

collections notices and forgoing life-saving treatments or that based on the ever growing backlog

of unpaid claims, the declining number of participating employers, and the continual payment of

excessive fees, the Multiple Employer Welfare Plan will not be able to pay all outstanding and

future claims and is on the verge of collapse.

9. The Secretary now brings this suit for declaratory and injunctive relief including a temporary restraining order and preliminary injunction that removes Defendants **AEU BENEFITS, LLC, AEU HOLDINGS, LLC, and BLACK WOLF CONSULTING, INC.**, as fiduciaries and service providers of the Participating Plans, and appoints an independent fiduciary to take control of the MEWA, the Participating Plans, and their assets. In addition to the foregoing, this suit also seeks a final judgment to undo the prohibited transactions, to recover any residual losses to the Participating Plans, to permanently bar all defendants from acting as an ERISA fiduciary or service provider in the future, and for other remedial and equitable relief.

**ANSWER:** The AEU Defendants admit only that the DOL brought this action for the

purposes alleged in Paragraph 9 of the Complaint. The AEU Defendants deny that the

Participating Plans are a MEWA, and deny that the DOL is entitled to any of the relief sought in

Paragraph 9 of the Complaint as to them, and deny all remaining allegations of Paragraph 9 of

the Complaint not expressly admitted herein.

### JURISDICTION AND VENUE

10. This action arises under ERISA and is brought by the Secretary to obtain relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

**ANSWER**:   The AEU Defendants admit that the DOL brings this action under the statutes cited in Paragraph 10 of the Complaint, but deny that they engaged in any wrongdoing as alleged in the Complaint or that the DOL is otherwise entitled to any relief sought from them.

11.   This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).  The subject of the Secretary's Complaint is a non-ERISA covered MEWA encompassing employer-sponsored ERISA-covered employee benefit plans (*i.e.*, the Participating Plans) to provide medical and other health and welfare benefits to employees and eligible employee dependents.

**ANSWER:**   The AEU Defendants admit that this Court has subject matter jurisdiction over this matter, but deny that the subject matter of the Complaint is a non-ERISA covered MEWA encompassing employer-sponsored ERISA-covered employee benefit plans (*i.e.*, the Participating Plans) to provide medical and other health and welfare benefits to employees and eligible employee dependents, deny that they engaged in any wrongdoing and deny that the DOL is otherwise entitled to any relief from them.

12.   Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Defendant Black Wolf, headquartered in Monee, Will County, Illinois, resides within this Court's jurisdiction.  In addition, several of the alleged breaches took place within, and the MEWA is partially administered by Black Wolf within this Court's jurisdiction.  The MEWA is marketed to employers, medical benefits are provided, and claims are paid for participants and beneficiaries in this forum and the state of Illinois generally.  As of October 18, 2017, this included at least 1,697 Illinois residents, 229 of them residents of the City of Chicago.  Based on information presently available to the Secretary, Illinois residents account for over 25 percent of participants in the MEWA's Participating Plans.

**ANSWER:** The AEU Defendants admit that venue is proper in the Northern District of Illinois and that Black Wolf is located in Monee, Illinois. The AEU Defendants lack sufficient information to admit or deny how the Participating Plans are marketed. The AEU Defendants deny that the Participating Plans constitute a MEWA and deny all remaining allegations of Paragraph 12 of the Complaint not expressly admitted herein.

## PARTIES

13. The Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of civil claims against fiduciaries and other parties who violate ERISA. ERISA § 502(a)(2) & (5), 29 U.S.C. § 1132(a)(2) & (5).

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 13 of the Complaint.

14. Defendant AEU Holdings, LLC Employee Benefit Plan ("AEU Plan") is the name of the MEWA that provides benefits and holds assets for at least 261 ERISA-covered Participating Plans. For the remainder of this Complaint, the MEWA is referred to as the "AEU Plan," while the ERISA-covered plans participating in the MEWA are referred to as the "Participating Plans." Each Participating Plan was established or maintained by an employer for the purpose of providing medical and other health and welfare benefits pursuant to ERISA § 3(2), 29 U.S.C. § 1002(2), and is thus an employee benefit plan pursuant to ERISA § 3(3), 29 U.S.C. § 1002(3). As an entity with authority and control over ERISA-covered plan assets, the AEU Plan is subject to the provisions of Title I of ERISA. Because each Participating Plan is covered by ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a), the Participating Plan's assets controlled by the AEU Plan are also subject to coverage of ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a). The AEU Plan is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

**ANSWER:** The AEU Defendants admit that the DOL has defined certain terms in this Paragraph 14 as it sees fit, but deny that the defined terms are characterized correctly. The AEU Defendants deny each and every remaining allegation of Paragraph 14 of the Complaint, and further deny that the AEU Plan is named properly as a party to this action.

15. Defendant AEU Benefits is a Texas limited liability company, formed on or about July 1, 2015. Defendant AEU Benefits exercises authority and control over the assets of the Participating Plans covered by the AEU Plan and over the management and administration of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:** The AEU Defendants admit only that AEUB is a Texas Limited Liability Company formed on or about July 1, 2015. The AEU Defendants deny all remaining allegations of Paragraph 15 of the Complaint not expressly admitted herein.

16. Defendant AEU Holdings is a Delaware limited liability company, formed on or about December 12, 2014. Defendant AEU Holdings exercises authority and has control over the assets of the Participating Plans covered by the AEU Plan and over the management and administration of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER:** The AEU Defendants admit that AEUH is a Delaware Limited Liability Company formed on or about December 12, 2014. The AEU Defendants deny all remaining allegations of Paragraph 16 of the Complaint not expressly admitted herein.

17. The names AEU Benefits and AEU Holdings are used interchangeably on various AEU Plan documents, with the shortened form "AEU" also being used frequently in documents and by the Defendants themselves. As it is difficult to decipher to which entity "AEU" refers, the term AEU Defendants is used in this Complaint to refer to AEU Benefits and AEU Holdings collectively.

**ANSWER:** The AEU Defendants admit only that certain Participating Plan documents reference AEUB and AEUH erroneously and interchangeably throughout the documents and that the Complaint refers to AEUB and AEUH collectively as the AEU Defendants. The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that it is difficult to decipher to which entity "AEU" refers. The AEU Defendants deny all the remaining allegations of Paragraph 17 not expressly admitted herein.

18. Defendant Black Wolf is an Illinois corporation, formed on or about November 24, 2013. Defendant Black Wolf's sole client is the AEU Plan. Defendant Black Wolf exercises authority and has control over the assets of the Participating Plans covered by the AEU Plan and exercises authority and discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

**ANSWER:** The AEU Defendants admit that Defendant Black Wolf is an Illinois corporation, formed on or about November 24, 2013. On information and belief, the AEU Defendants admit that Black Wolf exercised authority and control over management of the Participating Plans and thus was a fiduciary of those plans and a party in interest pursuant to the statutory sections cites in Paragraph 18 of the Complaint. The AEU Defendants deny the AEU Plan covered the Participating Plans and deny all the remaining allegations of Paragraph 18 not expressly admitted herein.

19. Defendant SD Trust Advisors, LLC ("SD Trust") is a District of Columbia limited liability company formed on or about December 12, 2016. SD Trust's sole client is the AEU Plan. SD Trust provides services to the Participating Plans by holding the assets of the Participating Plans in SD Trust's name at Iberia Bank, and paying money out of these accounts to other service providers at the AEU Defendants' direction, and thus, is a party in interest pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). SD Trust is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

**ANSWER:** The AEU Defendants admit that SD Trust provided services to the Participating Plans by holding the assets of the Participating plans in SD Trust's name at Iberia Bank, and paying money out of these accounts to other service providers at AEUB's direction. The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 19 of the Complaint.

## GENERAL ALLEGATIONS

### A. The AEU Plan is a Multiple Employer Welfare Arrangement

20. On April 26, 2016, AEU Holdings purchased all of the operations and assets of ALLInsurance  Solutions Management, LLC ("ALLInsurance "). The effective date of the sale was backdated to March 31, 2016. ALLInsurance  operated a health benefits program in which employers from multiple industries across the United States would enroll and pay monthly contributions to receive health care benefits for their employees. AEU took over this program when it purchased ALLInsurance .

**ANSWER:** The AEU Defendants admit that on or about April 26, 2016, AEUH purchased all of the Business, assets, property and good will (collectively the "Business") of ALLInsurance Solutions Management, LLC ("AISM "). The AEU Defendants admit the effective date of the sale was backdated to March 31, 2016, and that AISM operated a health benefits program in which employers from multiple industries across the United States would enroll and pay monthly contributions to receive health care benefits for their employees. The AEU Defendants admit that they became a Program Advisor on the effective date of the sale of the Business. The AEU Defendants deny all allegations of Paragraph 20 not specifically admitted herein.

21. This program has been referred to in the past and present by many names, including the Veritas Employee Benefits Plan, Employers Network Association Plan, PHCS Multi-Plan Network, CIGNA VEBA Trust Program, VEBA Health Benefit Plan, Black Wolf Plan, Veritas Plan, and AEU Benefit Plan. For purposes of this Complaint, the program is referred to as the AEU Holdings, LLC Employee Benefit Plan ("AEU Plan"), as reflected in the AEU Holdings, LLC Plan Document and Summary Plan Description effective January 1, 2016.

**ANSWER:** The AEU Defendants deny that the AEU Plan was ever associated in any way with any of the Participating Plans. The AEU Defendants admit that the AEU Plan has a Summary Plan Description and Plan Document with an effective date of January 1, 2016. The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 of the Complaint.

22. The AEU Plan operates as a non-ERISA covered MEWA. Participating employers are headquartered in multiple States across the Country and come from a wide range of industries. There is no evidence of common control among the participating employers, nor any cohesive bond. Participating employers are heterogeneous and unrelated, with the only common purpose being a shared desire for employee medical coverage under a self-funded benefit plan.

**ANSWER:** The AEU Defendants deny that the AEU Plan operates as a non-ERISA MEWA. The AEU Defendants admit that the employers of the Participating Plans are headquartered in multiple states across the country, come from a wide range of industries, there is no evidence of common control among the employers of the Participating Plans nor any

cohesive bond, and that the employers of the Participating Plans are heterogeneous and unrelated, with the only apparent common purpose being a shared desire for employee medical coverage under a self-funded benefit plan.

23.     Although the AEU Plan itself is not an ERISA-covered plan, employers sponsor Participating Plans that comprise the AEU Plan, each of which is covered by ERISA and which imposes fiduciary responsibilities on the Defendants.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 23 of the Complaint.

24.     The Participating Plans obtain medical and other health and welfare benefits, including dental, vision, and prescription drug benefits, for their employees through their participation in the AEU Plan.  The AEU Plan offers 36 different coverage and deductible options.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 24 of the Complaint.

25.     The Participating Plans were created with the intent to provide benefits, and have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits.  When participating employers transfer employee and employer contributions to the AEU Plan on behalf of the Participating Plans, it is the employers' intent that these contributions are to be used to pay for claims and necessary administrative expenses.

**ANSWER:**     The AEU Defendants admit only that the Participating Plans were created with the intent to provide benefits, and have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits.  The AEU Defendants deny all allegations of Paragraph 25 not expressly admitted herein.

26.     Black Wolf provided the Secretary with 135 agreements labeled "VEBA Trust Agreement and Declaration of Trust" ("VEBA Trust Agreement"), which demonstrate the existence of individual plans, signed by employers between January 1, 2016 to October 31, 2016. Each Agreement designates the participating employer as the "Employer Sponsor."

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 26 of the Complaint.

27. VEBA stands for "Voluntary Employees' Beneficiary Association," a type of trust fund established for tax purposes by the Internal Revenue Service ("IRS"). Upon information and belief, the Participating Plans do not meet the requirements to be classified as VEBAs under Internal Revenue Code § 501(c)(9), nor to the Secretary's knowledge have defendants ever filed the necessary paperwork for the AEU Plan or its Participating Plans to receive VEBA classification with the IRS.

**ANSWER:** The AEU Defendants admit that VEBA stands for "Voluntary Employees' Beneficiary Association," a type of trust fund established for tax purposes by the Internal Revenue Service ("IRS"). The AEU Defendants lack knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 27 of the Complaint.

28. The majority of participating employers did not complete a "VEBA Trust Agreement."

**ANSWER:** The AEU Defendants lack knowledge or information to form a belief as to the truth of the allegations of Paragraph 28 of the Complaint.

29. Each VEBA Trust Agreement is signed by an official on behalf of the "Employer Sponsor," and also by a "Trustee" (typically a manager of the participating employer). Each Agreement provides, "[t]his Agreement and the Fund are intended to meet all of the requirements of ERISA and no part of the net earnings of the Fund shall inure (other than payment of such benefits) to any private shareholder or individual." The "Fund" is defined as "the trust estate created and maintained hereunder, which shall consist of contributions or otherwise, and any other property received and held by the Trustee for uses and purposes set forth in this Agreement."

**ANSWER:** The AEU Defendants lack knowledge or information to form a belief as to the truth of the allegations of Paragraph 29 of the Complaint.

30. The AEU Plan Document and summary plan descriptions state that the AEU Plan provides medical benefits paid from employer and employee contributions.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 30 of the Complaint.

## B. Marketing and Enrollment in the AEU Plan

31. Part of Black Wolf's role is to market the AEU Plan to employers, along with numerous sub-brokers working on behalf of Black Wolf.

**ANSWER:** The AEU Defendants admit that part of Black Wolf's role is to market the Participating Plans to employers, along with numerous sub-brokers working on behalf of Black Wolf. The AEU Defendants deny any allegations not expressly admitted herein.

32. The marketing materials describe the AEU Plan as a "VEBA health plan" with multiple benefit options, available to employers of all sizes in all 50 states with identical contribution rates each year for all participating employers, regardless of location or industry. The importance of volume purchasing, *i.e.*, pooling employers to obtain benefits at lower prices, is emphasized.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 32 of the Complaint as it relates to the Participating Plans. The AEU Defendants deny that Black Wolf ever distributed marketing materials relating to the AEU Plan, or otherwise characterized it in any way, including as a "VEBA health plan."

33. The marketing materials further state that each participating employer is its own self-funded trust, and the "premium equivalents represent the maximum cost to a participating employer and their employees for the coverage period paid for." Any surplus is supposed to "remain as client funds for [the Participating Plan's] future use."

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 33 of the Complaint.

34. The AEU Plan is described as "a group self-insured health benefits program that feels like a fully-insured plan."

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 34 of the Complaint as it relates to the Participating Plans. The AEU Defendants deny that that Black Wolf ever distributed marketing materials

relating to the AEU Plan, or otherwise characterized it in any way, including by describing it as

"a group self-insured health benefits program that feels like a fully-insured plan."

35.     With respect to fees, the marketing materials outline as follows: "Other than the cost for plan and coverage elected[,] 2 other fees apply[:]  (1) A one[-]time case set up fee of $100.00 applies.  That is 1 fee for all members under a group plan.  (2) A $20.00 per month billing fee applies on an ongoing basis."

**ANSWER:**     The AEU Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 35 of the Complaint.

36.     An employer desiring to participate in the AEU Plan completes Black Wolf's enrollment forms.  Black Wolf then processes these enrollment forms and transfers this information to the claims administrator.  Black Wolf is also responsible for processing any changes to enrollment each month.

**ANSWER:**     The AEU Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 36 of the Complaint as it relates to the Participating

Plans.  The AEU Defendants deny that Black Wolf was involved in the AEU Plan in any way,

including with respect to enrollment.

### C. Contributions and Invoices

37.     Black Wolf is also responsible for billing employers and collecting Participating Plans' contributions to remit to the AEU Plan.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 37 of the Complaint as it

relates to the Participating Plans.  The AEU Defendants deny that Black Wolf was ever

responsible for billing and collecting plan contributions with respect to the AEU Plan.

38.     Each month, Black Wolf sends each of the Participating Plans an invoice detailing the amount owed to the AEU Plan.  The employers then pay contributions to Black Wolf, which is made up of employer and employee contributions.  The percentage of the contribution that is made up of employer and employee contributions varies by each employer and is set by the employer.

**ANSWER:**     The AEU Defendants deny Black Wolf ever sent the Participating Plans an

invoice detailing the amount they owed to the AEU Plan.  The AEU Defendants lack knowledge

or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph

38 of the Complaint.

39.     The AEU Defendants determine the "base" contribution amounts to be charged to the Participating Plans, and the AEU Defendants provide these rates to Black Wolf on a yearly basis.

**ANSWER:**     The AEU Defendants admit that AEUB provided actuarial guidance by making

recommendations for contributions for some of the Participating Plans.   The AEU Defendants

deny any allegation of Paragraph 39 of the Complaint not expressly admitted herein.

40.     The invoices provided to the Participating Plans disclose a list of participants, description of the plan for each participant, "price each" for each participant, and a $20.00 monthly billing fee paid to Black Wolf.

**ANSWER:**     The AEU Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 40 of the Complaint.

41.     Black Wolf imposes its own fees on top of the contribution amounts set by AEU. Participating Plans are unaware that Black Wolf assesses these additional fees, ranging anywhere from 17 to 50 percent of the assessed contributions, to the invoiced "price each" amounts.  Black Wolf's undisclosed additional fees are simply lumped together with the contribution on the invoices received by the Participating Plans.

**ANSWER:**     On in formation and belief, the AEU Defendants admit Black Wolf imposes its

own fees on top of the contribution amounts.  The AEU Defendants deny that any of them set the

contribution amounts.  The AEU Defendants lack knowledge or sufficient information to form a

belief as to the truth of the remaining allegations of Paragraph 41 of the Complaint.

42.     After receiving contributions from the Participating Plans each month, Black Wolf takes its additional fees from the payment received and forwards the remaining "base" contributions to the asset custodian, SD Trust Advisors, LLC ("SD Trust").  Black Wolf also pays its sub- brokers from these undisclosed additional fees.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 42 of the Complaint.

43. An Administration Agreement provided to some of the Participating Plans states that the amounts paid by Participating Plans will be used to pay benefits or contributions on behalf of the AEU Plan and for no other purposes.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 43 of the Complaint.

44. A trust agreement provided to some of the Participating Plans states that the employers are creating a trust to segregate employer and employee contributions from other company assets "to fund the welfare benefit claims, stop loss insurance, and necessary administrative expenses."

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 44 of the Complaint.

45. A Small Employer Benefits Trust Agreement provided to a limited number of the Participating Plans states that each Participating Plan's contributions shall be deposited in the bank accounts for the AEU Plan and no part of the AEU Plan's funds shall inure to any private person.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 45 of the Complaint.

46. Marketing materials provided to some Participating Plans discuss a $20 monthly billing fee and $100 "set up fee." No other fees are disclosed.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 46 of the Complaint.

47. These documents combined with Black Wolf's failure to separate the "base" contribution from its own additional fees, have led and continue to lead Participating Plans to believe that the entire amounts paid to Black Wolf were and are plan assets.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 47 of the Complaint.

48. The Participating Plans' contributions become plan assets once remitted to Black Wolf.

**ANSWER:** The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 48 of the Complaint.

### D. Administration and Governing Documents

49. SD Trust is owned and operated, in part, by Tom Stoughton, one of ALLInsurance's former managers. SD Trust is responsible for holding Participating Plans' assets, receiving the "base" contributions from Black Wolf, forwarding these amounts to the Bermuda Accounts, paying service providers, and remitting payments to the claims administrator.

**ANSWER:** The AEU Defendants admit that SD Trust is owned and operated, in part, by Tom Stoughton, one of AISM's former managers. On information and belief, the AEU Defendants admit the remaining allegations of Paragraph 49 of the Complaint.

50. Pursuant to several plan documents, SD Trust is the named Plan Administrator and Trustee. However, these documents are unsigned, and SD Trust states that it performs its duties solely at the AEU Defendants' direction.

**ANSWER:** AEU admit that pursuant to certain of the Participating Plans' plan documents, SD Trust is the named Plan Administrator and Trustee. AEU lack sufficient information to form a belief as to the truth of the remaining allegations in this Paragraph. AEU denies any allegations not expressly admitted herein.

51. At the AEU Defendants' direction, SD Trust transfers funds to and from the Bermuda Accounts (discussed in more detail below), pays service providers and administration fees, pays the AEU Defendants and its subsidiary CoreCare, and pays itself. SD Trust maintains the Participating Plans' assets in various accounts with Iberia Bank, but it does not have individual accounts for each Participating Plan.

**ANSWER:** On information and belief the AEU Defendants admit SD Trust maintains Participating Plans' assets in various accounts with Iberia Bank, but it does not have individual accounts for each Participating Plan. The AEU Defendants deny the remaining allegations of Paragraph 51 of the Complaint.

52. In addition to setting the "base" contribution rates as discussed *supra*, the AEU Defendants are responsible for hiring and firing service providers, serving as the final decision-

maker regarding enrollment of new employers, and overseeing the operation of the AEU Plan and the Participating Plans.

**ANSWER:**   The AEU Defendants deny each and every allegation of Paragraph 52 of the Complaint.

53.     In a letter to Participating Plans, Black Wolf referred to the AEU Defendants as the "plan managers."

**ANSWER:**   The AEU Defendants lack knowledge or sufficient information to form a belief as to the truth of the allegations of Paragraph 53 of the Complaint.

54.     Additionally, AEU Holdings is named as the Plan Sponsor and Plan Administrator in the "AEU Holdings, LLC Plan Document and Summary Plan Description," effective January 1, 2016 ("Plan Document").  This plan document was a template created by Tall Tree and signed by Stephen Satler.  Mr. Satler is the Chief Executive Officer of the AEU Defendants.  The current claims administrator, Benefit Plan Administrators, Inc. ("BPA"), received this same plan document when it began providing services in December 1, 2016, and currently relies on this document to process claims.

**ANSWER:**   The AEU Defendants admit that without their knowledge or consent, third parties disseminated documents erroneously identifying AEUH as the Plan Sponsor and Plan Administrator for welfare plans associated with the Participating Plans.  The AEU Defendants deny this plan document was a template created by Tall Tree and signed by Stephen Satler.  The AEU Defendants admit that Mr. Satler is the Chief Executive Officer of AEUH and AEUB.  The AEU Defendants admit that AEUH is named as the Plan Sponsor and Plan Administrator in the "AEU Holdings, LLC Plan Document and Summary Plan Description" effective January 1, 2016.  The AEU Defendants admit that BPA became the claims administrator of multiple Participating Plans as of December 1, 2016.  The AEU Defendants deny all allegations of Paragraph 54 not expressly admitted herein.

### E. Bermuda Accounts

55.     The Participating Plans' contributions received from Black Wolf, less Black Wolf's "fees," are forwarded by SD Trust to two off-shore accounts in Bermuda, called First

Bermuda Purchasing Trust ("BPT1") and Second Bermuda Purchasing Trust ("BPT2"). The contributions sent by SD Trust to BPT1 and BPT2 are not segregated by Participating Plan.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 55 of the Complaint.

56. BPT2 is in the name of Omnium Trust company Limited ("Omnium"), a Bermuda company, at The Bank of N.T. Butterfield & Son Limited in Bermuda ("Bank of Butterfield").

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 56 of the Complaint

57. BPT1 is in the name of State House Trust Co. Lmt., a Bermuda company, also at Bank of Butterfield.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 57 of the Complaint

58. Both BPT1 and BPT2 hold plan assets of the Participating Plans to pay the AEU Plan's claims.

**ANSWER:** The AEU Defendants admit that BPT1 and BPT2 hold contributions from the Participating Plans. The AEU Defendants deny all allegations of Paragraph 58 of the Complaint not expressly admitted herein.

59. The operations of BPT1 and BPT2 appear to be the same, but different entities perform the administrative functions for the two accounts. Upon information and belief, the AEU Defendants created BPT2 in order to separate the unfunded claims for 2016 from all claims going forward in 2017.

**ANSWER:** The AEU Defendants deny that the operations of BPT1 and BPT2 appear to be the same. The AEU Defendants admit that different entities perform the administrative functions for BPT1 and BPT2. The AEU Defendants admit that BPT1 and BPT2 separate unfunded claims for calendar year 2016 from unfunded claims for calendar year 2017, but deny that it was done for the reasons alleged. The AEU Defendants deny all allegations of Paragraph 59 of the Complaint not expressly admitted herein.

60. Pursuant to a trust agreement, State Street is the Trustee of BPT1 with ALLInsurance as the "Protector" who controls the trust and its assets. AEU purchased ALLInsurance and now has the rights and powers of ALLInsurance as the "Protector."

**ANSWER:** The AEU Defendants admit AEUH purchased the Business of AISM. The AEU Defendants deny that they now have the rights and powers of AISM as the "Protector," and that State Street is the Trustee of BPT1 pursuant to a trust agreement.

61. Pursuant to a trust agreement, Omnium is the Trustee of BPT2 and certain powers are given to a defined "Protector" under the contract. The "Protector" is Halo Insurance Group (-Halo"), another Bermuda company. Halo's directors are Stephen Satler, Steven Goldberg, and James Kilduff. Stephen Satler and Steven Goldberg are also officers of the AEU Defendants. The "Protector" under BPT2 is responsible for determining if participating employers have rights to the assets in the account, to terminate employers' rights to the trust, for the accounting of contributions paid into the account, to direct the payment of all AEU Plan assets to pay claims to either the "Plan Administrator" or the "Third Party Administrator," and the power to remove the trustee.

**ANSWER:** The AEU Defendants admit that pursuant to a trust agreement, Omnium is the Trustee of BPT2, that certain powers are given to a defined "Protector" under the contract, and that the "Protector" is Halo Insurance Group ("Halo"), another Bermuda company. The AEU Defendants deny that Halo's directors are Stephen Satler, Steven Goldberg and James Kilduff. The AEU Defendants admit that Stephen Satler and Steven Goldberg are also officers of AEUH and AEUB. The AEU Defendants deny all allegations of Paragraph 61 of the Complaint not expressly admitted herein.

62. Currently, AEU authorizes certain funds to be paid to one of the AEU Plan's current claims administrators and the funds are either paid from SD Trust's account with Iberia Bank or one of the Bermuda Accounts. AEU directs SD Trust how much to transfer to and from the Bermuda Accounts.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 62 of the Complaint.

63. In addition to sending the money to the Bermuda Accounts, SD Trust also receives the Participating Plans' assets back from BPT1 and BPT2, and then sends money to pay claims to the third-party claims administrators.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 63 of the Complaint.

64.     Some of the Participating Plans' assets in the Bermuda Accounts are used to pay for stop-loss insurance policies with Hannover Life Reassurance Company of America and Lloyds of London.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 64 of the Complaint.

65.     The majority of Participating Plans' assets in BPT1 are transferred to a "segregated account" managed by Uberrimae Fidei Insurance Company, Ltd. ("Uberrimae"), another Bermuda company.  The bulk of Participating Plans' assets in BPT2 are transferred to another "segregated account" called "AEUB #1 Segregated Account," managed by a Bermuda entity called R&Q Quest Insurance ("R&Q").

**ANSWER:**     The AEU Defendants deny that plan assets are transferred to any of the accounts referenced in Paragraph 65 of the Complaint.  The AEU Defendants admit that Paragraph 65 accurately describes how contributions related to the Participating Plans are transferred.

66.     For both BPT1 and BPT2, the AEU Plan pays for reinsurance to cover high-dollar claims.  For BPT1, claims over $125,000 were to be covered by reinsurance, and for BTP2, the reinsurance pays claims over $175,000.

**ANSWER:**     The AEU Defendants admit that there are two reinsurance plans associated with BPT2 in the amounts of $125,000 and $175,000 respectively.  The AEU Defendants admit the remaining allegations of this Paragraph 66 of the Complaint.

67.     The AEU Defendants continue to route all AEU Plan and Participating Plans' assets to Bermuda and continue to have full control these assets.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 67 of the Complaint.

**F. Service Providers**

68.     On January 1, 2016, Tall Tree Administrators, Inc. ("Tall Tree") entered into a contract with AEU Holdings to serve as the AEU Plan's claims administrator, to administer all claims received from participants in the Participating Plans.  Tall Tree served as claims administrator for the AEU Plan and Participating Plans until December 1, 2016.

**ANSWER:**     The AEU Defendants admit that on or about January 1, 2016 Tall Tree entered into a contract with AEU Holdings, LLC to serve as claims administrator to administer several

claims received from participants in the Participating Plans. The AEU Defendants admit that Tall Tree served as claims administrator for the Participating Plans until approximately December 1, 2016. The AEU Defendants admit that Tall Tree entered into a contract with AEUH to serve as the claims administrator of claims under the Participating Plans on or about January 1, 2016. The AEU Defendants deny all allegations of Paragraph 68 of the Complaint not expressly admitted herein.

69.     Tall Tree ceased providing services on December 1, 2016, after receiving notice of a letter sent to Participating Plans by Black Wolf that the AEU Defendants had terminated Tall Tree as claims administrator.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 69 of the Complaint.

70.     The AEU Plan's main current claims administrator is BPA, which took over administrative duties from Tall Tree on December 1, 2016.

**ANSWER:**     The AEU Defendants admit only that BPA took over the claims administration of claims under the Participating Plans as of December 1, 2016. The AEU Defendants deny that they presently have control or information relating to the Participating Plans. The AEU Defendants admit BPA was the claims administrator under the Participating Plans as of November 2017 when control of those plans was transferred to the IF. The AEU Defendants deny that BPA was ever the claims administrator under the AEU Plan.

71.     On or about December 1, 2016, BPA entered into an administrative services agreement with AEU Benefits to provide claims administration services for the AEU Plan and thus the Participating Plans.

**ANSWER:** The AEU Defendants admit the on or about December 1, 2016, BPA entered into an administrative services agreement with AEUB as a third-party administrator ("TPA") to provide services for the Participating Plans. The AEU Defendants deny all remaining allegations of Paragraph 71 not expressly admitted herein.

72. Before paying claims, the claims administrator confirms with Black Wolf whether participants or beneficiaries are enrolled. Black Wolf is responsible for enrolling participants and beneficiaries in BPA's system.

**ANSWER:** On information and belief, the AEU Defendants admit the allegations of Paragraph 72 of the Complaint.

73. Claims are administered based on the Plan Document and a Summary of Benefits and Coverage ("SBC") for each health plan. Black Wolf provided the SBCs to BPA.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 73 of the Complaint.

74. After approving claims, the claims administrator contacts the AEU Defendants and SD Trust to request payment.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph74 of the Complaint.

75. Typically, at AEU's direction, SD Trust sends a lump sum amount of money to the claims administrator via wire transfer to pay claims, without any itemized breakdown of where the funds should go. The claims administrator then distributes the sums based on the order in which claims were incurred.

**ANSWER:** The AEU Defendants deny the allegations of Paragraph 75 of the Complaint.

76. Additional claims administrators also administer claims for the AEU Plan, including Capital Administrators, Taylor Benefit Resources, Inc., Pequot Health Care, and Benefit Administrative Systems, LLC.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 76 of the Complaint.

### G. Unpaid Claims

77.     On or about June 2016, the AEU Plan stopped transferring plan assets to Tall Tree to pay processed claims.  In August or early September 2016, the AEU Plan began transferring plan assets to Tall Tree so it could pay claims again, but only paid a fraction of the amounts owed.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 77 of the Complaint.

78.     As of October 6, 2017, of the claims Tall Tree processed, there were approximately $15 to $16 million that remain unpaid.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 78 of the Complaint.

79.     Unpaid claims continued after BPA took over as claims administrator.  In 2017, SD Trust did not forward the full amount of funds requested by BPA to pay claims.  Beginning February 13, 2017, BPA began sending weekly "unfunded claims registers" to the AEU Defendants and SD Trust.

**ANSWER:**     On information and belief the AEU Defendants admit that unpaid claims continued after BPA took over as claims administrator, and that in 2017 SD Trust did not forward the full amount of funds requested by BPA to pay claims.  The AEU Defendants admit that in or around February 2017, BPA began sending periodically unfunded claims registers to AEUB.  The AEU Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation that on February 13, 2017, BPA began sending periodically unfunded claims registers to SD Trust.  The AEU Defendants deny all allegations of Paragraph 79 not expressly admitted herein.

80.     BPA began complaining to the AEU Defendants about the unpaid claims beginning in early March 2017.

**ANSWER:**     The AEU Defendants admit that in or around March 2017, BPA began complaining to AEU about the unpaid claims.

81.     As of July 31, 2017, the unpaid claims processed by BPA totaled $5,798,011.92.

**ANSWER:** The AEU Defendants admit only that the sum cited in Paragraph 81 of the Complaint is approximately correct.

82. In July 2017, BPA was receiving over 2,000 calls per week from participants and beneficiaries covered by Participating Plans in the AEU Plan, and informed the AEU Defendants of this call volume in an email dated August 1, 2017.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 82 of the Complaint.

83. On August 7 and 14, 2017, SD Trust wired approximately $946,000.00 to BPA for payment of claims. Still, as of September 1, 2017, there remained $5,135,723.75 in unpaid claims.

**ANSWER:** The AEU Defendants admit that on August 7, 2017, SD Trust wired approximately 345,909.04 to BPA for payment of claims, and that on August 14, 2017, SD Trust wired approximately $613,311.81 to BPA for payment of claims. The AEU Defendants deny all remaining allegations of Paragraph 83 of the Complaint not expressly admitted herein.

84. As of October 2, 2017, there were $11,761.545.41 in unpaid claims administered by BPA, in addition to the approximately $15 to $16 million in unpaid claims administered by Tall Tree.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 84 of the Complaint.

85. As a result of these unpaid claims, Participating Plan participants and beneficiaries are receiving collections notices from medical providers and forgoing treatment.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 85 of the Complaint.

86. Numerous Participating Plan participants have contacted Black Wolf, BPA, Tall Tree, the Department of Labor's Employee Benefits Security Administration, and other administrative agencies seeking payment of claims.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 86 of the Complaint.

87. The number of Participating Plans in the AEU Plan has been steadily declining as a result of unpaid claims, with employers seeking out alternative health care options for their employees.

**ANSWER:** The AEU Defendants admit that the number of Participating Plans has declined. The AEU Defendants lack knowledge or information sufficient to admit the remaining allegations of Paragraph 87 of the Complaint.

88. Defendant Black Wolf is named as a defendant in at least two lawsuits relating to the AEU Plan. *See Employers' Innovative Network, LLC v. Black Wolf Consulting, Inc.*, No. 17C-1-H (Cir. Ct. Raleigh County, W. Va.); *PFS HR Solutions, LLC v. Black Wolf Consulting, Inc.*, No. 1:17-cv-00277-JRG-SKL (E.D. Tenn.).

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 88 of the Complaint.

<u>COUNT ONE</u>

**The AEU Defendants Failed to Appoint a Named Trustee and
Keep Plan Assets in Trust within the United States**

89. Paragraphs 1-88 above are incorporated by reference.

**ANSWER:** The AEU Defendants incorporate their answers to Paragraphs 1-88 by reference as if set forth fully herein.

90. The AEU Plan documents do not identify a trustee for the AEU Plan or the Participating Plans.

**ANSWER:** The AEU Defendants admit only that the AEU Plan Document and Summary Plan Description effective January 1, 2016 does not identify a trustee for the Participating Plans or the AEU Plan. The AEU Defendants deny all remaining allegations of Paragraph 90 of the Complaint not expressly admitted herein.

91. The AEU Defendants have not specifically appointed a trustee for the AEU Plan or the Participating Plans.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 91 of the Complaint.

92. The AEU Plan and Participating Plans' assets are held in accounts first in Black Wolf's name, then SD Trust's name, and finally in various accounts in Bermuda. Neither Black Wolf, nor SD Trust, nor any Bermuda entity was named trustees of the AEU Plan or Participating Plans.

**ANSWER:** The AEU Defendants deny each and every allegations of Paragraph 92 of the

Complaint.

93. Some of the VEBA Trust Agreements completed by employers to enroll in the AEU Plan designate a representative of the employer as a trustee. In practice, these representatives play no role in the management or administration of the Participating Plans or the AEU Plan, and no assets are held in their name. Furthermore, most employers did not sign one of these VEBA Trust Agreements.

**ANSWER:** The AEU Defendants admit that at least some of the Agreement and Declaration

of Trust designate a representative of the employers as a trustee of the Participating Plan in

which the employer participates. The AEU Defendants admit that those representatives have no

role in the management or administration of the AEU Plan. The AEU Defendants lack

information or knowledge sufficient to admit the truth of the allegation that most employers did

not sign one of these VEBA trust agreements. The AEU Defendants deny all allegations of

Paragraph 93 of the Complaint not expressly admitted herein.

94. AEU Plan and Participating Plans' assets are held in at least two off-shore bank accounts in Bermuda, outside of the jurisdiction of the United States.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 94 of the

Complaint.

95. By the actions and failures to act as described above, Defendants **AEU HOLDINGS** and **AEU BENEFITS**:

A. failed to hold all assets of an employee benefit plan in trust by one or more trustees named in the trust instrument or plan instrument or appointed by a person who is a named fiduciary, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

B.     maintained the indicia of ownership of plan assets outside the jurisdiction of the district courts of the United States, in violation of ERISA § 404(b), 29 U.S.C. § 1104(b).

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 95 of the Complaint.

96.     As a result of the foregoing breaches of duty, Defendants **AEU BENEFITS** and **AEU HOLDINGS** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief.  ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:**     The AEU Defendants deny each and every allegation of Paragraph 96 of the Complaint.

97.     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendant **BLACK WOLF** is liable for the breaches of its co-fiduciaries as described above, because it knowingly participated in or concealed an act or omission of its co-fiduciaries, knowing that such act or omission was a breach; it enabled its co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and it had knowledge of a fiduciary breach by its co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER:**     These allegations are not directed at AEU, and no response is required.  To the extent a response is required, the AEU Defendants deny each and every allegation of Paragraph 97 of the Complaint.

## COUNT TWO

### The AEU Defendants Pay Themselves and Others Unreasonable Aggregate Administrative Fees and Expenses from Plan Assets

98.     Paragraphs 1-97 above are incorporated by reference.

**ANSWER:**     The AEU Defendants incorporate their answers to Paragraphs 1-97 by reference as if set forth fully herein.

99.     The AEU Defendants are fiduciaries and parties-in-interest to the Participating Plans.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 99 of the Complaint.

100. The AEU Defendants are responsible for managing the AEU Plan and Participating Plans, monitoring service providers, hiring and firing services providers, and controlling expenses.

**ANSWER:** The AEU Defendants admit only that AEUH is the named fiduciary of the AEU Plan, and, therefore, is responsible ultimately for managing that plan. The AEU Defendants deny each of the remaining the allegations in Paragraph 100 of the Complaint.

101. The AEU Defendants permit Black Wolf to continue to collect a fee that ranges from between 17 and 44 percent of the contribution amounts Black Wolf charges the participating employers in the AEU Plan.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 101 of the Complaint.

102. The AEU Defendants caused the AEU Plan and Participating Plans to maintain at least two accounts in Bermuda, incurring unnecessary management fees, trustee fees, and attorney fees.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 102 of the Complaint.

103. The AEU Defendants caused the AEU Plan and Participating Plans to pay substantial fees for compliance with certain federal reporting requirements, but these reporting requirements are not being met.

**ANSWER:** The AEU Defendants deny that they caused the Participating Plans to pay substantial fees for compliance with certain federal reporting requirements. The AEU Defendants admit that on information and belief not all of the Participating Plans' federal reporting requirements were being met as of the date the Court appointed the IF to administer the Participating Plans.

104. The AEU Defendants caused the AEU Plan and Participating Plans to pay for excessive reinsurance, amounting to $10.5 million in reinsurance costs in 2016, when this insurance only covered $3.5 million in claims.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 104 of the Complaint.

105. The AEU Defendants also pay themselves from the AEU Plan and Participating Plans' assets, including a program management fee of approximately 11 to 13 percent of the expected claims cost, as well as a separate management fee of approximately 2.5 percent to a subsidiary called CoreCare.

**ANSWER:** The AEU Defendants deny ach and every allegation of Paragraph 105 of the Complaint.

106. The AEU Defendants caused the AEU Plan and Participating Plans to pay aggregate administrative fees and expenses that represent 41 percent of the contribution amounts Black Wolf charged to the participating employers in the AEU Plan. Including Black Wolf's fees, the expenses are well over 50 percent of the contribution amounts.

**ANSWER:** The AEU Defendants deny that they caused the AEU Plan or the Participating Plans to pay aggregate administrative fees and expenses in any percentage. The AEU Defendants lack knowledge or information sufficient to form a belief to the truth of the remaining allegations of Paragraph 106 of the Complaint.

107. By the actions and failures to act as described above, Defendants **AEU HOLDINGS** and **AEU BENEFITS**:

A. failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

B. failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

C. used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the and Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

D. used the Participating Plans' assets in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the AEU Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

E.    dealt with assets of the Plans in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

**ANSWER:**    The AEU Defendants deny each and every allegation of Paragraph 107 of the Complaint and each of its Subparagraphs.

108.    As a result of the foregoing breaches of duty, Defendants **AEU BENEFITS** and **AEU HOLDINGS** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief.  ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:**    The AEU Defendants deny each and every allegation of Paragraph 108 of the Complaint.

<u>COUNT THREE</u>

**Black Wolf Takes Undisclosed, Excessive Compensation from Plan Assets**

109.    Paragraphs 1-108 above are incorporated by reference.

**ANSWER:**    The AEU Defendants incorporate their Answers to Paragraphs 1-108 by reference as if set forth fully herein.

110.    Black Wolf is a fiduciary and party-in-interest to the Participating Plans.

**ANSWER:**    On information and belief, the AEU Defendants admit the allegations of Paragraph 110 of the Complaint.

111.    Black Wolf adds an undisclosed amount of additional compensation to the monthly contributions it bills to each Participating Plan.  Black Wolf makes no effort to inform Participating Plans of these fees.

**ANSWER:**    On information and belief, the AEU Defendants admit the allegations of Paragraph 111 of the Complaint.

112.    Black Wolf sets its own compensation, and the amount of compensation varies among Participating Plans and for different plan options (*e.g.*, Self, Family, *etc.*).  Whereas the AEU Defendants have designated 36 different contribution rates for the 36 different plan options, Black Wolf is charging 192 different contribution rates to various employers.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 112 of the Complaint.

113. Black Wolf's compensation ranges from 17 to 44 percent of the contribution assessed per participant.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 113 of the Complaint.

114. The AEU Defendants approved Black Wolf assessing a contribution "spread," which is assessed at Black Wolf's discretion, on top of the contributions charged to Participating Plans.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 114 of the Complaint.

115. Neither Black Wolf nor the AEU Defendants have disclosed Black Wolf's additional compensation to the Participating Plans. Black Wolf's invoices issued to Participating Plans combine Black Wolf's "spread" and the "base" contribution amount for each participant, such that the two are indistinguishable, and simply labels the amount due as the "Price Each." The marketing materials presented to the Participating Plans disclose only two fees: (1) a one-time, $100 set-up fee, and (2) a $20 monthly billing fee. The Participating Plans have no way of knowing the amount of additional compensation collected by Black Wolf for the various plan options.

**ANSWER:** The AEU Defendants admit that they did not disclose Black Wolf's "additional compensation" to the Participating Plans because they were not aware of such fees when they were being incurred, and it was not their responsibility to communicate with participants of the Participating Plans regarding management of assets. The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegation as to whether the Participating Plans have any way of knowing the amount of additional compensation collected by Black Wolf for the various plan options. The AEU Defendants deny all allegations of Paragraph 115 of the Complaint not expressly admitted herein.

116.     The AEU Defendants have acknowledged that Black Wolf's setting of rates was done in an "ad hoc" manner.

**ANSWER:**     The AEU Defendants admit the allegations of Paragraph 116 of the Complaint.

117.     From the plan assets that Black Wolf retains, it also pays a portion of its "fees" to the sub-brokers working on its behalf, pursuant to contractual obligations or other agreements with these brokers.

**ANSWER:**     The AEU Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 117 of the Complaint.

118.     Given the disproportionate amount of fees assessed and Black Wolf's payment from plan assets of portions of these fees to brokers who provide no services to the AEU Plan or the Participating Plans, Black Wolf's undisclosed compensation is excessive and unreasonable, and does not constitute an ordinary and necessary plan expense.

**ANSWER:**     The AEU Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations of Paragraph 118 of the Complaint.

119.     By the actions described above, Defendant **BLACK WOLF**:

A.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

B.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B

C.     used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

D.     used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

E.     dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

F.     acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER:**    These allegations are not directed at the AEU Defendants, and no response is required. To the extent a response is required, on information and belief, AEU admits the allegations of Paragraph 119 of the Complaint and each of its Subparagraphs.

120.    As a result of the foregoing breaches of duty, **BLACK WOLF** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:**    These allegations are not directed at AEU, and no response is required. To the extent a response is required, the AEU Defendants deny that Black Wolf caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan. On information and belief, the AEU Defendants admit the remaining allegations of this Paragraph 120 of the Complaint and each of its Subparagraphs.

121.    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants **AEU HOLDINGS** and **AEU BENEFITS** are liable for the breaches of their co-fiduciaries because, as described above, they knowingly participated in or concealed an act or omission, knowing that such act or omission is a breach; they enabled the other fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER:**    The AEU Defendants deny each and every allegation of Paragraph 121 of the Complaint.

<u>COUNT FOUR</u>

**The AEU Defendants and Black Wolf Failed to Pay Claims, and Failed to Disclose Both the AEU Plan's Failure to Pay Claims and the Inadequate Plan Funding to Existing and New Participating Plans**

122.    Paragraphs 1-121 above are incorporated by reference.

**ANSWER:** The AEU Defendants incorporates their Answers to Paragraphs 1-121 by reference as if set forth fully herein.

123. The AEU Defendants and Black Wolf are fiduciaries and parties-in-interest with respect to the Participating Plans.

**ANSWER:** The AEU Defendants deny each and every allegation of Paragraph 123 of the Complaint as to them. On information and belief, the AEU Defendants admit the allegations of Paragraph 123 as to Black Wolf.

124. Starting in the summer of 2016, the AEU Plan stopped paying most claims. Since that time the AEU Plan has been unable to pay medical claims for all participants and beneficiaries.

**ANSWER:** The AEU Defendants deny that the AEU Plan was responsible for paying medical claims incurred by participants of and beneficiaries in the Participating Plans. The AEU Defendants deny that the AEU Plan has ever stopped paying medical claims incurred by that plan's participants and beneficiaries. The AEU Defendants lack knowledge or information sufficient to admit or deny that allegation that starting in the summer of 2016 the Participating Plans have been unable to pay medical claims for all of their participants and beneficiaries.

125. The AEU Defendants and Black Wolf have been aware of unpaid claims since being put on notice in fall of 2016, continuing throughout 2017.

**ANSWER:** The AEU Defendants admit the allegations of Paragraph 125 of the Complaint.

126. The amount of unpaid claims continues to rise, suffering from a significant funding shortage with current unpaid claims exceeding $26 million.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 126 of the Complaint.

127. The current claims administrator, BPA, has sent numerous emails to the AEU Defendants requesting funding to pay the unpaid claims in 2017. On July 26, 2017, BPA sent an email to the AEU Defendants noting the very high call volumes BPA was receiving as a result of unpaid claims.

**ANSWER:** The AEU Defendants admit the allegations of this Paragraph 127 of the Complaint.

128. Employers and brokers contacted Black Wolf directly regarding unpaid claims in 2017.

**ANSWER:** The AEU Defendants lack knowledge or information sufficient to admit the truth of the allegations of Paragraph 128 of the Complaint.

129. In March 2017, the AEU Defendants acknowledged that the AEU Plan is materially underfunded with approximately 21,000 unpaid claims.

**ANSWER:** The AEU Defendants admit that in or around March 27, 2017 AEUB acknowledged that the Participating Plans had not paid approximately 21,000 claims.

130. Despite these unpaid claims, Black Wolf continues to attempt to enroll new employers in the AEU Plan without advising them of the AEU Plan's inability to pay claims.

**ANSWER:** The AEU Defendants lack sufficient information to admit or deny the allegations in this Paragraph.

131. Neither Black Wolf nor the AEU Defendants have disclosed the fact that the AEU Plan is unable to pay claims to either the current or newly enrolled Participating Plans, while unwitting participants and beneficiaries continue to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims.

**ANSWER:** The AEU Defendants deny that they have ever had responsibility for communicating with participants of the Participating Plans. The AEU Defendants deny each and every allegation of Paragraph 131 of the Complaint.

132. By the actions and failures to act as described above, Defendants **AEU HOLDINGS**, **AEU BENEFITS**, and **BLACK WOLF**:

A. failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

B. failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar

with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

**ANSWER:**    The AEU Defendants deny the allegations of Paragraph132 and each of its Subparagraphs as to AEUH and AEUB.  On information and belief, the AEU Defendants admit the allegations of Paragraph 132 as to Black Wolf.

133.    As a result of the foregoing breaches of duty, **AEU BENEFITS**, **AEU HOLDINGS**, and **BLACK WOLF** caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:**    The AEU Defendants deny the allegations of Paragraph 133 of the Complaint as to AEUH and AEUB.  On information and belief, the AEU Defendants admit the allegations of Paragraph 133 as to Black Wolf.

134.    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants **AEU BENEFITS**, **AEU HOLDINGS**, and **BLACK WOLF** are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER:**    The AEU Defendants deny the allegations of Paragraph 133 of the Complaint as to AEUH and AEUB.  On information and belief, the AEU Defendants admit the allegations of Paragraph 134 as to Black Wolf.

## AFFIRMATIVE AND OTHER DEFENSES

In further answer to the Complaint, the AEU Defendants the following affirmative defenses.

### First Affirmative Defense

1.    Insofar as the failure to pay claims incurred by participants in, or beneficiaries of, the Participating Plans is due to lack, or misappropriation, of funds, The AEU Defendants assert

that they are not responsible for such lack or misappropriation, and other entities involved in the operation or management of the Participating Plans bear that responsibility.

## Second Affirmative Defense

2.     AEUH purchased the assets of AISM  on or about March 31, 2016, and, therefore, had no involvement with matters alleged in the Complaint before that date.  Consequently, the AEU Defendants have no liability for any conduct by them alleged in the Complaint to have taken place before that date.

## Third Affirmative Defense

3.     To the extent that the Complaint seeks to impose liability on the AEU Defendants because any or all of the sponsors or trustees of the Participating Plans did not establish trusts, the AEU Defendants have no such liability because it was the sponsors' responsibility to establish such trusts, if required by law.

## Fourth Affirmative Defense

4.     To the extent that the Complaint seeks to impose liability on the AEU Defendants because any or all of the sponsors or trustees of the Participating Plans did not establish trusts, there may have been no legal obligation to establish such trusts.  United States Department of Labor Technical Release No. 1992-01.

## Fifth Affirmative Defense

5.     The Complaint inaccurately describes AEUH's welfare plan established solely for its and AEUB's employees as one related to the Participating Plans, notwithstanding that there is no relation.

## Sixth Affirmative Defense

6.     The AEU Defendants reserve the right to amend, including by adding additional affirmative defenses, their affirmative defenses at a later date.

WHEREFORE, Defendants AEU Holdings, LLC, AEU Benefits, LLC and AEU Holdings LLC Employee Benefit Plan respectfully request that judgment be entered in favor of the AEU Defendants on all counts, and Plaintiff R. Alexander Acosta not be granted any of the requested relief sought in the Complaint as against them, and that AEU be granted its costs and any further relief that this Court deems just and proper.

Dated:  March 16, 2018

_s/ Tiffany S. Fordyce_____
Tiffany S. Fordyce (N.D. Ill. 235063)
fordycet@gtlaw.com
Howard L. Mocerf (N.D. Ill. 1935798)
mocerfh@gtlaw.com
Elizabeth S. Ralph (N.D. Ill. 6300625)
ralphe@gtlaw.com
**Greenberg Traurig, LLP**
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
T:  (312) 456-8400

*Attorneys for AEU Holdings, LLC,*
*AEU Benefits, LLC and*
*AEU Holdings LLC Employee Benefit Plan*

## CERTIFICATE OF SERVICE

I, Tiffany S. Fordyce, an attorney, hereby certify that on March 16, 2018, I caused the foregoing Defendants AEU Benefits, LLC, AEU Holdings, LLC and AEU Holdings, LLC Employee Benefit Plan's Answer To Plaintiff's Complaint and Affirmative and Other Defenses to be filed and served through the Northern District of Illinois CM/ECF electronic filing on all counsel of record.

_s/ Tiffany S. Fordyce_

Tiffany S. Fordyce
