

FILED
7/13/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Eugene Scalia, Secretary of Labor, United States
Department of Labor,

        Plaintiff,

  v.

AEU BENEFITS, LLC, AEU HOLDINGS, LLC,
BLACK WOLF CONSULTING, INC., JAMES
D'IORIO, STEVEN GOLDBERG,HALO P&C NORTH
AMERICA, LLC, HALO ADVISORS LLC, CHARLES
LAMANTIA, ROD MAYNOR, SD TRUST
ADVISORS, LLC, STEPHEN SATLER, VERITAS
BENEFITS, LLC, VERITAS PEO, LLC, WILSON
BENEFIT SERVICES LLC, WBS LLC, DONALD R.
WILSON, and the AEU HOLDINGS, LLC EMPLOYEE
BENEFIT PLAN,
        Defendants.

---

AEU HOLDINGS, LLC and AEU BENEFITS, LLC,

        Third Party Plaintiffs, Cross Plaintiffs,
        **And Defendants**

  v.

BLACK WOLF CONSULTING, INC.

        Third Party Plaintiffs, Cross Plaintiffs.
        And Defendants

---

Black Wolf Consulting, Inc,

        Third-Party Plaintiffs, Cross Plaintiffs,
        And Defendants

**ANSWER TO SECOND**
**AMENDED COMPLAINT**

**BY DEFENDANTS JAMES**
**D'IORIO, VERITAS**
**BENEFITS, LLC, and VERITAS**
**PEO, LLC**

**CIVIL ACTION NO.:**
1:17-cv-07931-JHL-SMF

Hon. Joan H. Lefkow
District Judge

Hon. Beth Jantz
Magistrate Judge

1

v.

AEU BENEFITS, LLC. et al.

Defendants JAMES D'IORIO, VERITAS BENEFITS, LLC and VERITAS PEO, LLC (Pro Se)

, hereby answers the allegations of the plaintiff's Second Amended Complaint (hereinafter, the

"Complaint")(ECF Docket #190) as follows:

1.  The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, et seq., which establishes, among other things, standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans.

**ANSWER: Denys knowledge or information sufficient to admit or deny the allegations in paragraph "1" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

2.  ERISA ensures "the soundness and stability of plans with respect to adequate funds to pay promised benefits." ERISA § 2(a), 29 U.S.C. § 1001(a). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively, and prudently in the interests of plan participants. ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B).

**ANSWER: Denys knowledge or information sufficient to admit or deny the allegations in paragraph "2" of the Complaint, except admit that the statutes cited therein exist and speak for themselves.**

3.  ERISA prohibits fiduciaries from using plan assets for their own benefit, ERISA § 406(b), 29 U.S.C. § 1106(b), or in transactions with or for the benefit of "parties in interest," as defined in ERISA § 3(14); 29 U.S.C. § 1002(14), ERISA § 406(a), 29 U.S.C. § 1106(a), unless those transactions meet the strict requirements of statutory, class, or individual exemptions. ERISA § 408, 29 U.S.C. § 1108.

**ANSWER:  Deny knowledge or information sufficient to admit or deny the allegations in paragraph "3" of the Complaint, except admit that the statutes cited there in exist and speak for themselves.**

4.    When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief. The Secretary may also seek to enjoin a breaching fiduciary from acting as a fiduciary or service provider to employee benefit plans in the future.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "4" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

5.    Defendants **AEU HOLDINGS, LLC** ("AEU Holdings"), **AEU BENEFITS, LLC** ("AEU Benefits"), and officers **STEPHEN SATLER** and **STEVEN GOLDBERG** (collectively, "AEU Defendants"); **VERITAS PEO, LLC**, **VERITAS BENEFITS, LLC**, and owners **CHARLES LAMANTIA** and **JAMES D'IORIO** (collectively, "Veritas Defendants"); and **BLACK WOLF CONSULTING, INC.**, and owner **ROD MAYNOR** (collectively, "Black Wolf") operated a multiple employer welfare arrangement ("MEWA") to provide health and welfare benefits for employer-sponsored ERISA-covered employee benefit plans. As set forth more fully below, the defendants listed in this paragraph were fiduciaries with control over the plan assets and management of at least 261 ERISA-covered plans participating in the MEWA ("Participating Plans").

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "5" of the Complaint, except (i) deny that D'Iorio, Veritas PEO, LLC and Veritas Benefits, LLC "operated" the subject multiple employer welfare arrangement ("MEWA"); (ii) admit that Veritas PEO, LLC and Black Wolf Consulting, Inc. provided certain services in connection with the subject MEWA; (iii) admit that AEU HOLDINGS, LLC or AEU BENEFITS, LLC administered the subject MEWA; and (iv) deny that D'Iorio, Veritas PEO, LLC and Veritas Benefits LLC were fiduciaries with control**

3

**over plan assets and management.**

6.    Contributions received from the Participating Plans were pooled together as part of the MEWA for purposes of paying participant and beneficiary claims. The contributions were pooled in at least two offshore accounts in Bermuda ("Bermuda Accounts") that were controlled by the AEU Defendants.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "6" of the Complaint.**

7.    As a result of the defendants' fiduciary breaches, alleged more fully below, the assets of the Participating Plans were used to pay excessive, undisclosed fees and expenses to the defendants, other service providers, and re-insurance providers retained to provide services to the Participating Plans through the MEWA. Due to the considerable amount of undisclosed fees removed from the contributions paid by the Participating Plans, the remaining contributions are insufficient to cover the claims costs, resulting in over $51 million in unpaid, processed claims, covering the time period of January 1, 2016 to March 31, 2018.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "7" of the Complaint, except: (i) deny that the answering defendants James D'Iorio, and Veritas PEO, LLC and Veritas Benefits, LLC were fiduciaries or committed any fiduciary breaches; and (ii) deny that these answering defendants paid or received any illegal or inappropriate fees.**

8.    Even though the defendants owed a duty of prudence and loyalty to all of the Participating Plans' participants and beneficiaries, they breached their fiduciary duties and engaged in prohibited transactions causing a loss of ERISA-covered plan assets, resulting in millions in unpaid medical claims. Nevertheless, the defendants continued to pay themselves exorbitant, undisclosed fees and enroll new, unsuspecting employers in the MEWA. Meanwhile, participants and beneficiaries were receiving collections notices and had to forgo life-saving treatments. Based on the ever growing backlog of unpaid claims, the declining number of participating employers, and the continual payment of excessive, undisclosed fees, the MEWA was unable to pay all outstanding and future claims and was on the verge of collapse.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "8" of the Complaint and refer all questions of law to the Court, except: (i)**

4

deny that the answering defendants James D'Iorio, Veritas PEO, LLC and Veritas

Benefits, LLC were fiduciaries or committed any fiduciary breaches; and (ii) deny that these answering defendants paid or received any illegal or inappropriate fees.

9.    On November 2, 2017, the Secretary filed the present lawsuit seeking declaratory and injunctive relief, including a temporary restraining order ("TRO") and preliminary injunction to remove Defendants AEU BENEFITS, AEU HOLDINGS, and BLACK WOLF CONSULTING, INC., as fiduciaries and service providers of the Participating Plans, and appointing an independent fiduciary to take control of the MEWA, the Participating Plans, and their assets. On November 3, 2017, the Court entered a TRO which, *inter alia*, removed the defendants listed in this paragraph as fiduciaries and service providers and appointed an independent fiduciary to control and marshal all assets of the MEWA and Participating Plans. (Docket No. 14). On December 13, 2017, the Court granted a preliminary injunction granting the same relief. (Docket No. 59).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "9" of the Complaint.**

10.    The Secretary now files this Second Amended Complaint seeking a final judgment to reverse the prohibited transactions, to recover all losses to the Participating Plans, to disgorge all profits, to permanently enjoin defendants from acting as an ERISA fiduciary or service provider in the future, and for other remedial and equitable relief.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "10" of the Complaint, except deny that these answering defendants engaged in any prohibited transactions, and denies that they were fiduciaries.**

11.    This action arises under ERISA and is brought by the Secretary to obtain relief under ERISA §§ 409 and 502(a)(2) and (5), 29 U.S.C. §§ 1109 and 1132(a)(2) and (5), to redress violations and enforce the provisions of Title I of ERISA.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "11" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

12.    This Court has subject matter jurisdiction over this action pursuant to

5

ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1). The subject of the Secretary's First Amended Complaint is a non-ERISA covered MEWA encompassing employer-sponsored ERISA-covered employee benefit plans (*i.e.*, the Participating Plans) to provide medical and other health and welfare benefits to employees and eligible employee dependents.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "12" of the Complaint and refer all questions of law to the Court, except admit that the statutes cited therein exist and speak for themselves.**

13. Venue is appropriate in the Northern District of Illinois, Eastern Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Defendants Black Wolf Consulting, Inc., headquartered in Monee, Will County, Illinois, and owner Rod Maynor reside within this Court's jurisdiction. In addition, several of the alleged breaches took place within, and the MEWA was partially administered by Black Wolf within this Court's jurisdiction. The MEWA was marketed to employers, medical benefits were provided, and claims were paid for participants and beneficiaries in this forum and the state of Illinois generally. As of October 18, 2017, this included at least 1,697 Illinois residents, 229 of them residents of the City of Chicago. Based on information presently available to the Secretary, Illinois residents accounted for approximately 23 percent of participants in the MEWA's Participating Plans, and approximately 28% of the unpaid claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "13" of the Complaint and refer all questions of law to the Court, except admit that the statutes cited therein exist and speak for themselves.**

14. The Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of civil claims against fiduciaries and other parties who violate ERISA. ERISA § 502(a)(2) & (5), 29 U.S.C. § 1132(a)(2) & (5).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "14" of the Complaint and refer all questions of law to the Court, except admit that the statutes cited therein exist and speak for themselves.**

15. Defendant AEU Holdings, LLC Employee Benefit Plan ("AEU Plan") is the name of the MEWA that provides benefits and holds assets for at least 261 ERISA-covered Participating Plans. For the remainder of this First Amended Complaint, the MEWA is referred to as the "AEU Plan," while the ERISA-covered plans participating in the MEWA are referred to as the "Participating Plans." Each Participating Plan was established or maintained by an employer for the purpose of providing medical and other health and welfare benefits pursuant

6

to ERISA § 3(2), 29 U.S.C. § 1002(2), and is thus an employee benefit plan pursuant to ERISA § 3(3), 29 U.S.C. § 1002(3). As an entity with authority and control over ERISA-covered plan assets, the AEU Plan is subject to the provisions of Title I of ERISA. Because each Participating Plan is covered by ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a), the Participating Plan's assets controlled by

the AEU Plan are also subject to coverage of ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a). The AEU Plan is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "15" of the Complaint except admit that the statutes cited therein exist and speak for themselves, and admit that "AEU Holdings, LLC Employee Benefits Plan" is the name of the MEWA that is the subject of this case.**

16. Defendant AEU Benefits is a Texas limited liability company, formed on or about July 1, 2015, and a wholly owned subsidiary of AEU Holdings. Defendant AEU Benefits exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan, exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and had discretionary authority and discretionary responsibility in the administration of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "16" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

17. Defendant AEU Holdings is a Delaware limited liability company, formed on or about December 12, 2014. Defendant AEU Holdings exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan, exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and had discretionary authority and discretionary responsibility in the administration of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i) and (iii), 29 U.S.C. § 1002(21)(A)(i) and (iii), and a party in interest pursuant to ERISA § 3(14)(A), 29 U.S.C. § 1002(14)(A).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations**

in paragraph "17" of the Complaint except admit that the statutes cited therein exist and speak for themselves.

18. Defendant Stephen Satler is an individual who resides in New Jersey. At all times relevant to this First Amended Complaint, Satler was the Chief Executive Officer and 21.62% owner of AEU Holdings, President of AEU Benefits, and on the AEU Holdings' Board of Managers. Satler exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "18" of the Complaint except admit: (i) that the statutes cited therein exist and speak for themselves; and (ii) upon information and belief, Stephen Satler was an owner and officer of AEU Holdings.**

19. Defendant Steven Goldberg is an individual who resides in Texas. At all times relevant to this First Amended Complaint, Goldberg was the Chief Operating Officer and 21.62% owner of AEU Holdings, and on its Board of Managers. Goldberg exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "19" of the Complaint except admit: (i) that the statutes cited therein exist and speak for themselves; and (ii) upon information and belief, that Steven Goldberg was an officer of some kind with AEU Holdings.**

20. The names AEU Benefits and AEU Holdings are used interchangeably on various AEU Plan documents, with the shortened form "AEU" also being used frequently in documents and by the Defendants themselves. As it is difficult to decipher to which entity "AEU" refers, the term "AEU Defendants" is used in this First Amended Complaint to refer to AEU

Benefits, AEU Holdings, and officers Satler and Goldberg collectively.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "20" of the Complaint.**

8

21.     Defendant Veritas PEO, LLC is a Florida limited liability company, formed on or about March 7, 2014. Veritas PEO, LLC is wholly owned by Sterling Godfrey Holding, Inc. ("Sterling Godfrey"), a Nevada corporation. From at least January 1, 2016 to December 1, 2016, Defendant Veritas PEO, LLC exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

**ANSWER: Deny the allegations set forth in paragraph "21" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) admit that Veritas PEO, LLC is a Florida limited liability company wholly owned by Sterling Godfrey Holding, Inc.; and (iii) admit that Veritas PEO, LLC performed certain non-fiduciary services in connection with the AEU Plan.**

22.     Defendant Veritas Benefits, LLC is a Nevada limited liability company, formed on or about August 28, 2014. From at least January 1, 2016 to December 1, 2016, Veritas Benefits, LLC was wholly owned by Sterling Godfrey. Defendant Veritas Benefits, LLC exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

**ANSWER: Deny the allegations set forth in paragraph "22" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; and (ii) admit that Veritas Benefits, LLC is a Nevada limited liability company wholly owned by Sterling Godfrey Holding, Inc.**

23.     Defendant Charles LaMantia is an individual who resides in New Jersey. From at least January 1, 2016 to December 1, 2016, LaMantia was a 50% owner and officer of Sterling Godfrey. Veritas PEO, LLC, and Veritas Benefits,

LLC, were operated collectively by LaMantia and James D'Iorio. LaMantia exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans

covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H).

**ANSWER: Deny the allegations set forth in paragraph "23" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) admit, upon information and belief, that LaMantia resides in New Jersey; (iii) admit that LaMantia and D'Iorio had certain management roles with regard to Veritas PEO, LLC and Veritas Benefits, LLC; and (iv) admit that from January 1, 2016 to December 1, 2016, LaMantia was a 50% owner and officer of Sterling Godfrey.**

24. Defendant James D'Iorio is an individual who resides in New York. From at least January 1, 2016 to December 1, 2016, D'Iorio was a 50% owner and officer of Sterling Godfrey. Veritas PEO, LLC, and Veritas Benefits, LLC, were operated collectively by LaMantia and D'Iorio. D'Iorio exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (H), 29 U.S.C. § 1002(14)(A) and (H).

**ANSWER: Deny the allegations set forth in paragraph "24" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) admit that D'Iorio resides in New York; (iii) admit that LaMantia and D'Iorio had certain management roles with regard to Veritas PEO, LLC and Veritas Benefits, LLC; and (iv) admit that from January 1, 2016 to December 1, 2016, D'Iorio was a 50% owner and officer of Sterling Godfrey.**

25. Defendant Black Wolf Consulting, Inc. is an Illinois corporation, formed on or about November 24, 2013. At all times relevant to this First Amended Complaint, Defendant Black Wolf Consulting, Inc.'s sole client was the AEU Plan. Defendant Black Wolf Consulting, Inc. exercised authority and control respecting management or disposition of the assets of the Participating Plans

covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU

Plan itself, and thus, is a fiduciary of the Participating Plans pursuant to ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), and a party in interest pursuant to ERISA § 3(14)(A) and (B), 29 U.S.C. § 1002(14)(A) and (B).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "25" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) admit, upon information and belief, that Black Wolf Consulting has offices in Illinois; and (iii) admit that Black Wolf performed certain services for the subject plan.**

26. Defendant Rod Maynor is an individual who resides in Illinois. Maynor is the sole owner, President, and Chief Executive Officer of Black Wolf Consulting, Inc. Maynor exercised authority and control respecting management or disposition of the assets of the Participating Plans covered by the AEU Plan and exercised discretionary authority or discretionary control over the management of the Participating Plans covered by the AEU Plan and the AEU Plan itself, and thus, is a fiduciary of the Participating Plans pursuant ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(14)(A) and (H).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "26" of the Complaint, except admit: (i) the statutes cited therein exist and speak for themselves; and (ii) upon information belief, Maynor is or was an officer of Black Wolf Consulting.**

27. Defendant SD Trust Advisors, LLC ("SD Trust") is a District of Columbia limited liability company, formed on or about December 12, 2016. From approximately December 12, 2016 to November 3, 2017, SD Trust's sole client was the AEU Plan. During this time, SD Trust provided services to the Participating Plans covered by the AEU Plan, and to the AEU Plan itself, by holding the assets of the Participating Plans in SD Trust's name at Iberia Bank, and paying money out of these accounts to other service providers at the AEU Defendants' direction, and thus, is a party in interest pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B). SD Trust is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure to assure that complete relief can be granted.

11

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "27" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

28. Defendant Wilson Benefit Services, LLC is a Maryland Limited Liability Company formed on or about June 29, 2011. From at least January 1, 2016 to March 24, 2017, Wilson Benefit Services, LLC provided services to the Participating Plans covered by the AEU Plan, and to the AEU Plan itself, by holding the assets of the Participating Plans in its own accounts, and paying money out of these accounts to other service providers at the AEU Defendants' direction, and thus, is a party in interest pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "28" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; and (ii) admit that Wilson Benefit Services, LLC performed certain services for the AEU Plan.**

29. Defendant WBS, LLC is a District of Columbia limited liability company formed on or about September 25, 2015. From at least January 1, 2016 to March 24, 2017, WBS, LLC provided services to the Participating Plans covered by the AEU Plan, and to the AEU Plan itself, by holding assets of the Participating Plans in its own accounts, and paying money out of these accounts to other service providers at the AEU Defendants' direction, and thus, in a party in interest pursuant to ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "29" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

30. Defendant Donald R. Wilson is an individual who resides in Maryland. From at least January 1, 2016 to March 24, 2017, Wilson was the owner and manager of Wilson Benefit Services, LLC, and WBS, LLC and thus, is a party in interest pursuant to ERISA § 3(14)(H), 29 U.S.C. § 1002(14)(H).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "30" of the Complaint, except: (i) admit that the statutes**

cited therein exist and speak for themselves; and (ii) admit, upon information and belief, that

Donald R. Wilson was an officer of some kind of Wilson Benefit Services, LLC.

31.    The names Wilson Benefit Services, LLC, and WBS, LLC, are used interchangeably on various AEU Plan documents, with the shortened form "WBS" also being frequently used in documents and by the Defendants themselves. As it is difficult to decipher to which entity "WBS" refers, the term "Wilson Benefit" is used in this First Amended Complaint to refer to Wilson Benefit Services, LLC, WBS, LLC, and owner Donald R. Wilson collectively.

**ANSWER: Deny knowledge or information sufficient to admit or deny the**

**allegations set forth in paragraph "31" of the Complaint.**

32   Defendant Halo P & C North America, LLC ("Halo P&C") is a Texas limited liability company, formed on or about June 6, 2017. Halo P&C was formed by AEU Holdings as part of its Plan of Division adopted by the Board of Managers and Members effective July 1, 2017 ("Plan of Division"). As part of the Plan of Division, Halo P&C was assigned ownership interests in AEU Holdings' subsidiaries Tee & Gee Group, LLC; Core Care Management, LLC; Lotus Insurance Solutions, LLC; and Levius Medical Solutions, LLC. Halo P&C operates as a holding company and has no employees. Halo P&C's Manager is Steven Goldberg.

**ANSWER: Deny knowledge or information sufficient to admit or deny the**

**allegations in paragraph "32" of the Complaint.**

33      Halo Advisors, LLC ("Halo Advisors") is a Texas limited liability company,

formed on or about June 6, 2017. Halo Advisors was formed by AEU Holdings as part of its

Plan of Division, and was assigned ownership interests in AEU Holdings' subsidiary Entire Insurance Solutions, LLC. Halo Advisors' Manager is Stephen Satler. All of the business and employees of AEU Benefits were moved under Entire Insurance Solutions, LLC, on or about July 1, 2017. Entire Insurance Solutions, LLC, was previously under AEU Benefits structurally. Satler and Goldberg intended to deplete AEU Benefits of all of its assets and employees by moving Entire Insurance Solutions, LLC, to Halo Advisors.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "33" of the Complaint.**

34  As part of its Plan of Division, AEU Holdings assigned its ownership interest in Halo P&C and Halo Advisors to the members of AEU Holdings in the same class and ownership percentages as they maintained in AEU Holdings. The business address for AEU Holdings, Halo P&C, and Halo Advisors is listed as 8131 Lyndon B Johnson Fwy, Ste. 750, Dallas Texa 75251-1331. The subsidiary entities operating under Halo P&C and Halo Advisors have the same business purpose, customers, and operations as they had when they were formerly AEU Holdings' subsidiaries.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "34" of the Complaint.**

35  As of the date of the Plan of Division, and at least as early as the Fall of 2016, AEU Holdings was aware of the AEU Plan's problems with mounting

unpaid medical claims. As of the date of the Plan of Division, and at least as early as March 2017, AEU Holdings knew an investigation had been opened by the U.S. Department of Labor's Employee Benefits Security Administration regarding the AEU Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "35" of the Complaint.**

36      The Plan of Division was not a formal sale, and Halo P & C has been described as a "spin-off" of AEU Holdings. Halo P & C and Halo Advisors represent a disguised continuance of AEU Holdings' former business and were an intentional attempt to avoid pending liability relating to the unpaid health claims of the AEU Plan and Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "36" of the Complaint.**

37      Halo P&C and Halo Advisors are liable for the claims alleged

herein as to AEU Holdings as alter egos or successors in liability to AEU

Holdings.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "37" of the Complaint.**

38      On April 26, 2016, AEU Holdings purchased all of the operations and assets of ALLInsurance Solutions Management, LLC ("ALLInsurance"). The effective date of the sale was backdated to March 31, 2016. ALLInsurance operated a health benefits program in which employers from multiple industries across the United States would enroll and pay monthly contributions to receive health care benefits for their employees. The AEU Defendants took over this program when it purchased ALLInsurance, although the AEU Defendants had been working with ALLInsurance on the program since at least June 2015.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "38" of the Complaint.**

39      This program has been referred to in the past and present by many names, including the Veritas Employee Benefits Plan, Employers Network Association Plan, PHCS Multi-Plan Network, CIGNA VEBA Trust Program, VEBA Health Benefit Plan, Black Wolf Plan, Veritas Plan, and AEU Benefit Plan. For purposes of this First Amended Complaint, the program is referred to as the AEU Holdings, LLC Employee Benefit Plan ("AEU Plan"), as reflected in the AEU Holdings, LLC Plan Document and Summary Plan Description effective January 1, 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "39" of the Complaint.**

40      The AEU Plan operated as a non-ERISA covered MEWA. Participating employers were headquartered in multiple States across the Country and came from a wide range of industries. There is no evidence of common control among the participating employers, nor any cohesive bond. Participating employers were

13

heterogeneous and unrelated, with the only common purpose being a shared desire for employee medical coverage under a self-funded benefit plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "40" of the Complaint.**

41 Although the AEU Plan itself is not an ERISA-covered plan, employers sponsor Participating Plans that comprise the AEU Plan, each of which is covered by ERISA and which imposes fiduciary responsibilities on the Defendants.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "41" of the Complaint.**

42 The Participating Plans obtained medical and other health and welfare benefits, including dental, vision, and prescription drug benefits, for their employees through their participation in the AEU Plan. The AEU Plan offered 36 different coverage and deductible options.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "42" of the Complaint except admit that plans participating in the AEU Plan purchased, variously, dental, vision and prescription drug benefits for their employees.**

43 The Participating Plans were created with the intent to provide benefits, and have an identifiable class of beneficiaries, a source of financing, and procedures for obtaining the benefits. When participating employers transferred employee and employer contributions to the AEU Plan on behalf of the Participating Plans, it was the employers' intent that these contributions be used to pay for claims and necessary administrative expenses.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "43" of the Complaint.**

44 Black Wolf provided the Secretary with 135 agreements labeled "VEBA Trust Agreement and Declaration of Trust" ("VEBA Trust Agreement"), which demonstrate the existence of individual plans, signed by employers between January 1, 2016 to October 31, 2016. Each Agreement designates the participating employer as the "Employer Sponsor."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "44" of the Complaint.**

14

45      VEBA stands for "Voluntary Employees' Beneficiary Association," a type of trust fund established for tax purposes by the Internal Revenue Service ("IRS"). Upon information and belief, the Participating Plans do not meet the requirements to be classified as VEBAs under Internal Revenue Code § 501(c)(9), nor to the Secretary's knowledge have defendants ever filed the necessary paperwork for the AEU Plan or its Participating Plans to receive VEBA classification with the IRS.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "45" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) admit that VEBA stands for Voluntary Employees' Beneficiary Association; and (iii) deny that defendants James D'Iorio, Veritas PEO, LLC or Veritas Benefits, LLC failed to file (or were responsible for filing) necessary paperwork for the AEU Plan or its Participating Plans to receive VEBA classification with the IRS.**

46      The majority of participating employers did not complete a "VEBA Trust Agreement."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "46" of the Complaint.**

47      Each VEBA Trust Agreement was signed by an official on behalf of the "Employer Sponsor," and also by a "Trustee" (typically a manager of the participating employer). Each Agreement provides, "[t]his Agreement and the Fund are intended to meet all of the requirements of ERISA and no part of the net earnings of the Fund shall inure (other than payment of such benefits) to any private shareholder or individual." The "Fund" is defined as "the trust estate created and maintained hereunder, which shall consist of contributions or otherwise, and any other property received and held by the Trustee for uses and purposes set forth in this Agreement."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "47" of the Complaint.**

48      The AEU Plan Document and summary plan descriptions state that the AEU Plan provides medical benefits paid from employer and employee contribution

15

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "48" of the Complaint.**

49      The AEU Defendants utilized various brokers and marketers, termed "Aggregators," to recruit and enroll Participating Plans in the AEU Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "49" of the Complaint, except admit that the AEU Plan utilized some number of aggregators who assisted in enrolling participant plans.**

50      In April 2014, Veritas established an "Aggregator" relationship with ALLInsurance to begin enrolling Participating Plans in the AEU Plan. This relationship continued after the AEU Defendants purchased ALLInsurance.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations set forth in paragraph "50" of the Complaint.**

51      Veritas acted as an "Aggregator" for the AEU Plan until it was terminated by AEU Holding's Chief Executive Officer, Stephen Satler, effective November 30, 2016.

**ANSWER: Deny the allegations of paragraph "51" of the Complaint, except admit that Veritas PEO, LLC performed certain services for the AEU Plan (which some described as being an "aggregator") for a certain period of time, which ended when AEU Holdings terminated Veritas PEO, LLC effective November 30, 2016.**

52      Prior to recruiting for the AEU Plan, Veritas owners D'Iorio and LaMantia reviewed documents from ALLInsurance and law firm Locke Lord LLP regarding the structure of the AEU Plan, including the fact that Participating Plans' contributions would be held in Bermuda.

**ANSWER: Deny the allegations set forth in paragraph "52" of the Complaint, except: (i) admit that D'Iorio and LaMantia were owners of Sterling Godfrey, Inc. (not "Veritas"); and (ii) and admit that D'Iorio reviewed some documents concerning the**

16

referenced plan, but deny knowledge or information sufficient to admit or deny whether he reviewed documents prepared by Locke Lord LLP.

53      Veritas' role as an "Aggregator" for the AEU Plan was to bill the Participating Plans, collect employee and employer contributions, and remit these funds to the AEU Plan's trustee.

**ANSWER: Deny the allegations set forth in paragraph "53" of the Complaint, except admit that Veritas PEO LLC's role as an aggregator for the AEU Plan was to bill certain participating plans for their contributions, to collect contributions from those participating plans who it billed, and to remit those funds to the AEU Plan's trustee.**

54      Veritas received a monthly "PEO Referral Fee" from the AEU Plan, at AEU's direction, equal to 5% of the expected claims cost.

**ANSWER: Deny the allegations set forth in paragraph "54" of the Complaint, except admit that Veritas PEO, LLC's contract entitled it to a monthly PEO Referral Fee from the AEU Plan, and admit that for one month only (May 2016), AEU did pay Veritas PEO, LLC a PEO Referral Fee (Veritas PEO, LLC was not paid the PEO Referral fee any other time).**

55      As of November 2016, Veritas had enrolled approximately 112 Participating Plans in the AEU Plan for which it served directly as an "Aggregator." Approximately 6 to 10 of these employers with Participating Plans in the AEU Plan also received other services from Veritas such as payroll, life insurance, and workers' compensation insurance.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "55" of the Complaint.**

56      In late 2014, Veritas hired Black Wolf as a sub-broker to market the AEU Plan to employers and enroll new Participating Plans in the AEU Plan.

17

**ANSWER: Deny the allegations in paragraph "56" of the Complaint, except admit that at some point in time Veritas PEO, LLC introduced Black Wolf to market the AEU to employers, and that Black Wolf enrolled certain participating plans in the AEU Plan.**

57      Sometime in 2016, Black Wolf became one of the AEU Plan's primary "Aggregators."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "57" of the Complaint.**

58      Part of Black Wolf's role was to market the AEU Plan to employers, along with numerous sub-brokers working on behalf of Black Wolf.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "58" of the Complaint, except admit that Black Wolf marketed the AEU Plan to employers.**

59      The marketing materials describe the AEU Plan as a "VEBA health plan" with multiple benefit options, available to employers of all sizes in all 50 states with identical contribution rates each year for all participating employers, regardless of location or industry. The importance of volume purchasing, *i.e.*, pooling employers to obtain benefits at lower prices, is emphasized.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "59" of the Complaint.**

60      The marketing materials further state that each participating employer is its own self-funded trust, and the "premium equivalents represent the maximum cost to a participating employer and their employees for the coverage period paid for." Any surplus is supposed to "remain as client funds for [the Participating Plan's] future use."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "60" of the Complaint.**

61      The AEU Plan is described as "a group self-insured health benefits program that feels like a fully-insured plan."

18

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "61" of the Complaint.**

62      With respect to fees, the marketing materials outline as follows: "Other than the cost for plan and coverage elected[,] 2 other fees apply[:] (1) A one[-]time case set up fee of $100.00 applies. That is 1 fee for all members under a group plan. (2) A $20.00 per month billing fee applies on an ongoing basis."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "62" of the Complaint.**

63      An employer desiring to participate in the AEU Plan completed Black Wolf's enrollment forms. Black Wolf then processed these enrollment forms and transferred this information to the claims administrator. Black Wolf was also responsible for processing any changes to enrollment each month.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "63" of the Complaint.**

64      From at least March 31, 2016, to November 2, 2017, the AEU Defendants determined the "base" contribution amounts to be charged to the Participating Plans. From at least March 31, 2016, to Veritas' termination on November 30, 2016, the AEU Defendants provided these rates directly to Veritas.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "64" of the Complaint, except admit that during the period of time that Veritas PEO, LLC provided services to the AEU Plan, the AEU Defendants determined the contribution amounts and provided them to Veritas PEO, LLC.**

65      After Veritas' termination around November 30, 2016, the AEU Defendants provided the "base" contribution rates to be charged to the Participating Plans directly to Black Wolf.

**ANSWER:    Deny knowledge or information sufficient to admit or deny the allegations in paragraph "65" of the Complaint.**

19

66      Once the AEU Defendants provided the "base" contribution rates to be charged to the Participating Plans, Veritas marked up these rates before sending them to Black Wolf and Veritas' own clients. The mark-up for Black Wolf's clients varied widely, with most rate increases between 10 to 30 percent.

**ANSWER:    Deny the allegations in paragraph "66" of the Complaint.**

67      Veritas also charged the Black Wolf Participating Plans a $15 or $20 per participant per month and one-time $100 set-up fee.

**ANSWER: Admit the allegations in paragraph "67" of the Complaint, with the clarification that the Veritas entity in question was Veritas PEO, LLC, and that these set-up fees were disclosed to the participating plans.**

68      For its own clients, Veritas also marked up the rates, charging an average of a 54 percent mark-up.

**ANSWER:    Deny the allegations in paragraph "68" of the Complaint.**

69      Veritas assessed a combined administrative fee for its PEO clients that included PEO administration and AEU Plan administration fees.

**ANSWER:    Deny knowledge or information sufficient to admit or deny the allegations in paragraph "69" of the Complaint.**

70      Apart from the combined administrative fees, Veritas failed to disclose to its clients or Black Wolf's clients that it marked-up the contribution rates to include a "fee" for Veritas.

**ANSWER:    Deny the allegations in paragraph "70" of the Complaint.**

71      After receiving contributions from the Participating Plans each month (either directly from its own clients or from Black Wolf), Veritas deposited these funds in a benefits account in Veritas' name.

**ANSWER: Deny the allegations in paragraph "71" of the Complaint, except admit that after receiving monthly contributions from participating plans, Veritas PEO, LLC deposited those funds into an account maintained in the name of Veritas Benefits, LLC temporarily, before transferring them to the trustee, Wilson Benefit.**

20

72     Veritas' PEO clients transmitted payroll and health plan contributions in one lump sum to Veritas' operating account. A Veritas employee was then responsible for transferring contributions to the AEU Plan from the operating account to the benefits account.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "72" of the Complaint.**

73     The Participating Plans' contributions were plan assets at all times they were in Veritas' possession.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "73" of the Complaint.**

74     In addition to its administrative fees, Veritas took the additional, undisclosed fees from the marked-up payment amounts received from the employers and only forwarded the remaining "base" contribution amount, set by AEU, directly from Veritas' benefits account to the asset custodian, Wilson Benefit.

**ANSWER: Deny the allegations in paragraph "74" of the Complaint, except admit that Veritas transferred the contributions amount to the asset custodian, Wilson Benefit.**

75     D'Iorio and LaMantia had signatory authority over the Veritas benefits account and directed the movement of contributions into and out of that account.

**ANSWER: Deny the allegations in paragraph "75" of the Complaint, except admit that D'Iorio and LaMantia had signing authority on the subject account, and that D'Iorio and LaMantia from time-to-time authorized the deposit of contributions into that account, and authorized the transfer of contributions from that account to the plan trustee.**

76     D'Iorio authorized and directed the amounts of the wire transfers to Wilson Benefit each month.

**ANSWER: Deny the allegations in paragraph "76" of the Complaint, except admit that D'Iorio authorized transfers of contributions to Wilson Benefit (the plan trustee) from time-to-time.**

21

77      Like Veritas, Black Wolf was also responsible for billing employers and collecting Participating Plans' contributions to remit to the AEU Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "77" of the Complaint.**

78      Each month, Black Wolf sent each of the Participating Plans an invoice detailing the amount owed to the AEU Plan. The employers then paid contributions to Black Wolf, which was made up of employer and employee contributions. The percentage of the contribution made up of employer and employee contributions varied by each employer and was set by the employer.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "78" of the Complaint.**

79      Black Wolf's invoices provided to the Participating Plans disclosed a list of participants, description of the plan for each participant, "price each" for each participant, and a $20.00 monthly billing fee paid to Black Wolf.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "79" of the Complaint.**

80      Black Wolf imposed its own undisclosed fees on top of the contribution amounts set by the AEU Defendants. Black Wolf also did not disclose its fees to the Participating Plans, with the undisclosed fees ranging anywhere from 17 to 50 percent of the assessed contributions, to the invoiced "price each" amounts. Black Wolf's undisclosed additional fees were simply lumped together with the contribution on the invoices received by the Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "80" of the Complaint.**

81      After receiving contributions from the Participating Plans each month, Black Wolf took its undisclosed fees from the payment received and forwarded the remaining "base" contributions to Veritas until Veritas' termination effective November 30, 2016. After November 30, 2016, Black Wolf forwarded the remaining "base" contributions directly to the asset custodian, SD Trust. Black Wolf also paid its sub-brokers from these undisclosed additional fees.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations**

22

in paragraph "81" of the Complaint, except admit that for a period of time Black

Wolf remitted contributions to Veritas, and that Veritas in turn remitted those contributions to the plan trustee.

82      An Administration Agreement provided to some of the Participating Plans states that the amounts paid by Participating Plans will be used to pay benefits or contributions on behalf of the AEU Plan and for no other purposes.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "82" of the Complaint.**

83      A trust agreement provided to some of the Participating Plans states that the employers are creating a trust to segregate employer and employee contributions from other company assets "to fund the welfare benefit claims, stop loss insurance, and necessary administrative expenses."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "83" of the Complaint.**

84      A Small Employer Benefits Trust Agreement provided to a limited number of the Participating Plans states that each Participating Plan's contributions shall be deposited in the bank accounts for the AEU Plan and no part of the AEU Plan's funds shall inure to any private person.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "84" of the Complaint.**

85      Marketing materials provided to some Participating Plans discuss a $20 monthly billing fee and $100 "set up fee." No other fees were disclosed.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "85" of the Complaint.**

86      These documents combined with Black Wolf's failure to separate the "base" contribution from its own additional fees, have led Participating Plans to believe the entire amounts paid to Black Wolf were plan assets.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "86" of the Complaint.**

23

87     The Participating Plans' contributions became plan assets once remitted to  Black Wolf.

**ANSWER:     Deny knowledge and information sufficient to admit or deny the allegations in paragraph "87" of the Complaint.**

88     Wilson Benefit, owned and operated by Donald R. Wilson, served as a directed trustee and asset custodian for the AEU Plan and Participating Plans from January 1, 2015, to March 24, 2017, although Wilson Benefit's role was significantly reduced on or around November 30, 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "88" of the Complaint, except admit that Wilson Benefit was the trustee and asset custodian of the AEU Plan during the period of time that Veritas PEO, LLC provided its services to the plan.**

89     From January 1, 2015, to November 30, 2016, "Aggregators" for the AEU Plan would transfer contributions to Wilson Benefit, who was then responsible for holding these plan assets and forwarding amounts as directed by ALLInsurance or the AEU Defendants to the Bermuda Accounts (discussed in more detail below). Wilson Benefit also paid service providers and remitted payments to the claims administrator at the direction of ALLInsurance or the AEU Defendants.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "89" of the Complaint, except: (i) admit that during the period of time that Veritas PEO, LLC provided its services to the AEU Plan, it remitted contributions to Wilson Benefit; and (ii) upon information and belief, Wilson Benefit then held said contributions as directed by the AEU Plan.**

90     Some employers executed trust and service agreements naming Wilson Benefit as Plan Administrator and a named fiduciary. Most employers, however, did not execute these agreements.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "90" of the Complaint.**

24

91     On or around December 1, 2016, SD Trust took over Wilson Benefit's role as directed trustee and asset custodian, although Wilson Benefit continued to perform some acts on behalf of the AEU Plan and Participating Plans, such as filing the AEU Plan's Form 5500 for 2016 and transferring assets to the Bermuda Accounts in March 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "91" of the Complaint.**

92     SD Trust is owned and operated, in part, by Thomas Stoughton, one of ALLInsurance's former managers. SD Trust was responsible for holding Participating Plans' assets, receiving the "base" contributions from Black Wolf, forwarding these amounts to the Bermuda Accounts, paying service providers, and remitting payments to the claims administrator. SD Trust served in this role until November 3, 2017, when the Court entered a TRO enjoining SD Trust from moving assets of the AEU Plan or Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "92" of the Complaint.**

93     Pursuant to several plan documents, SD Trust was the named Plan Administrator and Trustee. However, these documents are unsigned, and SD Trust states that it performed its duties solely at the AEU Defendants' direction.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "93" of the Complaint.**

94     At the AEU Defendants' direction, SD Trust transferred funds to and from the Bermuda Accounts, paid service providers and administration fees, paid the AEU Defendants and its subsidiary CoreCare, and paid itself. SD Trust maintained the Participating Plans' assets in various accounts with Iberia Bank, but did not have individual accounts for each Participating Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "94" of the Complaint.**

95     In addition to setting the "base" contribution rates as discussed *supra*, the AEU Defendants were responsible for hiring and firing service providers, serving as the final decision- maker regarding enrollment of new employers, and overseeing the operation of the AEU Plan and the Participating Plans.

**ANSWER: Admit the allegations in paragraph "95" of the Complaint, except deny knowledge or information sufficient to admit or deny the characterization of contribution rates as "base" contribution rates.**

96      Satler was the signatory for the AEU Defendants on various service provider contracts.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "96" of the Complaint.**

97      In a letter to Participating Plans, Black Wolf referred to the AEU Defendants as the "plan managers."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "97" of the Complaint.**

98      Additionally, AEU Holdings is named as the Plan Sponsor and Plan Administrator in the "AEU Holdings, LLC Plan Document and Summary Plan Description," effective January 1, 2016 ("Plan Document"). This plan document was a template created by Tall Tree and signed by Stephen Satler. Claims administrator Benefit Plan Administrators, Inc. ("BPA") received this same plan document when it began providing services in December 1, 2016, and relied on this document to process claims throughout 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "98" of the Complaint.**

99      The Participating Plans' contributions received from Veritas and Black Wolf, less Veritas' and Black Wolf's undisclosed "fees," were forwarded by either Wilson Benefit or SD Trust to two off-shore accounts in Bermuda, called First Bermuda Purchasing Trust ("BPT1") and Second Bermuda Purchasing Trust ("BPT2"). The contributions sent by Wilson Benefit or SD Trust to BPT1 and BPT2 were not segregated by Participating Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "99" of the Complaint, except: (i) admit that Veritas remitted contributions to Wilson Benefit (including some contributions that Veritas received from Black Wolf); and**

26

**(ii) deny that Veritas withdrew undisclosed fees.**

100     BPT2 is in the name of Omnium Trust company Limited ("Omnium"), a Bermuda company, at The Bank of N.T. Butterfield & Son Limited in Bermuda ("Bank of Butterfield").

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "100" of the Complaint.**

101     BPT1 is in the name of State House Trust Co. Lmt., a Bermuda company, also at Bank of Butterfield.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "101" of the Complaint.**

102     Both BPT1 and BPT2 held and continue to hold plan assets of the Participating Plans to pay the AEU Plan's claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "102" of the Complaint.**

103     The operations of BPT1 and BPT2 appear to be the same, but different entities performed the administrative functions for the two accounts.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "103" of the Complaint.**

104     Pursuant to a trust agreement, State Street is the Trustee of BPT1 with ALLInsurance as the "Protector" who controlled the trust and its assets. The AEU Defendants purchased ALLInsurance and thereafter had the rights and powers of ALLInsurance as the "Protector."

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "104" of the Complaint.**

105     Pursuant to a trust agreement, Omnium is the Trustee of BPT2 and certain powers are given to a defined "Protector" under the contract. Beginning January 18, 2017, the "Protector" was Halo Insurance Group ("Halo"), another Bermuda company. Halo's directors are Satler, Goldberg, and James Kilduff. As stated *supra*, Satler and Goldberg are also officers of the AEU Defendants. The "Protector" under BPT2 is responsible for determining if participating employers have rights to the assets in the account, to terminate employers' rights to the trust,

27

for the accounting of contributions paid into the account, to direct the payment of all

AEU Plan assets to pay claims to either the "Plan Administrator" or the "Third Party Administrator," and the power to remove the trustee.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "105" of the Complaint.**

106    From at least March 31, 2016, to November 2, 2017, the AEU Defendants authorized certain funds to be paid to one of the AEU Plan's current claims administrators and the funds were either paid from Wilson Benefit's accounts, SD Trust's account with Iberia Bank, or one of the Bermuda Accounts. The AEU Defendants directed Wilson Benefit and SD Trust how much to transfer to and from the Bermuda Accounts via monthly reports. From at least March 2017 to July 2017, Goldberg was responsible for finalizing and distributing these monthly reports.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "106" of the Complaint.**

107    In addition to sending the money to the Bermuda Accounts, Wilson Benefit and SD Trust also received the Participating Plans' assets back from BPT1 and BPT2, and then sent money to pay claims to the third-party claims administrators.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "107" of the Complaint.**

108    Some of the Participating Plans' assets in the Bermuda Accounts were used to pay for stop-loss insurance policies with Hannover Life Reassurance Company of America and Lloyds of London.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "108" of the Complaint.**

109    The majority of Participating Plans' assets in BPT1 were transferred to a "segregated account" managed by Uberrimae Fidei Insurance Company, Ltd. ("Uberrimae"), another Bermuda company. On April 1, 2014, D'Iorio, on behalf of Veritas Benefits, LLC, and David Dennett-Smith, on behalf of ALLInsurance, signed a Segregated Account Participation Agreement with Uberrimae, authorizing Uberrimae to establish this segregated account to hold the AEU Plan and Participating Plans' contributions in Bermuda.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations**

in paragraph "109" of the Complaint.

110     The bulk of Participating Plans' assets in BPT2 were transferred to another "segregated account" called "AEUB #1 Segregated Account," managed by a Bermuda entity called R&Q Quest Insurance ("R&Q"). Effective November 1, 2016, Maynor, on behalf of Black Wolf Consulting, Inc., entered into a Cooperation and Indemnification Agreement with R&Q to create and have certain rights and responsibilities over this segregated account.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "110" of the Complaint.**

111     For both BPT1 and BPT2, the AEU Plan paid for reinsurance to cover high-dollar claims. For BPT1, claims over $125,000 were to be covered by reinsurance, and for BTP2, the reinsurance paid claims over $175,000.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "111" of the Complaint.**

112     The AEU Defendants continued to route all AEU Plan and Participating Plans' assets to Bermuda and continued to have full control these assets prior to the Court entering the TRO on November 3, 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "112" of the Complaint.**

113     Upon information and belief, Goldberg or Satler's approval was required before funds were sent to the Bermuda Accounts.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "113" of the Complaint.**

114     On January 1, 2016, Tall Tree Administrators, Inc. ("Tall Tree") entered into a contract with AEU Holdings to serve as the AEU Plan's claims administrator, to administer all claims received from participants in the Participating Plans. Tall Tree served as claims administrator for the AEU Plan and Participating Plans until December 1, 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "114" of the Complaint, except admit that Tall Tree served as claims administrator during the time that Veritas PEO, LLC provided its services to the**

29

**AEU Plan.**

115    Tall Tree ceased providing services on December 1, 2016, after receiving notice of a letter sent to Participating Plans by Black Wolf that the AEU Defendants had terminated Tall Tree as claims administrator.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "115" of the Complaint.**

116    The AEU Plan's next primary claims administrator was BPA, which took over administrative duties from Tall Tree on December 1, 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "116" of the Complaint.**

117    On or about December 1, 2016, BPA entered into an administrative services agreement with AEU Benefits to provide claims administration services for the AEU Plan and thus the Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "117" of the Complaint.**

118    Before paying claims, BPA confirmed with Black Wolf whether participants or beneficiaries were enrolled. Black Wolf was responsible for enrolling participants and beneficiaries in BPA's system.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "118" of the Complaint.**

119    Claims were administered based on the Plan Document and a Summary of Benefits and Coverage ("SBC") for each health plan. Black Wolf provided the SBCs to BPA.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "119" of the Complaint.**

120    After approving claims, Tall Tree or BPA contacted the AEU Defendants and Wilson Benefit or SD Trust to request payment.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "120" of the Complaint.**

30

121     At the AEU Defendants' direction, Wilson Benefit or SD Trust sent a lump sum amount of money to the claims administrator via wire transfer to pay claims, without any itemized breakdown of where the funds should go. The claims administrator then distributed the sums based on the order in which claims were incurred or pursuant to the AEU Defendants' directions.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "121" of the Complaint.**

122     Additional claims administrators also administered claims for the AEU Plan, including Capital Administrators, Taylor Benefit Resources, Inc., Pequot Health Care, and Benefit Administrative Systems, LLC.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "122" of the Complaint.**

123     On or about June 2016, the AEU Plan stopped transferring plan assets to Tall Tree to pay processed claims. In August or early September 2016, the AEU Plan began transferring plan assets to Tall Tree so it could pay claims again, but only paid a fraction of the amounts owed.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "123" of the Complaint.**

124  On July 1, 2016, it was identified to Satler and other individuals at AEU that the AEU Plan's "book is severely unprofitable," the AEU Plan was in "arrears by $3.5 million," and the captive is currently underfunded by $5 million.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "124" of the Complaint.**

125  On December 12, 2016, it was identified to Satler and other individuals at AEU

31

that the AEU Plan had over a $5 million deficiency in program expenses and close to

$20 million in claims liabilities.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "125" of the Complaint.**

126 In a document dated December 2016, AEU received a detailed analysis of the

financial problems of the AEU Plan in the form of a 2016 "Annual financial

Review and Analysis," showing a program deficit over $20 million for 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "126" of the Complaint.**

127   As of October 6, 2017, of the claims Tall Tree processed, there were

approximately $15 to $16 million that remain unpaid.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "127" of the Complaint.**

128    Unpaid claims continued after BPA took over as claims administrator. In 2017, SD Trust did not forward the full amount of funds requested by BPA to pay claims. Beginning February 13, 2017, BPA began sending weekly "unfunded claims registers" to the AEU Defendants and SD Trust.

31

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "128" of the Complaint.**

129     BPA began complaining to the AEU Defendants about the unpaid claims beginning in early March 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "129" of the Complaint.**

130    As of July 31, 2017, the unpaid claims processed by BPA totaled $5,798,011.92.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "130" of the Complaint.**

131    In July 2017, BPA was receiving over 2,000 calls per week from participants and beneficiaries covered by Participating Plans in the AEU Plan, and informed the AEU Defendants of this call volume in an email dated August 1, 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "131" of the Complaint.**

132    On August 7 and 14, 2017, SD Trust wired approximately $946,000.00 to BPA for payment of claims. Still, as of September 1, 2017, there remained $5,135,723.75 in unpaid claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "132" of the Complaint.**

133    As of October 2, 2017, there were $11,761.545.41 in unpaid claims administered by BPA, in addition to the approximately $15 to $16 million in unpaid claims administered by Tall Tree.

**ANSWER:    Deny knowledge or information sufficient to admit or deny the allegations in paragraph "133" of the Complaint.**

134    For the entire period of January 1, 2016, to March 31, 2018, there were over $51 million in unpaid, adjudicated claims.

**ANSWER:    Deny knowledge or information sufficient to admit or deny the allegations in paragraph "134" of the Complaint.**

135    As a result of these unpaid claims, Participating Plan participants andbeneficiaries are receiving collections notices from medical providers and had to forgo treatment.

32

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "135" of the Complaint.**

136     Numerous Participating Plan participants have contacted Black Wolf, BPA, Tall Tree, the Department of Labor's Employee Benefits Security Administration, other administrative agencies, and the Court-appointed independent fiduciary seeking payment of claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "136" of the Complaint.**

137     Throughout 2017, the number of Participating Plans in the AEU Plan was declining as a result of unpaid claims, with employers seeking out alternative health care options for their employees.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "137" of the Complaint.**

<u>COUNT ONE</u>

138     Paragraphs 1-137 above are incorporated by reference.

**ANSWER:     The answering defendants incorporate by reference their responses to paragraphs 1-137.**

139     The AEU Plan documents do not identify a trustee for the AEU Plan or the Participating Plans.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "139" of the Complaint.**

140     The AEU Defendants did not specifically appoint a trustee for the AEU Plan or the Participating Plans.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "140" of the Complaint.**

141     From at least January 1, 2016, to November 30, 2016, the AEU Plan and Participating Plans' assets were held in accounts first in Black Wolf's or

33

Veritas' name, then

Wilson Benefit's name, and finally in various accounts in Bermuda. Neither Black Wolf, Veritas, Wilson Benefit, nor any Bermuda entity was named trustee of the AEU Plan or Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "141" of the Complaint except: (i) admit that Veritas was not a named trustee of the AEU Plan or Participating Plans; and (ii) admit that Veritas temporarily held the contributions of some participating plans in an account in Veritas's name, before remitting those contributions to Wilson Benefit (the plan trustee).**

142     Veritas, directed by either LaMantia or D'Iorio, transmitted contributions to Wilson Trust, knowing these contributions would be transferred to Bermuda.

**ANSWER:  Deny the allegations in paragraph "142" of the Complaint, except  admit that Veritas remitted contributions to Wilson Trust (by wiring them to a Wilson Trust bank account in Maryland), on the assumption that Wilson Trust would hold the funds in appropriate accounts.**

143     Effective November 1, 2016, to November 3, 2017, the AEU Plan and Participating Plans' assets were held in accounts first in Black Wolf's name, then SD Trust's name, and finally in various accounts in Bermuda. Neither Black Wolf, SD Trust, nor any Bermuda entity was anamed trustee of the AEU Plan or Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "143" of the Complaint.**

144     Some of the VEBA Trust Agreements completed by employers to enroll in the AEU Plan designated a representative of the employer as a trustee. In practice, these representatives played no role in the management or administration of the Participating Plans or the AEU Plan, and no assets were held in their name. Furthermore, most employers did not sign one of these VEBA Trust Agreements.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "143" of the Complaint.**

34

145     The AEU Plan and Participating Plans' assets were held in at least two off-shore bank accounts in Bermuda, outside of the jurisdiction of the United States.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "145" of the Complaint.**

146     On April 1, 2014, D'Iorio, on behalf of Veritas Benefits, LLC, signed a Segregated Account Participation Agreement to establish a segregated account to hold the AEU Plan and Participating Plans' contributions in Bermuda.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in in paragraph "146" of the Complaint, except admit that D'Iorio signed a certain agreement regarding the establishment of a segregated account regarding the AEU Plan, which speaks for itself.**

147     Effective November 1, 2016, Maynor, on behalf of Black Wolf Consulting, Inc., entered into a Cooperation and Indemnification Agreement to create and have certain rights and responsibilities over a segregated account in Bermuda.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "147" of the Complaint.**

148     Goldberg or Satler was responsible for approving the transfer of funds to the Bermuda Accounts. Satler and Goldberg designed, implemented, and (effective January 18, 2017) served as "Protector" of BPT2. Goldberg was responsible, from at least March 2017 to July 2017, for sending out reports directing the movement of funds to Bermuda.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "148" of the Complaint.**

149     From at least January 1, 2016, to December 1, 2016, Wilson Benefit acted as asset custodian and transferred the AEU Plan and Participating Plans' assets to Bermuda, and received fees for these services.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "149" of the Complaint, except admit that Wilson Benefit was the**

35

AEU Plan's trustee and custodian during the time that Veritas PEO, LLC provided its services to the plan.

150    By the actions and failures to act as described above, from approximately January 1, 2016 to December 1, 2016, Defendants AEU HOLDINGS, AEU BENEFITS, STEPHEN SATLER, STEVEN GOLDBERG, VERITAS PEO, LLC, VERITAS BENEFITS, LLC, JAMES D'IORIO, CHARLES LAMANTIA, BLACK WOLF CONSULTING, INC., and ROD MAYNOR:

a.    failed to hold all assets of an employee benefit plan in trust by one or more trustees named in the trust instrument or plan instrument or appointed by a person who is a named fiduciary, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

b.    maintained the indicia of ownership of plan assets outside the jurisdiction of the district courts of the United States, in violation of ERISA § 404(b), 29 U.S.C. § 1104(b).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "141" of the Complaint and its sub-parts, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) deny that the answering defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were fiduciaries of the AEU Plan or participating plans; (iii) deny that those answering defendants held or failed to hold any assets in violation of ERISA; and (iv) deny that those answering defendants exercised indicia of ownership of the plan assets outside of the jurisdiction of the district courts of the United States.**

151    As a result of the foregoing breaches of duty, Defendants AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, VERITAS PEO, LLC, VERITAS BENEFITS, LLC, JAMES D'IORIO, CHARLES LAMANTIA, BLACK WOLF CONSULTING, INC., and ROD MAYNOR caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations**

36

in paragraph "151" of the Complaint, except: (i) admit that the statutes cited

therein exist and speak for themselves; (ii) deny that the answering defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were fiduciaries of the AEU Plan or participating plans; (iii) deny that those answering defendants caused losses to the AEU Plan or participating plans; and (iv) deny that the plaintiff is entitled to equitable relief against those answering defendants.

152     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), from at least January 1, 2016 to November 1, 2016, Defendants BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS PEO, LLC, VERITAS BENEFITS, LLC, JAMES D'IORIO, and CHARLES LAMANTIA are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "152" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; (ii) deny that the answering defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were fiduciaries of the AEU Plan or participating plans; (iii) deny that any party was a "co-fiduciary" of those answering defendants; and (iv) deny that those answering defendants are liable for any breaches (either for themselves or any alleged "co-fiduciary").**

153     As a result of the conduct described above, Defendants WILSON BENEFIT SERVICES, LLC, WBS, LLC, and DONALD R. WILSON knowingly participated in the breaches of fiduciary duty described herein and are subject to such appropriate equitable relief to redress the violations in which they knowingly participated and by which they were unjustly enriched and are liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

**ANSWER: Deny knowledge or information sufficient to admit or deny the**

allegations in paragraph "153" of the Complaint and its sub-parts, except: (i) admit that the

statutes cited therein exist and speak for themselves; and (ii) to the extent that this paragraph may imply that those answering defendants are guilty of any breach of fiduciary obligation, said allegation is denied.

154    By the actions and failures to act as described above, from approximately December 1, 2016 to November 3, 2017, Defendants AEU HOLDINGS, AEU BENEFITS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC., and ROD MAYNOR:

a.    failed to hold all assets of an employee benefit plan in trust by one or more trustees named in the trust instrument or plan instrument or appointed by a person who is a named fiduciary, in violation of ERISA § 403(a), 29 U.S.C. § 1103(a); and

b.    maintained the indicia of ownership of plan assets outside the jurisdiction of the district courts of the United States, in violation of ERISA § 404(b), 29 U.S.C. § 1104(b).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "154" of the Complaint and its sub-parts except admit that the statutes cited therein exist and speak for themselves.**

155    As a result of the foregoing breaches of duty, Defendants AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC., and ROD MAYNOR caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "155" of the Complaint and its sub-parts except admit that the statutes cited therein exist and speak for themselves.**

156    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), from at least December 1, 2016 to November 3, 2017, Defendants BLACK WOLF CONSULTING, INC., and ROD MAYNOR are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§

1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "156" of the Complaint and its sub-parts, except: (i) admit that the statutes cited therein exist and speak for themselves; and (ii) to the extent that this paragraph may imply that those answering defendants are guilty of any breach of fiduciary obligation, said allegation is denied.**

<u>COUNT TWO</u>

157     Paragraphs 1-156 above are incorporated by reference.

**ANSWER: The answering defendants incorporate by reference their responses to paragraphs 1-156.**

158     At all times relevant to this Amended Complaint, the AEU Defendants were fiduciaries and parties-in-interest to the Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "158" of the Complaint.**

159     The AEU Defendants were responsible for managing the AEU Plan and Participating Plans, monitoring service providers, hiring and firing services providers, and controlling expenses.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "159" of the Complaint.**

160     The AEU Defendants permitted Veritas to mark up the contribution amounts set by the AEU Defendants so that Veritas could collect undisclosed fees, and also directed Wilson Benefit to pay a PEO Referral fee each month to Veritas.

**ANSWER:     Deny the allegations in paragraph "160" of the Complaint.**

161     The AEU Defendants permitted Black Wolf to collect undisclosed fees that ranged from between 17 and 44 percent of the contribution amounts Black Wolf charged the participating employers in the AEU Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "161" of the Complaint.**

162     The AEU Defendants caused the AEU Plan and Participating Plans to maintain at least two accounts in Bermuda, incurring unnecessary and undisclosed management fees, trustee fees, and attorney fees.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "162" of the Complaint.**

163     The AEU Defendants caused the AEU Plan and Participating Plans to pay substantial undisclosed fees for compliance with certain federal reporting requirements, but these reporting requirements were not being met.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "163" of the Complaint.**

164     The AEU Defendants caused the AEU Plan and Participating Plans to pay for excessive reinsurance, amounting to $10.5 million in reinsurance costs in 2016, when this insurance only covered $3.5 million in claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "164" of the Complaint.**

165     The AEU Defendants also paid themselves from the AEU Plan and Participating Plans' assets, including an undisclosed program management fee of approximately 11 to 13 percent of the expected claims cost, as well as a separate undisclosed management fee  of approximately 2.5 percent to a subsidiary called CoreCare.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "165" of the Complaint.**

166     The AEU Defendants caused the AEU Plan and Participating Plans to pay aggregate undisclosed administrative fees and expenses that represent 41 percent of the contribution amounts Black Wolf charged to the participating employers in the AEU Plan. Including Black Wolf's undisclosed fees in 2017, the expenses are well over 50 percent of the contribution amounts.

40

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "166" of the Complaint.**

167    As CEO and COO of AEU Holdings, respectively, Satler and Goldberg were responsible for providing direction to Wilson Benefit or SD Trust as to the amounts to pay service providers and administration fees.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "167" of the Complaint.**

168    By the actions and failures to act as described above, Defendants AEU HOLDINGS, AEU BENEFITS, STEPHEN SATLER, and STEVEN GOLDBERG:

a.    failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.    used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the and Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

d.    used the Participating Plans' assets in transactions which they knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the AEU Plan, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D); and

e.    dealt with assets of the Plans in their own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "168" of the Complaint, except: (i) admit that the statutes cited therein exist**

41

and speak for themselves; and (ii) deny that the answering defendants James

D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were fiduciaries or committed any breach of fiduciary duty.

> 169     As a result of the foregoing breaches of duty, Defendants AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER and STEVEN GOLDBERG caused losses to the ERISA- covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "169" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; and (ii) deny that the answering defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were fiduciaries or committed any breach of fiduciary duty.**

<u>COUNT THREE</u>

170     Paragraphs 1-169 above are incorporated by reference.

**ANSWER: The answering defendants incorporate by reference their responses to paragraphs 1-160.**

> 171     At all times relevant to this First Amended Complaint, Black Wolf Consulting, Inc. and Rod Maynor were fiduciaries and parties-in-interest to the Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "171" of the Complaint.**

> 172     Black Wolf added an undisclosed amount of additional compensation to the monthly contributions it billed to each Participating Plan. Black Wolf made no effort to disclose these fees to the Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "172" of the Complaint.**

> 173     Black Wolf set its own compensation, and the amount of

42

compensation varied among Participating Plans and for different plan options (*e.g.*, Self, Family, *etc*.). Whereas the

AEU Defendants designated 36 different contribution rates for the 36 different plan options, Black Wolf was charging 192 different contribution rates to various employers.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "173" of the Complaint.**

174    Black Wolf's compensation, set by Maynor, ranged from 17 to 44 percent of the contribution assessed per participant.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "174" of the Complaint.**

175    The AEU Defendants approved Black Wolf assessing a contribution "spread," which was assessed at Maynor's discretion, on top of the contributions charged to Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "175" of the Complaint.**

176    Neither Black Wolf nor the AEU Defendants disclosed Black Wolf's additional compensation to the Participating Plans. Black Wolf's invoices issued to Participating Plans combine Black Wolf's "spread" and the "base" contribution amount for each participant, such that the two were indistinguishable, and simply labeled the amount due as the "Price Each." The marketing materials presented to the Participating Plans disclosed only two fees: (1) a one-time, $100 set-up fee, and (2) a $20 monthly billing fee. The Participating Plans had no way of knowing the undisclosed amount of additional compensation collected by Black Wolf for the various plan options.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "176" of the Complaint.**

177    The AEU Defendants have acknowledged that Black Wolf's setting of rates was done in an "ad hoc" manner.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "177" of the Complaint.**

178    From the plan assets that Black Wolf retained, it also paid a portion of its undisclosed "fees" to the sub-brokers working on its behalf, pursuant to

43

contractual obligations or other agreements with these brokers.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "178" of the Complaint.**

179     Given the disproportionate amount of fees assessed and Black Wolf's payment from plan assets of portions of these fees to brokers who provided no services to the AEU Plan or the Participating Plans, Black Wolf's undisclosed compensation was excessive and unreasonable, and did not constitute an ordinary and necessary plan expense.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "179" of the Complaint.**

180     By the actions described above, Defendants BLACK WOLF CONSULTING, INC., and ROD MAYNOR:

a.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

b.     failed to act with care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.     used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

d.     used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

e.     dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

f.     acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "180" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

181    As a result of the foregoing breaches of duty, BLACK WOLF CONSULTING, INC., and ROD MAYNOR caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "181" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

182    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants AEU HOLDINGS and AEU BENEFITS are liable for the breaches of their co- fiduciaries because, as described above, they knowingly participated in or concealed an act or omission knowing that such act or omission is a breach; they enabled the other fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "182" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

COUNT FOUR

183    Paragraphs 1-182 above are incorporated by reference.

**ANSWER: The answering defendants incorporate by reference their responses to paragraphs 1-182.**

184    At all times relevant to this Second Amended Complaint, AEU Benefits, AEU Holdings, Stephen Satler, Steven Goldberg, Black Wolf Consulting, Inc., and Rod Maynor were fiduciaries and parties-in-interest with respect to the Participating Plans.

45

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "184" of the Complaint.**

185     Starting in the summer of 2016, the AEU Plan stopped paying most claims. Since that time, the AEU Plan has been unable to pay medical claims for all participants and beneficiaries.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "185" of the Complaint.**

186     The AEU Defendants and Black Wolf were aware of unpaid claims since being put on notice in fall of 2016, continuing throughout 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "186" of the Complaint.**

**187AEU received a report in early 2017 with detailed analysis showing the AEU plan was underfunded by 20 million for 2016.**

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "187" of the Complaint.**

188     The amount of unpaid claims continued to rise, suffering from a significant funding shortage with current unpaid, adjudicated claims exceeding $51 million.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "188" of the Complaint.**

189     Claims administrator BPA sent numerous emails to the AEU Defendants requesting funding to pay the unpaid claims in 2017. On July 26, 2017, BPA sent an email to the AEU Defendants noting the very high call volumes BPA was receiving as a result of unpaid claims. On July 28, 2017, BPA sent an email to Satler, with Goldberg copied, regarding BPA's intent to terminate its services due to the outstanding unpaid claims.

46

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "189" of the Complaint.**

190  throughout 2016 and 2017 AEU defendants were involved in operating the AEU plan and making financial decisions for the plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "190" of the Complaint.**

191     From May to July 2017, Goldberg received several emails informing him of the AEU Plan's failure to pay claims and, as COO of AEU Holdings, Goldberg personally responded to many of these emails.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "190" of the Complaint.**

192    Employers and brokers contacted Black Wolf Consulting, Inc. and Maynor directly regarding unpaid claims in 2017.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "192" of the Complaint.**

193    In March 2017, in a memorandum from Satler and other AEU officers, the AEU Defendants acknowledged that the AEU Plan is materially underfunded with approximately 21,000 unpaid claims. The AEU Defendants sent a similar memorandum to Maynor in March 2017, noting unpaid claims from 2016 to date.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "193" of the Complaint.**

194    In April 2017, Maynor communicated in writing with Stoughton regarding unpaid claims and complaints from participants.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "194" of the Complaint.**

195    Despite these unpaid claims, Black Wolf continued to attempt to enroll new employers in the AEU Plan without advising them of the AEU Plan's inability to pay claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "195" of the Complaint.**

196    Neither Black Wolf nor the AEU Defendants disclosed the fact that the AEU Plan was unable to pay claims to either the current or newly enrolled Participating Plans, while unwitting participants and beneficiaries continued to incur claims for medical services and face collections notices and possible litigation for existing unpaid medical claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "196" of the Complaint.**

197    From at least January 1, 2016, to December 1, 2016, Wilson Benefit acted as asset custodian for and managed the movement of all funds of the AEU Plan and Participating Plans, and received fees for these services. In this role, Wilson Benefit

47

was aware of the unpaid claims in 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "197" of the Complaint, except admit that during the period of time that Veritas PEO, LLC provided its services to the AEU Plan, Wilson Benefit acted as asset custodian.**

198     By the actions and failures to act as described above, Defendants AEU HOLDINGS, AEU BENEFITS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC., and ROD MAYNOR:

> a.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

> b.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "198" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

199     As a result of the foregoing breaches of duty, AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC., and ROD MAYNOR caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "199" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

200     Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC., and ROD MAYNOR are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or

48

omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach by their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "200" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

201     As a result of the conduct described above, Defendants WILSON BENEFIT SERVICES, LLC, WBS, LLC, and DONALD R. WILSON knowingly participated in the breaches of fiduciary duty described herein and are subject to such appropriate equitable relief to redress the violations in which they knowingly participated and by which they were unjustly enriched and are liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "201" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

## COUNT FIVE

202     Paragraphs 1-201 above are incorporated by reference.

**ANSWER:     The answering defendants incorporate by reference their responses to paragraphs 1-201.**

203     Participating employers enrolled in the AEU Plan by Black Wolf paid all contributions to Black Wolf's account at Bank of Pontiac, No. ****6428 ("Account 6428").

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "203" of the Complaint.**

204     Upon information and belief, Account 6428 was comprised solely of contributions received from Participating Plans, and therefore, held plan assets.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the**

49

allegations in paragraph "204" of the Complaint.

205     As the President, CEO, and sole owner, Rod Maynor directed all financial decisions and payments from Account 6428.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "205" of the Complaint.**

206     Rod Maynor and Anna Maynor were the signatories on Account 6428.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "206" of the Complaint.**

207     Anna Maynor signed checks to Rod Maynor from Account 6428 totaling $1,699,138.84 in 2016.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "207" of the Complaint.**

208     Anna Maynor signed checked to Rod Maynor from Account 6428 totaling $1,655,535.10 in 2017.

**ANSWER:     Deny knowledge or information sufficient to admit or deny the allegations in paragraph "208" of the Complaint.**

209     Between 2016 and 2017, Black Wolf Consulting, Inc. and Rod Maynor caused over $3.3 million in plan assets to be transferred to Rod Maynor who was a party in interest to the AEU Plan and Participating Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "209" of the Complaint.**

210     By causing over $3.3 million in plan assets to be transferred to Rod Maynor, Black Wolf Consulting, Inc. and Rod Maynor dealt with assets in their own interests and acted on behalf of themselves whose interest in profiting from the AEU Plan and Participating Plans was adverse to the interests of these Plans.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "210" of the Complaint.**

50

211    By the actions described above, Defendants BLACK WOLF CONSULTING, INC. and ROD MAYNOR:

a.    failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

b.    failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

c.    used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.    dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

e.    acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "211" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

212    As a result of the foregoing breaches of duty, BLACK WOLF CONSULTING, INC. and ROD MAYNOR caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "212" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

<u>COUNT SIX</u>

213     Paragraphs 1-212 above are incorporated by reference.

**ANSWER: The answering defendants incorporate by reference their responses to paragraphs 1-212.**

214    From at least January 1, 2016, to November 30, 2016, participating employers paid their Plan contributions directly to Black Wolf who in turn transferred most of the contributions to Veritas' account at First Niagara/KeyBank "Benefits Account" ****8992 ("Account 8992").

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "214" of the Complaint, except admit that during 2016 participating employers paid contributions to Black Wolf, and that Black Wolf remitted those contributions to Veritas at the referenced bank account.**

215    Veritas' direct clients transmitted payroll and health plan contributions in one lump sum to Veritas' "Operating Account" ****7319. A Veritas employee would then transfer the money for health plan contributions from this account to Account 8992.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "215" of the Complaint, except Veritas PEO, LLC's direct clients transmitted payroll and health plan contributions to Account ****7319, and that Veritas would then transmit those funds to Account 8992.**

216    Upon information and belief, Account 8992 was comprised solely of contributions received from Participating Plans in the AEU Plan, and therefore, held plan assets.

**ANSWER:  Deny the allegations in paragraph "216" of the Complaint, except  admit that Account 8992 was used exclusively for sums collected by Veritas from Participating Plans.**

217    As the co-owners, D'Iorio and LaMantia authorized all wire transfers or payments from Account 8992.

**ANSWER: Deny the allegations in paragraph "217" of the Complaint, except admit that D'Iorio and LaMantia (as managers of Veritas, not owners) from time to time authorized wire transfers or payments from Account 8992, for proper purposes.**

218     From January 1, 2016 to February 23, 2017, at least $3,249,334.52 were transferred from Account 8992 to Veritas Benefits, LLC, Veritas PEO, LLC, D'Iorio, LaMantia, or entities controlled by the foregoing.

**ANSWER:     Deny the allegations in paragraph "218" of the Complaint.**

219     Veritas Benefits, LLC, Veritas PEO, LLC, D'Iorio, and LaMantia caused over $3.2 million in plan assets to be transferred to Veritas Benefits, LLC, Veritas PEO, LLC, D'Iorio, and LaMantia either directly or indirectly, and each of them was a party in interest to the AEU Plan and Participating Plans.

**ANSWER:     Deny the allegations in paragraph "219" of the Complaint.**

220     By causing over $3.2 million in plan assets to be transferred to themselves, Veritas Benefits, LLC, Veritas PEO, LLC, D'Iorio, and LaMantia dealt with assets in their own interests and acted on behalf of themselves whose interest in profiting from the AEU Plan and Participating Plans was adverse to the interests of these Plans.

**ANSWER:     Deny the allegations in paragraph "220" of the Complaint.**

221     By the actions described above, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA:

a.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

b.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

c.     used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the

53

Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D);

d.     dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

e.     acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interests of their participants and beneficiaries, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER:     Deny the allegations in paragraph "221" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

222     As a result of the foregoing breaches of duty, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:  Deny the allegations in paragraph "222" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

<u>COUNT VII</u>

223     Paragraphs 1-222 above are incorporated by reference.

**ANSWER: The answering defendants incorporate by reference their responses to paragraphs 1-222.**

224     From at least January 1, 2016, to November 30, 2016, Veritas Benefits, LLC, Veritas PEO, LLC, James D'Iorio, and Charles LaMantia were fiduciaries and parties-in-interest to the Participating Plans.

**ANSWER:     Deny the allegations in paragraph "224" of the Complaint.**

225     Veritas added an undisclosed amount of additional compensation to the monthly contributions it collected from each Participating Plan in the AEU Plan. Veritas made no effort to disclose these fees to the Participating Plans.

**ANSWER:     Deny the allegations in paragraph "225" of the Complaint.**

226     Veritas set its own compensation, and the amount of compensation varied among Participating Plans. Veritas marked up the contribution rates set by the AEU Defendants, adding an average of 15% to all the plan rates it charged to

54

participating employers enrolled in the AEU Plan by Black Wolf. Veritas also marked up the contribution rates it charged to participating employers enrolled in the AEU Plan directly by Veritas, charging an average of 54% mark-up.

**ANSWER:** Deny the allegations in paragraph "226" of the Complaint.

227    Veritas also received a "PEO Referral Fee" from the AEU Plan as directed by the AEU Defendants that amounted to 3-5% of the expected claims cost.

**ANSWER:  Deny the allegations in paragraph "227" of the Complaint, except  admit that in one calendar month only (May 2016) the AEU Plan did pay Veritas PEO, LLC a PEO Referral Fee.**

228    Veritas also charged participating employers enrolled in the AEU Plan by Black Wolf either $15 or $20 per participant per month, as well as a one-time $100 set-up fee.

**ANSWER: Denies the allegations alleged "228" of the Complaint as alleged on a generalized basis, but admits that Veritas PEO, LLC charged certain participating employers monthly administrative fees, sometimes in the amount of $15 or $20, and admits that Veritas PEO, LLC at times charged one-time set-up fees in the vicinity of $100 (and notes that these fees were disclosed to the participating employers, and the one-time set-up fee funds were transmitted to Wilson Benefit for the purpose of purchasing bonds for the plan).**

229    D'Iorio and LaMantia, as owners and officers of Sterling Godfrey, Veritas' holding company, were responsible for setting Veritas' fees.

**ANSWER:    Deny the allegations in paragraph "229" of the Complaint.**

230    The AEU Defendants knew Veritas was increasing the contribution rates provided by AEU.

**ANSWER:    Deny the allegations in paragraph "230" of the Complaint.**

231    The AEU Defendants further directed Wilson Benefit to pay a "PEO Referral Fee" to Veritas (or Guided Benefits, LLC, a New Jersey limited liability company owned by LaMantia, on behalf of Veritas). The AEU Plan's 2016 Form 5500 reported $1,562,691 was paid to Guided Benefits, LLC in 2016. Guided Benefits performed no services for the AEU Plan and Participating Plans.

55

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "231" of the Complaint, except admit that during one calendar month only (May 2016) Veritas PEO, LLC received a PEO Referral Fee.**

232     Neither Veritas, Black Wolf, nor the AEU Defendants disclosed Veritas' additional compensation to the Participating Plans, other than the $100 set-up fee. The Participating Plans had no way of knowing the amount of additional compensation collected by Veritas for the various plan options.

**ANSWER:     Deny the allegations in paragraph "232" of the Complaint.**

233     Given the disproportionate amount of fees assessed, Veritas' undisclosed compensation was excessive and unreasonable, and did not constitute an ordinary and necessary plan expense.

**ANSWER:  Deny the allegations in paragraph "233" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

234     By the actions described above, Defendants VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA:

a.     failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

b.     failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B);

c.     used the Participating Plans' assets in transactions which furnished goods, services, or facilities between the Participating Plans and a party in interest, in violation of ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C);

d.     used the Participating Plans' assets in transactions which it knew or should have known constituted a direct or indirect transfer to, or use by or for the benefit of, a party in interest, of assets of the Participating Plans, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. §

56

1106(a)(1)(D);

    e.  dealt with assets of the Participating Plans in its own interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1); and

> f.    acted on behalf of a party whose interests were adverse to the interests of the Participating Plans or the interest of their participants and beneficiaries, in violation of ERISA

§ 406(b)(2), 29 U.S.C. § 1106(b)(2).

**ANSWER:    Deny the allegations in paragraph "234" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

> 235    As a result of the foregoing breaches of duty, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER:  Deny the allegations in paragraph "235" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

> 236    Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), Defendants AEU HOLDINGS and AEU BENEFITS are liable for the breaches of their co- fiduciaries because, as described above, they knowingly participated in or concealed an act or omission, knowing that such act or omission is a breach; they enabled the other fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach and did not make reasonable efforts under the circumstances to remedy it.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "236" of the Complaint, except: (i) admit that the statutes cited therein exist and speak for themselves; and (ii) deny that defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC were co-fiduciaries and deny that they committed any breaches of fiduciary duty.**

<u>COUNT EIGHT</u>

237    Paragraphs 1-236 above are incorporated by reference.

**ANSWER:    The answering defendants incorporate by reference their responses to paragraphs 1-236.**

57

238     From at least January 1, 2016, to November 30, 2016, Veritas Benefits, LLC, Veritas PEO, LLC, James D'Iorio, and Charles LaMantia were fiduciaries and parties-in-interest with respect to the Participating Plans.

**ANSWER:     Deny the allegations in paragraph "238" of the Complaint.**

239     Starting in the summer of 2016, the AEU Plan stopped paying most claims. Since that time, the AEU Plan has been unable to pay medical claims for all participants and beneficiaries. The amount of unpaid claims continued to rise during 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "239" of the Complaint.**

240     Veritas Benefits, LLC, Veritas PEO, LLC, James D'Iorio, and Charles LaMantia were aware of unpaid claims since at least mid-2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "240" of the Complaint, except admit that at some point in time in 2016, D'Iorio became aware of some unpaid claims.**

241     As early as July 2016, LaMantia was fielding questions from Participating Plans about collections efforts for unpaid claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "241" of the Complaint.**

242     On September 7, 2016, D'Iorio was copied on a letter from Tall Tree detailing $7.7 million in outstanding unpaid claims.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "242" of the Complaint, except admit that at some point in time in 2016, D'Iorio became aware of some unpaid claims.**

243     On September 29, 2016, Tall Tree sent D'Iorio a letter noting the funding defaults of the AEU Plan.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "243" of the Complaint, except admit that at some point in time in 2016, D'Iorio became aware of some unpaid claims.**

244    On November 3, 2016, LaMantia and D'Iorio received correspondence from Tall Tree detailing outstanding claims of $8.6 million for the last 7 weeks.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "244" of the Complaint, except admit that at some point in time in 2016, D'Iorio became aware of some unpaid claims.**

245    Veritas continued to collect the same amount of undisclosed fees from Participating Plans throughout 2016.

**ANSWER:    Deny the allegations in paragraph "245" of the Complaint.**

246    From at least January 1, 2016, to December 1, 2016, Wilson Benefit acted as asset custodian for and managed the movement of all funds of the AEU Plan and Participating Plans, and received fees for these services. In this role, Wilson Benefit was aware of the unpaid claims in 2016.

**ANSWER: Deny knowledge or information sufficient to admit or deny the allegations in paragraph "246" of the Complaint, except admit during the period of time that Veritas PEO, LLC provided its services to the AEU Plan, Wilson Benefit was asset custodian for the AEU Plan.**

247    By the actions and failures to act as described above, Defendants VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA:

a.    failed to act solely in the interest of the participants and beneficiaries of the Participating Plans and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of plan administration, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A); and

b.    failed to act with the care, skill, prudence, and

diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

**ANSWER: Deny the allegations in paragraph "247" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

      248     As a result of the foregoing breaches of duty, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO, and CHARLES LAMANTIA caused losses to the ERISA-covered employee benefit plans participating in the AEU Plan, for which the Participating Plans are entitled to equitable relief. ERISA § 409, 29 U.S.C. § 1109.

**ANSWER: Deny the allegations in paragraph "238" of the Complaint except admit that the statutes cited therein exist and speak for themselves.**

Pursuant to ERISA § 405(a)(1) through (3), 29 U.S.C. § 1105(a)(1) through (3), from at least January 1, 2016 to February 1, 2017, Defendants **VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** are liable for the breaches of their co-fiduciaries as described above, because they knowingly participated in or concealed an act or omission of their co-fiduciaries, knowing that such act or omission was a breach; they enabled their co-fiduciaries to commit a breach by breaching their own fiduciary duties under ERISA § 404(a)(1), 29 U.S.C.§ 1104(a)(1); and they had knowledge of a fiduciary breach by

their co-fiduciaries and did not make reasonable efforts under the circumstances to remedy it.249. As a result of the conduct described above, Defendants **WILSON BENEFIT SERVICES, LLC, WBS, LLC,** and **DONALD R. WILSON** knowingly participated in the breaches of fiduciary duty described herein and are subject to such appropriate equitable relief to redress the violations in which they knowingly participated and by which they were unjustly enriched and are liable thereby pursuant to ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

WHEREFORE, the Court having already granted a temporary restraining order and preliminary injunction in this matter (Docket Nos. 14, 59), and having appointed an independent fiduciary to control and marshal all assets of the AEU Plan and Participating Plans, the Secretary asks that this Court enter an Order:

1. Permanently removing Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, BLACK WOLF CONSULTING, INC.,** and **ROD MAYNOR** and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party acting in concert with them or at their direction, as fiduciaries, service providers, trustees, and administrators of the Participating Plans or the AEU Plan;

2. Permanently enjoining Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, HALO P & C NORTH AMERICA, LLC, HALO ADVISORS, LLC, BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** and anyone acting on their behalf, including their officers, agents, employees, assigns, subsidiaries, affiliates, service providers, accountants, attorneys, and any other party

acting in concert with them or at their direction from acting as a fiduciary, service provider, trustee, or administrator to the Participating Plans or the AEU Plan;

3.       Requiring Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, HALO P & C NORTH AMERICA, LLC, HALO ADVISORS, LLC, BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** to restore all losses they caused to the Participating Plans;

4.       Requiring Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, HALO P & C NORTH AMERICA, LLC, HALO ADVISORS, LLC, BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** to jointly and severally reimburse the fees and expenses of the Independent Fiduciary to the AEU Plan and Participating Plans;

5.       Requiring Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, HALO P & C NORTH AMERICA, LLC, HALO ADVISORS, LLC, BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS BENEFITS, LLC, VERITAS PEO, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** to reverse the prohibited transactions and to disgorge to the AEU Plan all profits and fees and other monies earned in connection with their violations;

6.       Requiring Defendants **WILSON BENEFIT SERVICES, LLC, WBS, LLC,** and **DONALD R. WILSON** to disgorge to the AEU Plan all profits and fees and other monies earned as a result of their knowing participation in the violations described herein;

55

7.       Permanently enjoining Defendants **AEU BENEFITS, AEU HOLDINGS, STEPHEN SATLER, STEVEN GOLDBERG, HALO P & C NORTH AMERICA, LLC, HALO ADVISORS, LLC, BLACK WOLF CONSULTING, INC., ROD MAYNOR, VERITAS PEO, LLC, VERITAS BENEFITS, LLC, JAMES D'IORIO,** and **CHARLES LAMANTIA** or anyone acting on their behalf including their principals, officers, directors, owners, agents, assigns or subsidiaries, from ever acting as a fiduciary or service provider to any plan covered by Title I of ERISA and from marketing or enrolling any employers, professional employer organizations, or participants in any ERISA or non-ERISA covered health plan or any plan purporting to provide any type of medical benefits;

8.       Awarding the Secretary the costs of this action; and

9.       Granting such other relief as may be equitable, just, and proper.

## RESIDUAL DENIAL

249      If and to the extent there are any allegations in the Complaint that are not expressly answered in paragraphs "1" through "238" of this Answer, said allegations are denied.

## AFFIRMATIVE DEFENSES

### As and For a First Affirmative Defense

250      Defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC are not liable for any obligation and liabilities of any other defendant or third-party defendant, because these moving defendants did not direct or otherwise assist or endorse any misfeasance, malfeasance, or actionable acts or omissions.

### As and For a Second Affirmative Defense

251     The alleged damages, if any, were caused by one or more other superseding and/or intervening causes, and/or were not directly or proximately caused by these answering defendants.

### As and For a Third Affirmative Defense

252     Plaintiff's remedies, if any, are limited to the exclusive remedies available under the enforcement provisions of ERISA.

### As and For a Fourth Affirmative Defense

253     The alleged damages are barred in whole or in part because any alleged loss was not caused by the fault or wrongdoing of these answering defendants or persons or entities over which they had responsibility or control. Any loss alleged by the plaintiff was due to the acts or omissions of persons or entities over who the answering defendants had no responsibility or control. The answering defendants' compensation was approved by the plan fiduciaries.

### As and For a Fifth Affirmative Defense

254     To the extent the plaintiff alleges liability against the answering defendants in a non-fiduciary capacity, the plaintiff's claims are barred in whole or in part because the relief sought does not constitute appropriate equitable relief against a non-fiduciary under ERISA §502(a)(5), 29 U.S.C. §1132(a)(5). (These answering defendants also specifically deny that they were fiduciaries of the AEU Plan or any participating plans.)

61

**As and For a Sixth Affirmative Defense**

255    Without conceding that James D'Iorio, Veritas Benefits, LLC or Veritas PEO, LLC were fiduciaries or parties in interest, or a knowing participant with respect to conduct complained

of by the plaintiff, to the extent the plaintiff can establish any transactions prohibited by ERISA, the plaintiff's claims are barred in whole or in part by ERISA §408, 29 U.S.C. §1108, which exempts all such transactions. The answering defendants received no more than reasonable compensation nor more than the fair market value of their services taking into account the specific needs of the plan under ERISA. The moving defendants did not exercise control over their compensation. The applicable fees and compensation were approved by the plan fiduciaries.

### JURY DEMAND

256    The answering defendants hereby demand a trial by jury on issue in this matter that is triable.

WHEREFORE, defendants James D'Iorio, Veritas Benefits, LLC and Veritas PEO, LLC pray for judgment on their behalf and for such other and further relief as this Court deems just and proper.

Dated: February 19, 2020                    Respectfully submitted,

James A. D'Iorio
Pro Se

26f Congress Streert

PMB 215

Saratoga Springs, NY  12866

248-835-7798

62