**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

**MARTIN J. WALSH**, Secretary of Labor,
United States Department of Labor,

            Plaintiff,

        v.

**AEU BENEFITS, LLC,**
**AEU HOLDINGS, LLC,**
**BLACK WOLF CONSULTING, INC.,**
**SD TRUST ADVISORS, LLC,**
**and the AEU HOLDINGS, LLC**
**EMPLOYEE BENEFIT PLAN,**

            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

**CIVIL ACTION NO.   1:17-cv-07931**
**(Hon. John F. Kness)**

<u>MEMORANDUM IN SUPPORT OF INDEPENDENT FIDUCIARY'S MOTION 1) TO APPROVE PLAN OF DISTRIBUTION; 2) TO APPROVE INTERIM DISTRIBUTION FROM THE AEU HOLDINGS, LLC EMPLOYEE BENEFIT PLAN LIQUIDATION ESTATE; 3) TO APPROVE RELATED RELIEF AS REQUESTED HEREIN, AND 4) TO SET OBJECTION DEADLINE AS TO THIS MOTION</u>
<u>AND</u>
<u>MOTION TO ENTER ORDER GRANTING REQUESTED RELIEF AS FINAL PURSUANT TO RULE 54(b) FED. R. CIV. P</u>

Alan F. Curley
Robinson Curley P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100
acurley@robinsoncurley.com

J. Graham Matherne
Andrew J. Pulliam
Wyatt Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
(615) 244-0020
gmatherne@wyattfirm.com
apulliam@wyattfirm.com

Counsel to the Independent Fiduciary

## <u>TABLE OF CONTENTS</u>

Page

I.    Introduction ...................................................................................................... 1

II.   Request to Establish Deadline by Which Claimants Are to File Objections to
      Motion and to Approve Notice Provided as Sufficient ...................................... 2

      A.    Claimants Receiving Notice and Not Objecting Waive Objection ...................... 3

      B.    Notice of the Motion, Including Mailing of a Letter or a Postcard
            Notice, Provides Adequate Notice to Claimants ...................................... 3

      C.    Treatment of "Returned" Letter or Postcard Mailings .......................... 4

III.  Court's Jurisdiction and Independent Fiduciary's Need for Court Order in Aid
      of that Jurisdiction Regarding Claims for Relief Sought as to Plan of Distribution,
      Interim Distribution and Participant Protections ............................................ 6

IV.   Background ...................................................................................................... 6

V.    Independent Fiduciary Has Completed Determination of All Claims and All
      Appeals Have Been Addressed ...................................................................... 10

VI.   Asset Recovery Status / Reserves ................................................................. 11

VII.  Proposed Plan of Distribution ..................................................................... 12

      A.    Independent Fiduciary Priority Fee and Expense Claim ................................. 14

      B.    Type 1 Claimants ..................................................................................... 14

      C.    Type 2 Claimants ..................................................................................... 15

      D.    Type 3 Claimants ..................................................................................... 15

      E.    Type 4 Claimants ..................................................................................... 16

      F.    Distribution Plan and Process of Distribution ................................... 16

VIII. Approval of Proposed Interim Distribution ................................................. 19

IX.   Request for Protections Against Medical Providers' Pursuit of Unpaid Plan
      Responsibility Amounts and Against Negative Credit Reporting/Collection
      Activities ...................................................................................................... 21

i

A.      Medical Providers Which Involve Themselves in the Benefit Plan Claims
        Process and Which Take the Affirmative Act of Depositing the Interim
        Distribution Payment Avail Themselves to the Jurisdiction of This Court ........26

B.      Protection Against Medical Providers Pursuing Plan Responsibility
        Amounts Still Owed and Prohibition Against Reporting Negative
        Credit Information Are In Aid of the Jurisdiction of the Court .........................27

X.      Motion that the Court Enter Its Order Granting the Relief Sought in This
        Motion as Final Pursuant to Rule 54(B) Fed. R. Civ. P. ...................................29

XI.     CONCLUSION ..............................................................................................34

## I. **Introduction**

The Secretary of the United States Department of Labor ("Secretary") instituted this action because the AEU Holdings, LLC Employee Benefit Plan and Participation Plans ("Benefit Plan") were failing/had failed. As set forth more fully below, there are approximately $55 million of claims as against the Benefit Plan Liquidation Estate. This Court appointed Receivership Management, Inc. to be Independent Fiduciary over the failed Benefit Plan. The Independent Fiduciary was to submit, and has submitted, a Plan of Liquidation that was approved through order of this Court. As directed under the Court-ordered Plan of Liquidation, the Independent Fiduciary, through Motion filed herewith, presents to the Court its Plan of Distribution of available assets for approval, as well as a request for an Interim Distribution, amongst other requests for relief. This filing is the Independent Fiduciary's Memorandum in Support of Motion.

In its Motion filed herewith, the Independent Fiduciary requests four (4) basic matters: 1) approval of the recommended Plan of Distribution attached as Exhibit A to the Motion, 2) approval of a recommended Interim Distribution of approximately $6.7 million, 3) approval of related relief regarding protections to Benefit Plan Participants and restrictions upon Medical Provider claimants that accept distributions from the Benefit Plan Liquidation Estate and 4) setting of the deadline by which any person or entity, receiving notice of the Motion, must object to the Motion. Moreover, because there is no just reason for delay regarding finality of an order granting the Independent Fiduciary's claims for relief, the Independent Fiduciary also moves that, pursuant to Rule 54(b) Fed. R. Civ. P., the Court find there is no just reason for delay and expressly direct the Clerk to enter the Order that ultimately grants the Motion as final as to the matters addressed in that Order.

1

## II.  Request to Establish Deadline by Which Claimants Are to File Objections to Motion and to Approve Notice Provided as Sufficient

At this time - - the initial filing of the Motion - - the Independent Fiduciary requests that the Court enter an order establishing an objection deadline date of at least 60 days from the post mark date of the original mailing of letter notices or postcard notices that will be sent to all approved claimants. [1] See Exhibits B and C to Motion. The Independent Fiduciary further requests that the Court enter an order approving the Independent Fiduciary's efforts of giving notice of the Motion, including the letter and postcard notices that will be mailed to all approved claimants once the objection deadline is established.  The Independent Fiduciary further proposes that (1) if a letter or postcard notice mailing is returned as undeliverable but with a forwarding address, the Independent Fiduciary will resend the letter or postcard to the forwarding address; and (2) if a letter or postcard notice mailing is returned as undeliverable without forwarding address, then the Independent Fiduciary will take reasonable steps to determine the current address and resend the mailings returned from a Participant or Employer, but not from a Medical Provider or Non-Medical Claimant.

---

[1]  The claimants that will be mailed either the letter or postcard notice are those listed in Exhibits 1, 2, & 3 to the Independent Fiduciary's Plan of Distribution - - which itself is Exhibit A to the Motion filed herewith. Those exhibits list all of the approved claimants with claims against the Benefit Plan Liquidation Estate. The difference as to which claimant receives a letter notice (Exhibit B to the Motion) and which claimant receives a postcard notice (Exhibit C to the Motion) is the letter notice will be sent to approved Medical Provider Claimants who are to receive an interim distribution of $5.00 or more.  The letter notice, in addition to providing notice of the Motion and related information, requests confirmation of tax identification numbers, payee designations and addresses.  See Exhibit B to Motion.  Because the Interim Distribution is expected to pay to Medical Providers, pro rata, approximately eleven cents/dollars of the approved claim amount, Medical Providers listed to receive $5.00 or more in the Interim Distribution have a total approved claim of over $50.00.  As just noted, the letter notice requests confirmation of  tax identification numbers, addresses and payee information.   The Independent Fiduciary asserts that the confirmation of that information for Medical Providers with total approved claims of over $50.00 is appropriate for purposes of both the Interim Distribution and any subsequent distribution.  Moreover, the $5.00 Interim Distribution threshold is under the cost of administratively generating, mailing and processing the letter notice.  The postcard notice will be sent to all the other approved claimants.

A. Claimants Receiving Notice and Not Objecting Waive Objection

The Independent Fiduciary asserts that if there is no objection filed by any person or entity by the "60-days after mailing of original letter or postcard notice" deadline ("objection deadline"), then those persons/ entities who/which have received notice of the filing of this Motion have waived the ability to object to the Motion.  The Independent Fiduciary asserts that any claimant receiving the letter or postcard notice regarding the instant Motion should object if he/she/it has an objection to make.  And given the Independent Fiduciary's request that the objection deadline provides 60 days from the mailing of the original letter or postcard notice to object, any claimant would have ample opportunity to do so.  It is not, therefore, unfair or heavy-handed to bar objection to the Independent Fiduciary's Motion from all receiving notice of it, but who do not timely object.

B.  Notice of the Motion, Including Mailing of a Letter or a Postcard
Notice, Provides Adequate Notice to Claimants

The Independent Fiduciary's efforts in giving notice of this Motion start with the posting of the Motion, exhibits and attendant filings on the website dedicated to the Benefit Plan Liquidation - - https://www.receivermgmt.com/aeubenefitplan.htm.  This will occur within days of the filing of the instant Motion and attendant papers.  This website has been operational since soon after the Independent Fiduciary's appointment and has been used consistently and constantly as a means of giving notice to claimants and others of actions relating to the Benefit Plan Liquidation.  In short, by now, any person or entity who/which has interest in keeping apprised of the matters relating to the Benefit Plan Liquidation, knows or should know to keep current through viewing of  the postings on the above-referenced website.  In addition to the website postings, the Independent Fiduciary will mail to all approved claimants (approximately 9,200 in number) either letter or postcard notices (see Exhibits B and C to the Motion).  The letter and postcard mailings 1) give notice of the Motion, 2) provide notice of the limitations/restrictions that are being sought in the Motion to limit Medical

Providers' ability to pursue amounts still owed to them from the Benefit Plan and to prohibit the reporting of negative credit information or pursuit of collection activity against Benefit Plan Participants regarding any amounts owed by the Benefit Plan, 3) set forth an objection deadline that is at least 60 days after the original mailing of the letter or postcard notices with a notation that failure to object would be considered as waiving such objections,[2] 4) provide a reference to the website dedicated to this matter (https://www.receivermgmt.com/aeubenefitplan.htm) where they can view a copy of the Motion and its Exhibits and 5) provide telephone and fax numbers and an e-mail address to contact the Independent Fiduciary. The letter envelope and postcard also request that the postmaster forward the mailing or return to the Independent Fiduciary with a correct forwarding address.

The website posting and the notice mailings are reasonably calculated to provide notice to those with interest in the Plan of Distribution, approval of which is sought through the Motion, and the information set forth informs the website viewer and/or mailing recipient sufficiently so as to allow that person or entity to knowingly object or not. Accordingly, the Independent Fiduciary requests that the Court find the notice that will be provided regarding this Motion is sufficient.

C. <u>Treatment of "Returned" Letter or Postcard Mailings</u>

The Independent Fiduciary further proposes that (1) if a letter or postcard notice mailing is returned as undeliverable but with a forwarding address, the Independent Fiduciary will resend the letter or postcard to the forwarding address; and (2) if a letter or postcard notice mailing is returned as undeliverable without a forwarding address, then the Independent Fiduciary will take reasonable

---

[2] Exhibits B and C to the Independent Fiduciary's Motion - - the template letter and postcard notice - - have blanks for the objection deadline date. Those blanks will be filled in with a date at least 60 days from the date of the original mailing of the notices.

steps to determine the current address and resend the mailings returned from a Participant or Employer, but not from a Medical Provider or Non-Medical Claimant

For the reasons set forth herein at pages 14-15, the Independent Fiduciary recommends that the Participants who have paid Medical Providers amounts owed by the Benefit Plan - - and who seek reimbursement of those amounts – have claims higher in priority than the claims of the Medical Providers. The same is true regarding claims of Employers which paid to Medical Providers amounts owed by the Benefit Plan (see herein at page 15). Therefore, the Independent Fiduciary asserts that it should use reasonable and economically feasible efforts to locate a revised address if a postcard mailing to the Participant or Employer is returned. The Independent Fiduciary will also resend any returned letter or postcard mailing to a Medical Provider or Non-Medical Claimant that has a forwarding address noted upon the returned postcard mailing. Otherwise, the Independent Fiduciary asserts that it should not expend limited resources on searching for Medical Provider or Non-Medical Claimant updated addresses. Respectfully, if the Independent Fiduciary has a stale address for a Medical Provider or Non-Medical Claimant, then that person or entity must be assumed to have had little interest in staying current with the Benefit Plan Liquidation proceedings.

Accordingly, the Independent Fiduciary requests that the Court issue an Order a) establishing an objection deadline date of at least "60 days after the mailing of the original letter or postcard notice," and b) stating that a failure to timely file objection will result in waiver of objection from any claimant who/which received notice of the Motion. Moreover, the Independent Fiduciary requests that the Court's Order state that the effort to provide the notice set forth herein, including website posting and the notice mailing to all claimants, is sufficient. Upon entry of that order, the Independent Fiduciary will fill in all needed information to the letter and postcard template (attached as Exhibits B and C to the Motion), mail the notices to all claimants, post the order on the designated

website and take the reasonable efforts, set forth above, to resend letter or postcard notices if and when they are returned to the Independent Fiduciary.

### III. Court's Jurisdiction and Independent Fiduciary's Need for Court Order in Aid of that Jurisdiction Regarding Claims for Relief Sought as to Plan of Distribution, Interim Distribution and Participant Protections

The Court retains jurisdiction over this liquidation pursuant to Paragraph 25 of the Preliminary Injunction entered in this action. D.E. #59 at p. 13. The Independent Fiduciary is the court-appointed entity charged with addressing the liquidation of the Benefit Plan. In order to discharge those duties, the Independent Fiduciary is in need of aid from the Court, as requested herein, in furtherance of the Court's retained jurisdiction over this matter.

First, an Order of Court is needed regarding approval of the Plan of Distribution so that the Independent Fiduciary may progress further, and with certainty, towards the ultimate closure of the Benefit Plan Liquidation Estate. Second, regarding the Interim Distribution, an Order of Court is needed so that certainty of Interim Distribution payments can be established and the recipients of the payments can rely that the payments would not later be challenged or reversed. Third, protections against Medical Providers, such as prohibitions against pursuing amounts still owed to them by the Benefit Plan after accepting distributions, would necessarily need to be pursuant to further Order of Court.

As set forth more fully herein, pursuant to 28 U.S.C.§1651 ("All Writs Act"), the Court can grant the claims for relief requested in aid of its continuing jurisdiction over this matter.

### IV. Background

The Secretary instituted this action on November 2, 2017, D.E. #1. On November 3, 2017, the Court entered an Ex Parte Temporary Restraining Order which, amongst other matters, appointed Receivership Management, Inc. as Independent Fiduciary over the Benefit Plan. D.E.

#14.  Based upon 28 U.S.C. § 1651 ("All Writs Act"),  on November 15, 2017, the Court entered its Order Staying All Proceedings Against Participants.  D.E. #38 ("All Writs Act Injunction Order").  In the All Writs Act Injunction Order, this Court provided protections to, amongst others, all Participants of the Benefit Plan by a) enjoining pursuit of any pending action and enjoining initiation of any other action in which Medical Providers were pursuing/would pursue collection of unpaid medical billings and b) prohibiting Medical Providers from undertaking any collection activity or reporting adverse credit information to credit reporting agencies regarding Participants. All Writs Act Injunction Order at ¶s 1-3, pp 2-3.

On December 13, 2017, the Court entered a Preliminary Injunction (D.E. #59) which, amongst other matters, continued the appointment of the Independent Fiduciary.  On December 15, 2017, the Independent Fiduciary filed a motion which requested that the Benefit Plan be terminated.  D.E. #s 63 and 64.  On December 21, 2017, the Court entered its Order that established the termination date for the Benefit Plan as January 31, 2018 and which instructed the Independent Fiduciary, within a reasonable time after the termination date, to establish a procedure for individuals or entities to submit claims against the assets held by the Independent Fiduciary.  D.E. #74 at ¶s 3-4.

On April 13, 2018, the Independent Fiduciary filed its Motion for Approval of Proposed Orderly Plan of Liquidation.  D.E. #140.  The Independent Fiduciary's motion also included a request that the Court, based on the All Writs Act, enjoin all persons or entities from pursuing Benefit Plan Liquidation Estate assets outside of the claim processes/procedures set forth in the Proposed Orderly Plan of Liquidation (hereinafter "Liquidation Plan") Id. at pp. 2-6.  On April 18, 2018, the Court entered its Order approving the Liquidation Plan.  D.E. #146.  The Court also ordered, under the authority of the All Writs Act, that all persons or entities with claims against

the assets of the Benefit Plan Liquidation Estate were enjoined from pursuit of those claims outside of the processes and procedure set forth in the Independent Fiduciary's Liquidation Plan and instructed the Independent Fiduciary to file a Notice of Filing with the Liquidation Plan attached. Id. On April 20, 2018, the Independent Fiduciary filed its Notice of Filing and its Liquidation Plan. D.E. #s 147 and 148.

The Independent Fiduciary's court-approved Liquidation Plan addressed the procedure by which claims were made against the Benefit Plan Liquidation Estate. See generally D.E. #147. The bulk of the claims against the Benefit Plan Liquidation Estate are unpaid medical billings for services rendered by Medical Providers to Participants. These amounts of unpaid medical claims were established by the Independent Fiduciary through compiling unpaid claims data from no less than seven (7) third party administrators ("TPAs") which, over various timeframes pertinent to the periods being addressed by the Independent Fiduciary, received medical benefit claims from Medical Providers, reviewed and adjudicated those claims, paid claims and kept record of the unpaid claims. The compiling of the Benefit Plan claims data from the seven TPAs resulted in information upon which the Independent Fiduciary could reasonably rely in establishing, soon after the Secretary's takeover of the Benefit Plan, what amounts were supposed to have been paid by the Benefit Plan to the various Medical Providers. The result of the process of compiling the unpaid claims data was that the Independent Fiduciary issued to the Medical Providers (and the relevant Participants) Medical Claims Determination Statements ("MCDSs") which set forth the reviewed and adjudicated amount of the unpaid medical claims that should have been paid by the Benefit Plan to the particular medical provider ("Plan Responsibility").[3] The MCDS also set forth what, if any, amount was owed by the Participant arising from the medical services, i.e. "Member

---

[3] Attached as **Exhibit A** is an example of an MCDS sent to a Medical Provider (with identifying information redacted).

Responsibility" or "Patient Responsibility" that addressed issues such as deductibles, co-pays, etc. See **Exhibit A**. The Medical Provider (and/or the relevant Participant) had the choice, as set forth in the cover letter to the MDCS, to either accept the determination of the Plan Responsibility and Member Responsibility amounts (if they were satisfied that such were accurate and current) or to object and supplement the MCDS with additional unpaid medical claims and/or information. The Liquidation Plan provided that an objection/supplementation of MCDS claims information would then go through the review/appeal process set forth in Exhibit A to the Court's Preliminary Injunction (D.E. #147 ¶4, at p.4). Accordingly, in administering the liquidation of the Benefit Plan under the Court-approved Liquidation Plan, the Independent Fiduciary utilized a MCDS process to give notice to the Medical Providers of the unpaid medical claims associated with each of them. The Medical Providers could object/submit additional unpaid claims information (as some did) or they could accept the MCDS mailing from the Independent Fiduciary as accurate and, Independent Fiduciary asserts, be bound by the information/amounts set forth in the relevant MCDS(s) (as most have done). Id. at ¶4, pp. 3-4. Moreover, under the Liquidation Plan, Participants who had paid amounts shown on the MCDS that the Benefit Plan was obligated to pay (i.e. those Participants who paid Plan Responsibility amounts), could seek reimbursement of those amounts (Id. at ¶4, p. 4), and as set forth below, some have done so.

In addition to the MCDS process (which gave notice to the Medical Providers of the determined unpaid claim amounts - - and gave them the choice to accept that determination or object/appeal to it), the Court-approved Liquidation Plan set forth a Proof of Claim ("POC") procedure for "non-medical" claims to be presented against the Benefit Plan Liquidation Estate. Those non-medical POC claims were determined with the non-medical claimant having review and appeal rights as set forth in the Liquidation Plan (D.E. #147 at ¶s 5-6, pp. 4-5).

The Liquidation Plan then states:

> As soon as is possible after all claims have been processed, all appeals have been finalized, all appeal periods have concluded, and all assets collected, the Independent Fiduciary will file an additional Plan with the Court concerning distribution of available assets to all approved claimants resulting from the Medical Claims Determination Statement and Non-medical Claims Determination Statement.[4] If there is any possibility of an interim distribution, the Independent Fiduciary will so advise the Court.

D.E. #147 at ¶7, p. 5 (footnote added).

Therefore, under the Court-approved Liquidation Plan language quoted above, the Independent Fiduciary's instant Motion seeks, amongst other matters, approval of the Independent Fiduciary's "Plan … concerning distribution of available assets to all approved claimants" and approval of an Interim Distribution.

## V.  Independent Fiduciary Has Completed Determination of All Claims and All Appeals Have Been Addressed

Over Thirty-Six Thousand (36,000) MCDSs were issued between May 15, 2018 and June 1, 2018 by the Independent Fiduciary to Medical Providers and Participants (see **Exhibit A** as an example of a MCDS mailing).  Of those approximate 36,000 mailings some 2878 were returned, mailing addresses investigated and re-mailed.  The Independent Fiduciary received two hundred and thirteen (213) claims from Participants for reimbursement of Plan Responsibility amounts they paid that the Benefit Plan should have paid (see Exhibit 1 to Plan of Distribution – Type 1 Claimants).  The Independent Fiduciary has received twenty-three (23) claims from Employers claiming reimbursement of Plan Responsibility amounts they have paid that the Benefit Plan should have paid (see Exhibit 1 to Plan of Distribution – Type 2 Claimants).  The Independent Fiduciary received 6 claims (one of which was late–filed) from claimants with "non-medical"

---

[4] Reference to "Non-Medical Claims Determination Statement" is, in operational/practical terms, reference to the determination made by the Independent Fiduciary of non-medical claims presented through the POC process.

claims (e.g. vendors claims, and/or refund of paid premium claims) and those non-medical claims have been determined and finalized (see Exhibit 3 to Plan of Distribution – Type 4 Claimants). Of the approximate 36,000 MCDS mailings, a total of 1,932 objection/appeals/requests for reconsideration (hereinafter "appeals") were received by the Independent Fiduciary. All of those appeals have been addressed and the deadline for any further appeals (e.g. external reviews as to medical claims) passed on October 23, 2020. Accordingly, the Independent Fiduciary asserts that it is in the position, from a "determination of claims" perspective, to move for approval of the Plan of Distribution and to make an Interim Distribution.

## VI.  Asset Recovery Status / Reserves

The Independent Fiduciary has undertaken numerous asset recovery efforts, as it is authorized to do pursuant to the Preliminary Injunction entered in this case. See D.E. #59 at ¶ 14i and j, p.9. Currently there are two asset recovery actions pending before this Court:[5]

A. Receivership Management Inc. (as Independent Fiduciary) v. Locke Lord, LLP (1-18-cv-08158); and

B. Receivership Management Inc. (as Independent Fiduciary) v. A.J. Corso and Associates, et al (1-19-cv-01385).

The Independent Fiduciary likely will not be pursing any more affirmative filings regarding asset recovery. There have been, however, numerous settlements effected by the Secretary, some of the proceeds of which have been received by the Independent Fiduciary and some of which will be paid, over time, to the Independent Fiduciary.

The Independent Fiduciary recommends that a reserve of $3,000.000.00 be retained for activities that remain after the Interim Distribution requested herein is made. These activities

---

[5] Recoveries from these two pending actions would give rise to consideration by the Independent Fiduciary of making a further interim distribution or would be part and parcel (along with any other assets available for distribution) of a final distribution at the closure of these proceedings.

include, but are not limited to, matters relating to the litigation pending before the Court, responding to inquiries a) from the Internal Revenue Service, b) from the U.S. Department of Labor and c) from Participants, Employers and Medical Providers, closing of the proceedings including final distributions and the discharge of the Independent Fiduciary and maintaining records for a period of six (6) years after the closure of this matter pursuant to ERISA and U.S. Department of Labor rules. The Independent Fiduciary asserts that the above – referenced $3,000.000.00, plus the amounts to be paid to it over time resulting from settlements effected by the Secretary, should provide adequate funds for the above – enumerated tasks. Any amount of this reserve remaining at the closure of these proceedings will be available for distribution at that time.

## VII. <u>Proposed Plan of Distribution</u>

In the first instance, the Independent Fiduciary's Plan of Distribution (Exhibit A to the Motion) sets forth the categories and prioritization of claims made against the Benefit Plan Liquidation Estate. The Preliminary Injunction entered in this action sets forth that the first priority of claims against the Benefit Fund Liquidation Estate are the fees and expenses incurred by the Independent Fiduciary and the second priority is the "payment of legitimate claims." D.E. 59 at ¶ 21, p. 12. As described above, the Independent Fiduciary, pursuant to the Court-approved Liquidation Plan, has issued MCDS statements, which set forth the legitimate unpaid medical claims and which are now final regarding any objection or appeal. The Independent Fiduciary, pursuant to the Court-approved Liquidation Plan, has received claim filings for reimbursement of Plan Responsibility amounts, unpaid medical claims and unpaid non – medical claims, which have been reviewed and determined and are final regarding objections or appeals.

The Plan of Distribution, approval of which is sought herein, would establish 5 levels of claim priority (descending in priority):

A.  Independent Fiduciary Fee and Expense Claims.

B.  Approved amounts for Benefit Plan Participants who submitted timely claims for reimbursement of amounts they paid which were the responsibility of, and should have been paid by, the Benefit Plan (hereinafter "Type 1 Claimants").  There is a total of $377,443.85 of approved Type 1 Claims (see Exhibit 1 to the Plan of Distribution - - which is Exhibit A to the Motion - - at pp. 1-5).

C.  Approved amounts for Employers who submitted timely claims for reimbursement of amounts they paid which were the responsibility of, and should have been paid by, the Benefit Plan (hereinafter "Type 2 Claimant").  There is a total of $8,970.99 of approved Type 2 Claims (see Exhibit 1 to the Plan of Distribution at p. 6).

D.  Approved amounts of unpaid Medical Provider claims, as reflected on the MCDS or updates/appeal results regarding the MCDS, from Medical Providers who/which provided services to Participants (hereinafter "Type 3 Claimants").  There is a total of $54,270,009.40 of approved Type 3 Claims (see Exhibit 2 to the Plan of Distribution).

E.  Approved amounts of non-medical claims that were timely-filed, plus the one late-filed non-medical claim (hereinafter "Type 4 Claimants").  There is a total of $187,481.31 of approved Type 4 Claims (see Exhibit 3 to the attached Plan of Distribution).

The Type 1, 2, 3 & 4 Claims constitute all of the approved claims submitted as against the Benefit Plan Liquidation Estate.

### A. Independent Fiduciary Priority Fee and Expense Claim

Pursuant to the Court's Preliminary Injunction, payment of the Independent Fiduciary's fees and expenses is of the first priority, prior to payments of other legitimate claims against the Benefit Plan Liquidation Estate. D.E. #59 at ¶21, p. 12.

### B. Type 1 Claimants

Type 1 Claimants are those Participants who have approved claims for reimbursement of Plan Responsibility amounts that they paid to Medical Providers which should have been paid by the Benefit Plan. The Independent Fiduciary proposes that these reimbursement claims be afforded the next level of priority for several reasons. First, those Participants who paid amounts to Medical Providers which were the responsibility of the Benefit Plan to pay, addressed the situation of unpaid medical claims in a forthright, straightforward manner, without any assurance of reimbursement. Second, by paying for what the Benefit Plan owed, those Participants volunteered to address unpaid medical claims that they did not owe. Third and moreover, principles of equity and fairness weigh toward recognizing the Participants as the "most harmed"/ "most victimized" group because a) they paid funds into the Benefit Plan in expectation that coverage for medical claims would be provided, b) they were not involved in the conduct that caused the failure of the Benefit Plan and c) the impact upon the Participants in paying amounts owed by the Benefit Plan is greater than the impact upon an Employer paying a Plan Responsibility Amount (Type 2) or a Medical Provider not being paid the amount (Type 3). Attached as Exhibit 1 to the Plan of Distribution at pp. 1-5 is the listing of these Type 1 Claimants.

### C. Type 2 Claimants

Type 2 claimants are those sponsoring employers ("Employers") which had their employees enrolled as Participants in the Benefit Plan and which have approved claims for reimbursement of Plan Responsibility amounts that the Employer has paid to Medical Providers that should have been paid by the Benefit Plan. The Independent Fiduciary asserts that regarding the few Employer reimbursement claims, the Employers, to the Independent Fiduciary's understanding, were involved in the Benefit Plan based on reasonable reliance upon representations, actions and/or omissions of AEU, Black Wolf Consulting. Inc., the Employer's broker and/or Benefit Plan professional advisors and thus should be considered, in priority of claim, after the Participants. Attached as Exhibit 1 to the Plan of Distribution at p. 6 is a listing of these Type 2 Claimants.

### D. Type 3 Claimants

The Independent Fiduciary recommends that the next priority of claimants be the Medical Providers 1) who/which have, through non-objection, accepted the amounts set forth in the MCDS as correct and/or 2) who/which have appealed the amounts set forth in the MCDS with the relevant claim amount being the amount determined as owed to the Medical Provider resulting from the now-final appeal process. The Independent Fiduciary asserts that the Medical Providers were, in large measure, unaware of the inadequacies/problems which led to the failure of the Benefit Plan. The Medical Providers provided services with the expectation of being paid by the Benefit Plan the Plan Responsibility portion of the medical billings. The Independent Fiduciary asserts, however, that, as a general proposition, the Medical Providers are in a better circumstance to address the existence of unpaid medical claims as opposed to Participants, and/or Employers who/which seek reimbursement of Plan Responsibility amounts

paid to the Medical Providers that were owed from the Benefit Plan. For those reasons, the Independent Fiduciary recommends that the above-referenced Medical Provider claims be established as Type 3 Claims. Attached as Exhibit 2 to the Plan of Distribution is the lengthy listing of these Type 3 Claimants.

### E. Type 4 Claimants

The Independent Fiduciary recommends that the next priority of claimants - -and which present all of the approved claims remaining against the Benefit Plan Liquidation Estate- - be the non-medical claims that have been approved by the Independent Fiduciary. These claims are set forth as "Type 4 Claimants" in Exhibit 3 to the Plan of Distribution. The claims set forth in that exhibit consist of a) vendor fees owed to two third party administrators and b) small claims by four (4) employers for refund of paid premium. The Independent Fiduciary asserts that vendor claims and refund of premium claims are claims that are not directly related to the "losses" which the Benefit Plan was supposed to cover, those losses being the amounts owed for medical services provided to Participants. It is the position of the Independent Fiduciary that claims directly related to the amounts owed for medical services (i.e. claims for reimbursement to Participants and Employers and claims by Medical Providers for unpaid claims) should be addressed, pro rata or otherwise, before claims that are not directly related to the provision of medical services. Therefore, the Independent Fiduciary asserts that it is proper to classify these claims as Type 4 Claims, lower in priority to the above-described Type 1 Claims, Type 2 Claims and Type 3 Claims.

### F. Distribution Plan and Process of Distribution

The Plan of Distribution (Exhibit A to the Motion) sets forth the process by which distributions would be made. With the $3.0 million amount (plus any further payments to the

Benefit Plan Liquidation Estate from settlements made by the Secretary) held in reserve, distribution would proceed of available assets to each classification/type of claim until the approved amounts for that classification/type are paid in full. Payment of the next classification/type of claim would then proceed pro rata and until payment in full of those claims occurs. Cashing/depositing of a distribution payment by a Type 3/Medical Provider Claimant would mean, amongst other matters, that the Medical Provider releases and waives pursuit of any further amount owed by the Benefit Plan (except to the extent of further distributions) and that the Medical Provider would not report negative credit information or engage or thereafter pursue collection activity regarding the particular Participant.

Under the present circumstances - - and as set forth below regarding the Independent Fiduciary's request for approval of an Interim Distribution - - the process of the distribution will be:

1) Issuance of checks to each Type 1 Claimant for 100% of the approved amount, valid for 120 days. The check will be mailed to the Type 1 Claimant's last known address. The mailing of the check to the Type 1 Claimant will have "Postmaster: Address Correction Requested/Please Forward" on the envelope. If not cashed/deposited within that 120 day period, the funds will be sent to the Unclaimed Property Fund of the state of the Type 1 Claimant's last known address for disposition. The distribution check will be sent with a letter (see Exhibit 4 to Plan of Distribution) that will explain the distribution and warn that the distribution check must be deposited within 120 days of the date of the check. If any mailing is returned, then the Independent Fiduciary will research and determine a revised address if one is identifiable through reasonable and economic effort and, if so identified, the Independent Fiduciary will reissue a check, that will be valid for 120 days, and send it to the revised address. If the reissued check is returned or is not cashed/deposited within that 120 day period or if a revised address cannot be reasonably or economically located, then the funds will be sent to the Unclaimed Property Fund of the state of the Type 1 Claimant's last known or revised address for disposition. The Independent Fiduciary will maintain records, for six (6) years after the closure of this liquidation proceedings, regarding amounts sent to the above-referenced state Unclaimed Property Funds.

2) Issuance of checks to each Type 2 Claimant for 100% of the approved amount, valid for 120 days. The check will be mailed to the Type 2 Claimant's last known address. The mailing of the check to the Type 2 Claimant will have "Postmaster: Address Correction

Requested/Please Forward" on the envelope. If not cashed/deposited within that 120 day period, the funds will be sent to the Unclaimed Property Fund of the state of the Type 2 Claimant's last known address for disposition. The distribution check will be sent with a letter (see Exhibit 4 to Plan of Distribution) that will explain the distribution and warn that the distribution check must be deposited within 120 days of the date of the check. If any mailing is returned, then the Independent Fiduciary will research and determine a revised address if one is identifiable through reasonable and economic effort and, if so identified, the Independent Fiduciary will reissue a check, that will be valid for 120 days, and send it to the revised address. If the reissued check is returned or is not cashed/deposited within that 120 day period or if a revised address cannot be reasonably or economically located, then the funds will be sent to the Unclaimed Property Fund of the state of the Type 2 Claimant's last known or revised address for disposition. The Independent Fiduciary will maintain records, for six (6) years after the closure of this liquidation proceedings, regarding amounts sent to the above-referenced state Unclaimed Property Funds.

3) Issuance of checks to each Type 3 Claimant for the pro rata amount shown in the last column of Exhibit 2 ("Interim Distribution" column) to the Plan of Distribution will be sent to the Medical Provider claimant at the last known address. The check will be valid for 120 days. That mailing will have "Postmaster: Address Correction Requested/Please Forward" on the envelope. If a mailing is returned with a forwarding address noted, the Independent Fiduciary will reissue the check (valid for 120 days) and mail to the forwarding address. These mailings, both original and those to a forwarding address will contain a letter (see Exhibit 5 to Plan of Distribution) that will give notice that if the Medical Provider cashes/deposits the pro rata distribution payment, it will, of course, be entitled to any further interim or final distribution, pro rata or otherwise, but will forego and release the ability to pursue any Plan Responsibility amounts not paid by the pro rata interim distribution or later distribution(s). The letter will further indicate that by cashing/depositing the pro rata payment, the Medical Provider would not be releasing or foregoing the ability to pursue the Participant for the amounts shown in the "Patient Responsibility" column of Exhibit 2 to the Plan of Distribution - - i.e. the amount owed by the Participant by virtue of deductibles, co-pays, etc. The letter will also indicate that the Medical Provider which cashes the distribution is prohibited from reporting negative credit related to the Participant or engaging in any type of collection action or threatening any type of collection action regarding unpaid Plan Responsibility amounts owed for services rendered to that Participant. See Section IX below for further discussion of these prohibitions. As will be noted in the letter, if the pro rata payment is not deposited within 120 days from issuance, then the check will be cancelled and the amount will be held by the Independent Fiduciary for later recommendation to the Court regarding disposition of those funds. A Medical Provider which does not cash the Interim Distribution payment would forego any further distributions but would be bound by the Court's All Writs Act Injunction (D.E. #38) until the closure of the Benefit Plan Liquidation proceedings or until further order of Court. As additional Benefit Fund Liquidation Estate assets become available, distributions to the Type 3 Claimants which had cashed the Interim Distribution would be made pro rata, or

otherwise, either as further interim distributions or as a final distribution in conjunction with the closing of these proceedings.

4) As to Type 4 claimants, under the Plan of Distribution, letters will be sent to the Type 4 Claimants last known address (see Exhibit 6 to Plan of Distribution) and will confirm that the amount of the claim is final and that it has been classified as a Type 4 Claim. The envelopes of those letters will be marked "Postmaster: Address Correction Requested/Please Forward." The letter will further state that there are no funds currently available for distribution, pro rata or otherwise, to Type 4 claims and that the Independent Fiduciary will notify the Type 4 claimant if funds come available going forward and would then proceed with that distribution, pro rata or otherwise, to the Type 4 Claimants. If a Type 4 Claimant letter is returned with a forwarding address noted thereon, the Independent Fiduciary will resend the letter to that forwarding address.

The Independent Fiduciary asserts that the Plan of Distribution addresses, in an equitable fashion, the classification of claims, the distribution of assets and protections needed regarding a Medical Provider (Type 3 Claimant) from pursuing amounts still owed from the Benefit Plan after a distribution is made to, and cashed/deposited by, that Medical Provider. Accordingly, the Independent Fiduciary requests approval by the Court of the Plan of Distribution attached as Exhibit A to the Motion filed herewith.

## VIII. Approval of Proposed Interim Distribution

As set forth in the Court-approved Liquidation Plan, "if there is any possibility of an interim distribution, the Independent Fiduciary will so advise the Court." (DE #147 at ¶7, p. 5). As set forth above, the Independent Fiduciary has finalized all claim reviews and has established a final amount of claims against the Benefit Plan Liquidation Estate - $54,843,905.55.[6] Asset recovery will continue, but the Independent Fiduciary asserts that a reserve of approximately $3.0 million (plus on-going recoveries of settlements that are being, or will be, paid in the future) will be sufficient to address the future fees and expenses of the Benefit Plan Liquidation

---

[6] This amount is the summation of the Type 1 approval claim amounts ($377,443.85), the Type 2 approved claim amounts ($8,970.99), Type 3 approved claim amounts (Plan Responsibility) ($54,270,009.40) and Type 4 approved claim amounts ($187,481.31).

Estate. As proposed by the Independent Fiduciary, $6,735,462.46 of assets are available for the Interim Distribution. Of that amount a total of $386,414.84 would be distributed to the Type 1 and Type 2 Claimants, - - constituting full 100% payment of the approved Type 1 and 2 Claim amounts. The 100% payments to the Type 1 and Type 2 Claimants will be accompanied by cover letters informing the Claimants that no further distributions will be made to them and that if the enclosed check was not cashed in 120 days, the funds would go to the appropriate state unclaimed property office. See Exhibit 4 to Plan of Distribution.

Paying the Type 1 and Type 2 Claims at 100% has $6,349,047.62 available for pro rata interim distribution to the Type 3 Claimants. Exhibit 2 attached to the Plan of Distribution sets forth the result of the pro rata distribution in the far right column entitled "Interim Distribution." The Medical Providers who cash/deposit the interim distribution will do so with the knowledge that by taking the affirmative act of cashing the distribution they will have been deemed, by virtue of the Court-approved Plan of Distribution, as having waived all rights to pursue Plan Responsibility amounts still owed by the Benefit Plan as well as other matters set forth in the letter attached as Exhibit 5 to the Plan of Distribution. See Section IX below for further discussion. Checks sent to a Type 3 Claimant that become stale (after 120 days) will be voided and the amounts will be held by the Independent Fiduciary for later recommendations to the Court regarding disposition of those funds.

There will be no assets available for interim distribution to the Type 4 Claimants and they will receive notice of that by virtue of a letter that will be sent to each of them (see Exhibit 6 to the Plan of Distribution).

Accordingly, the Independent Fiduciary requests the Court approve the Independent Fiduciary's Interim Distribution as set forth in Exhibit A to the Motion at pages 8-13.

### IX.  Request for Protections Against Medical Providers' Pursuit of Unpaid Plan Responsibility Amounts and Against Negative Credit Reporting/Collection Activities

Since the November 15, 2017 entry of the All Writs Act Injunction Order, the Participants have been protected 1) from any Medical Provider reporting negative credit information or engaging in collection activity concerning amounts owed, and 2) from any Medical Provider suing a Participant for amounts owed to that Medical Provider.  D.E. #38. In the instant Motion, the Independent Fiduciary requests that the Court order that a Medical Provider (i.e. Type 3 Claimant), which cashes/deposits a distribution, foregoes and otherwise releases all ability to pursue any unpaid Benefit Plan Responsibility amount that is not paid by virtue of the distribution or subsequent distributions.  The Independent Fiduciary further requests that a Medical Provider which accepts a distribution be prohibited from reporting negative credit information or engaging in collection activity concerning a Participant regarding any amount of Plan Responsibility owed to that particular Medical Provider.[7]  This Court has the authority to issue an order providing for these protections under the All Writs Act.

The All Writs Act has been relied upon by courts in situations where health care benefit plans have been taken over and receivers/ independent fiduciaries appointed. In re: Consolidation Welfare Fund "ERISA" Litigation, Department of Labor v. Goldstein, 798 F. Supp 125 (S.D.N.Y. 1992); Cutler v. The 65 Security Plan, 831 F. Supp 1008 (E.D.N.Y. 1993).

Under the All Writs Act, all federal district courts are empowered to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and

---

[7] The Independent Fiduciary does not seek such protections for the Participants to the extent that there are "Member Responsibility"/"Patient Responsibility" amounts (e.g. deductibles, co-pays etc.) that are owed under the Benefit Plan from Participants to a Medical Provider. Those amounts, pursuant to Benefit Plan documents, are owed by the Participant. The Independent Fiduciary's charge in this matter is to focus upon the liquidation of the Benefit Plan and to address amounts that the Benefit Plan owes, rather than what a Participant may be individually liable for.

principles of law." 28 U.S.C.§1651. The concept of "in aid of jurisdiction," under the All Writs Act, is flexible enough to apply to the jurisdiction to issue orders in aid of an independent fiduciary's discharge of duties in marshalling assets and liquidating estates in cases before the particular district court. See In re: Consolidated Welfare Fund, 798 F.2d 125, 127 (2nd Cir. 1965). Orders "in aid of jurisdiction" under the All Writs Act also include orders in aid of a court's supervisory jurisdiction over complex litigation pending before it. State of Texas v. United States, 837 F.2d 184, 186-87 n. 4 (5th Cir. 1988); Castano v. American Tobacco Co., 879 F. Supp. 594, 597 (E.D.La. 1995). The All Writs Act empowers federal district courts to fashion broad remedies in matters involving public interests and large numbers of individuals - - such as in a case wherein a multiemployer health benefit plan is taken over and a receiver appointed. Cutler, 831 F. Supp. at 1013. An order issued under the All Writs Act may extend to persons/ entities who/ which, though neither parties to the original action nor involved in wrongdoing, are nevertheless in a position to frustrate orders of the court or frustrate the proper administration of justice. United States v. New York Tel. Co., 434 U.S. 159, 174; 98 S.Ct. 364; 54 L.Ed.2d 376 (1977); Orbe v. True, 201 F. Supp. 2d 671 676 (E.D. Va. 2002). The district court may issue an order, otherwise proper under the All Writs Act, as against anyone or any entity, whether a party or non-party to the action, if that person or entity has purposefully availed himself/herself/itself to the jurisdiction or where minimum contacts otherwise exist as between the person/ entity and the forum court that is issuing the order. United States v. IBT, 907 F.2d 277, 281 (2nd Cir. 1990); United States v. International Brotherhood of Teamsters, 266 F.3d 45, 50 (2nd Cir. 2001).

The Independent Fiduciary asserts that granting the claims for relief it presents is consistent with the All Writs Act. In support of its position, the Independent Fiduciary first refers to a very similar case, Chao v. International Union of Industrial and Independent Workers et. al, #1:04-cv-

0943 BBM (U.S. District Court N.D. Ga) ("IUIIW Case").  In the IUIIW Case, the Secretary of

the United States Department of Labor took over a failed union-sponsored health benefit plan and

an independent fiduciary was appointed. Just as in this case, a preliminary injunction issued in the

IUIIW Case that prohibited medical providers from pursuing plan participants for unpaid medical

claims and prohibited medical providers from reporting negative credit as to the plan participants.

See Preliminary Injunction in IUIIW Case at ¶s 15 and 17 (D.E. #70 in IUIIW Case) (attached as

**Exhibit B** hereto).  The preliminary injunction in the IUIIW Case expressly recognized that the

independent fiduciary's authority included the authority to seek relief from that court under the

All Writs Act, 28 U.S.C §1651.  Id. at ¶9.  Just  as in this case, the preliminary injunction entered

in the IUIIW Case charged the independent fiduciary to establish and present a plan of liquidation.

Id.  The IUIIW court approved the IUIIW independent fiduciary's plan of liquidation through order

entered on September 17, 2004.  See **Exhibit C** hereto.  As is the case in this matter, the court-

approved IUIIW plan of liquidation established a procedure for claims to be made against the

IUIIW estate and set forth that the IUIIW independent fiduciary would present to the court a plan

of distribution (and request an interim distribution if such was possible).  See IUIIW Independent

Fiduciary's Revised Recommended Orderly Plan of Liquidation (D.E. #76 in IUIIW Case) at ¶s

2.e., 5 and 6 (copy attached as **Exhibit D** hereto).  The claims procedure in the IUIIW Case, which

is, in essence, identical to that in this case, involved the issuing to medical provider "liquidation

advices" or "statements of unpaid claims" setting forth the amount of unpaid medical claims owed

to the medical provider (which is directly parallel to the issuance of MCDSs to the Medical

Providers in this case).  The medical provider in the IUIIW Case would then choose whether to be

involved in the claim procedure by returning a claim form either 1) accepting the amount set forth

in  the  liquidation  advice/statement  or  2)  objecting  to  that  amount  and  presenting  further

information for the review and determination of the objection. See IUIIW Independent Fiduciary Report (D.E. #287 in IUIIW Case) at pp. 3-4 and 5 (copy attached as **Exhibit E** hereto). On February 26, 2009, the IUIIW independent fiduciary moved for approval of its plan of distribution. It did so seeking an order in aid of the continued jurisdiction by the IUIIW Court over the liquidation of the IUIIW liquidation estate. See IUIIW Independent Fiduciary's Motion to Approved Distribution of Assets, (D.E. #305 in IUIIW Case) at pp. 2-3 (copy without lengthy exhibits attached as **Exhibit F** hereto). Stated differently, the request to approve the distribution plan in IUIIW was pursuant to the authority to seek relief from the IUIIW Court under the All Writs Act. In presenting its distribution plan, the IUIIW independent fiduciary requested that the IUIIW Court order that the medical providers, who/which accepted the distribution from the IUIIW liquidation estate, be prohibited from pursuing a claim against the participant for unpaid amounts owed by the IUIIW plan and be prohibited from reporting negative credit regarding the participant. **Exhibit F** at p. 16.

The IUIIW Court, in granting the independent fiduciary's motion to approve distribution, held as follows:

· · ·

7. In continuation of the reasonable protections provided to IUIIW Benefit Fund participants through this Court's Preliminary Injunction (D.E. #70), all health care provider claimants, who/which accept the pro rata distribution approved through this Order, are prohibited from pursuing any claim against any IUIIW Benefit Fund participant (or covered dependent) for any deficiency amount not paid on a particular claim, other than the non-payment of any co-pay or deductible amount applicable to the particular claim;

8. In continuation of the reasonable protections provided to IUIIW Benefit Fund participants through the Court's Preliminary Injunction (D.E. #70), all health care provider claimants, who/which accept the pro rata distribution approved through this Order, are prohibited from reporting to any credit reporting agency any

negative credit information as to any IUIIW Benefit Fund participant (or covered dependent) concerning the deficiency amount not paid on a particular claim, other than the reporting of non-payment of any co-pay or deductible amount applicable to the particular claim;

• • •

IUIIW Court Order Granting Independent Fiduciary's Motion to Approve Distribution of Assets and for Related Relief (IUIIW Case D.E. #310) at p. 3 (copy, without lengthy exhibits, attached as **Exhibit G** hereto).

Further support of granting the claims for relief requested from the Independent Fiduciary in this Motion is found in the similar case Chao v. Service and Business Workers of America Local 125, et al. #02-80945 U.S. District Ct. S.D. Fla. (Marra/Seltzer) ("SBWA Case"). The SBWA Case involved a failed union sponsored health care benefit plan taken over the by the Secretary of U.S. Department of Labor with the SBWA Court appointing an independent fiduciary. As is the case with this case and as was the case in the IUIIW Case, a preliminary injunction was issued followed by a court-approved claims procedure. The SBWA independent fiduciary filed a motion for approval of an interim distribution and through separate motion requested, pursuant to the All Writs Act, the SBWA Court to prohibit medical providers who/which accepted a distribution from the SBWA liquidation estate from pursuing amounts still owed after the distribution and to refrain from reporting negative credit information or pursuing/threatening collection actions as against SBWA plan participants. The SBWA court found 1) that because the medical providers had involved themselves in the SBWA claims procedure and would receive the benefit of the interim distribution, purposeful availment/minimum contacts existed as between them and the forum court and 2) the requested relief was needed in aid of its continued jurisdiction over the SBWA plan liquidation. Accordingly, and under the authority of the All Writs Act, the SBWA Court held that

if a health care provider claimant accepted a distribution/interim distribution from the SBWA liquidation estate then:

1)      the health care provider claimant will waive any ability to pursue the participant for any deficiency in payment of the claim other than the amounts for which the participant would have been individually liable under the Benefit Fund health plan coverage, such as "co-pays" and "out of network" services; and

2)      the health care provider claimant will not report to anyone any adverse credit information as to the participant concerning the deficiency except as to reporting of such adverse credit information which represents the participant's failure to pay amounts for which the participant would have been individually liable under the Benefit Fund health care plan coverage.

<u>See</u> SBWA Court Order Granting Independent Fiduciary's Motion to Limit Recovery of Health Care Provider Claimants (SBWA Case D.E. #1300) at p. 11 (copy attached as **Exhibit H** hereto).

<u>A.   Medical Providers Which Involve Themselves in the Benefit Plan Claims Process and Which Take the Affirmative Act of Depositing the Interim Distribution Payment Avail Themselves to the Jurisdiction of This Court.</u>

The Medical Providers in this case, as in the IUIIW Case and SBWA Case, are persons or entities who/which have involved themselves/participated in the established claim procedures set forth in the Court-approved Liquidation Plan.  Moreover, through choosing to accept a distribution from a Benefit Plan Liquidation Estate, supervised under the jurisdiction of this Court, the Medical Providers purposefully avail themselves to the jurisdiction of this Court. Clearly, if a Medical Provider chooses not to accept the distribution (and does not otherwise have minimum contacts with this jurisdiction), then that Medical Provider would not be subject to the Court's jurisdiction. But a Medical Provider which voluntarily choses to participate in, and benefit from, the distribution should be seen as subjecting itself to the jurisdiction of this Court under whose authority the distribution is being made. The fairness of this is further underscored by the clear language of the cover letter (<u>see</u> Exhibit 5 to the Plan of Distribution) that will accompany the pro

rata Interim Distribution issued to the Medical Providers, which states that by accepting the distribution the Medical Provider agrees to be prohibited from further pursuing amounts owed to it from the Benefit Plan and from reporting negative credit information or engaging in collection activity regarding a Participant.  See IUIIW Court Order (**Exhibit G**) and SBWA Court Order (**Exhibit H**).

> B.  Protection Against Medical Providers Pursuing Plan Responsibility Amounts Still Owed and Prohibition Against Reporting Negative Credit Information Are In Aid of the Jurisdiction of the Court.

The Independent Fiduciary asserts that the claim for relief requested from the Court -- i.e., that by cashing/depositing the pro rata Interim Distribution from the Benefit Plan Liquidation Estate, the Medical Provider claimant a) waives any future pursuit/collection efforts for remaining Plan Responsibility amounts and b) agrees not to report negative credit information concerning the deficiency -- is necessary and appropriate to ensure continuation of existing Orders of the Court and to ensure the proper and equitable administration of this liquidation proceeding.

The requested order is a continuation of, and in aid of, the orders already in existence in this case (e.g., the All Writs Act Injunction Order D.E. #38).  The Independent Fiduciary is aware that the All Writs Act Injunction Order is envisioned to expire at the conclusion of the liquidation proceedings just as similar All Writs Act orders were to expire in the IUIIW and SBWA cases. But, the "temporary" nature of the All Writs Act Injunction Order does not detract from 1) the rationale underlying that order, and 2) the fact that the Independent Fiduciary's requested continuation of protections against future pursuit by Medical Providers is necessarily in aid of the continuation of that rationale.  The All Writs Injunction Order sought to set the stage for an equitable distribution through prohibition of Medical Providers from pursuing Participants and others for unpaid amounts owed by the Benefit Plan and sought to protect the credit rating of

Participants that had nothing to do with the failure of the Benefit Plan. Those rationales still exist. Without protection against Medical Providers pursuing unpaid Plan Responsibility amounts, after taking what is an equitable pro rata share of the Benefit Plan Liquidation Estate, the Medical Providers are in the position to frustrate the overall equitable treatment by taking the distribution from the Benefit Plan only to turn around and pursue the Participants, and perhaps others, for the deficiency. Likewise, the continuation of the prohibition of reporting bad credit on innocent, victimized Participants based on unpaid Plan Responsibility amounts is as much a concern now, and will continue to be as much a concern in the future, as it was at the time of the issuance of the All Writs Act Injunction Order. Therefore, the order requested by the Independent Fiduciary continues the reasoning behind this Court's All Writs Act Injunction Order and is in aid of continuing the protections afforded by that order.

From the beginning of this matter, the Participants have been seen as the most impacted victims of the circumstances surrounding the Benefit Plan's insolvency -- they paid their contributions to the Benefit Plan in good faith reliance that medical benefits would be provided; they do not deserve being pursued by Medical Provider claimants over deficiencies caused by the Benefit Plan's failure to pay or having their credit ratings damaged due to circumstances for which they are not at fault.

Accordingly, the Independent Fiduciary asserts that, to ensure the proper administration of justice toward an equitable conclusion of this Benefit Plan Liquidation, the Court should order that all Medical Provider Claimants which accept pro rata distributions from the Benefit Plan Liquidation Estate are prohibited from pursuing any amount of Plan Responsibility still owed and are prohibited from reporting negative credit information or engaging in collection activities relating to the Participants.

## X. Motion that the Court Enter Its Order Granting the Relief Sought in This Motion As Final Pursuant To Rule 54(B) Fed. R. Civ. P.[8]

Rule 54(b) Fed. R. Civ. P. addresses the situation in which an order granting a claim for relief determines that relief finally and completely, but does not dispense with the entirety of a case. In such instances, where there exists no just reason for delay, the Court may direct entry of the order as final regarding the matters addressed in that order. If the Court's order granting the claims for relief sought by the Independent Fiduciary in this Motion is made final pursuant to Rule 54(b), there must be an appeal "at once or not at all." Glidden v. Chromally American Corp., 808 F. 2d 621, 623 (7th Cir. 1986). Otherwise, the order granting the claims for relief is subject to change, alteration or cancellation until a final judgment is entered as to all matters relating to the action. See id. It is of critical importance that the relief sought in this Motion be made final - - and subject to appeal now - - so as to provide the Independent Fiduciary, and the claimants receiving a distribution, certainty as to whether the Plan of Distribution, the Interim Distribution and the restrictions upon Medical Provider Claimants, which cash a distribution check, are 1) final or 2) subject to later change, alteration or cancellation. If the latter, the Independent Fiduciary will well have to reconsider its request for approval of an Interim Distribution.

> A Rule 54(b) motion requires the district court to examine questions of finality and readiness for appeal. That is, the court must first determine whether the order in question is truly final as to one or more claims or parties; if it is, the court must consider whether there is any good reason to delay entry of final judgment until the entire case is finished.

King v. Newbold, 845 F. 3d 866, 868 (7th Cir. 2017).

---

[8] The Independent Fiduciary moves that the order ultimately entered by the Court granting the requested relief be entered as final under Rule 54(b). That is to be distinguished from the initial order requested in this Motion (and mentioned earlier in this Memorandum in Support - - at p. 2) that would approve the letter and postcard notices, the objection deadline, etc. As to that initial order, the Independent Fiduciary does not request Rule 54(b) certification.

In this action the Independent Fiduciary was appointed to address the liquidation of the Benefit Plan Liquidation Estate.[9]  In doing so, the Independent Fiduciary has claims for relief unique to it (e.g. seeking the relief of approving the Plan of Distribution) that must be acted upon in order to accomplish that goal.  The Independent Fiduciary is not a traditional "party" capable of claiming, counterclaiming cross-claiming or third-party claiming, but it is no less the party placed into this action through Court-appointment with one or more claims for relief to seek which are inextricably part of the appointment by this Court.

The claims for relief presented by the Independent Fiduciary in this Motion are directly related to the authority given to the Independent Fiduciary by this Court and are otherwise required by the Court's appointment.  First, the Independent Fiduciary claims, in this Motion, the relief that the Court approve, through order, the Plan of Distribution set forth as Exhibit A to the Motion.  This claim for relief is for the Independent Fiduciary, and only the Independent Fiduciary, to make because in its Preliminary Injunction, the Court gave the Independent Fiduciary sole and exclusive authority to exercise all fiduciary responsibilities relating to the Benefit Plan.  (D.E. 59 at ¶14. a. at p. 8).  Moreover, the Court underscored the authority of the Independent Fiduciary to seek the relief of the Court's approval of a Plan of Distribution, by holding, in its Order approving the Liquidation Plan, that the Independent Fiduciary will file with the Court "an additional Plan" … "concerning distribution of available assets to all approved claimants . . ." (D.E. #149 at ¶7 at p. 5).  Clearly, the presentment of the Plan of Distribution by the Independent Fiduciary is the pursuit of a "claim for relief" by the entity (i.e. the party) charged by the Court to do so.

Second, in this Motion, the Independent Fiduciary seeks, as a claim for relief, that the Court approve an interim distribution to approved claimants.  Under the previously referenced orders of

---

[9] This has been clear since the Court ordered the Benefit Plan be terminated (due to insolvency) and that the Independent Fiduciary proceed in taking the actions necessary to liquidate the Benefit Plan (D.E.# 74).

Court, the Independent Fiduciary is the only entity in this action that can pursue this claim for relief - - and it has been required to do so through the Court's approval of the Liquidation Plan ("If there is any possibility of an interim distribution, the Independent Fiduciary <u>will</u> so advise the Court.") (D.E. #149 ¶7 at p. 5) (emphasis added). Accordingly, the claim for relief by the Independent Fiduciary that the Court approve an interim distribution is a claim made by the entity (i.e. the party) charged by the Court to do so.

Third, in this Motion, the Independent Fiduciary seeks as a claim for relief that the Court order that any Medical Provider that accepts a distribution from the Benefit Fund Liquidation Estate be prohibited from pursuing any amounts not addressed by that distribution and that the Medical Provider, which accepts a distribution, be prohibited from negative credit reporting, or pursuit of collection activity, regarding Benefit Plan Participants. Pursuant to the Court's Preliminary Injunction, the Independent Fiduciary is the <u>only</u> entity to address the liquidation of the Benefit Plan including the payment of legitimate claims as against the Benefit Plan Liquidation Estate. <u>See</u> D.E. #59 ¶21 at p. 12. The Independent Fiduciary must address the claims against the Benefit Plan Liquidation Estate in a centralized and fair system, and all others are prohibited from pursuing claims against the Benefit Plan Liquidation other than through the Liquidation Plan procedures. D.E. #146 ¶2 at p. 2.[10] The Independent Fiduciary has presented a Plan of Distribution that sets forth its claim for relief regarding a plan to distribute available assets in a fair and centralized fashion. <u>But</u> to effect that plan, the prohibitions against Medical Providers accepting a distribution, only to turn around and pursue Participants, or others for the amounts not paid, is of great importance - - it is a critical part of the Independent Fiduciary claim for relief that

---

[10] This Court found that the All Writs Act provided authority to prohibit claimants from pursuing funds held in the Benefit Fund Liquidation Estate other than through the claims procedure established by the Independent Fiduciary. <u>Id.</u>

addresses the ultimate fairness of the distribution of available assets that is a material and crucial part of the Independent Fiduciary's appointment.

The three areas of claims for relief set forth in the Independent Fiduciary's Motion, however, are not all of the claims for relief that remain regarding the Independent Fiduciary and the liquidation of the Benefit Plan Liquidation Estate. For example, in due course there will be relief sought by the Independent Fiduciary regarding approval of the closure of the Benefit Plan Liquidation Estate and the discharge of the Independent Fiduciary from its appointment. Accordingly, the claims for relief set forth in the Motion address "fewer than all of the claims" at issue and thus, that requirement of Rule 54(b) is met.

The entry of an order by the Court, as requested by the Independent Fiduciary, does address the claims for relief made in the Independent Fiduciary's Motion completely and finally. An order approving the Plan of Distribution would completely and finally address the types of claimants, and their priority, as against the Benefit Plan Liquidation Estate. Such an order would set forth, completely and finally, the procedure of distribution to the various claimants, pro rata or otherwise. Likewise, an order approving the requested Interim Distribution would decide, completely and finally, the disposition of the assets then available for distribution. Moreover, an order setting forth prohibitions against Medical Providers (who/which cash a distribution) from pursuing unpaid Plan Responsibility amounts and from reporting negative credit or pursuing collection activities as against Participants, will establish those restrictions with finality. Accordingly, the claims for relief presented in the Motion are matters that will be decided with finality, if the Court enters the order granting the Motion as requested herein.

Rule 54(b) requires that there be an express certification from the Court that there is "no just reason for delay" in entering the order as final. The Independent Fiduciary knows of no just reason for delay and asserts that there are numerous just reasons for not delaying.

In this Motion, the Independent Fiduciary is seeking an order approving a Plan of Distribution and Interim Distribution. An order approving the Plan of Distribution would necessarily be relied upon by the Independent Fiduciary in proceeding with matters going forward regarding the liquidation and closure of the Benefit Plan Liquidation Estate. Similarly, an order approving the Interim Distribution would necessarily be relied upon by both the Independent Fiduciary in making those distributions and the claimants receiving such distributions, pro rata or otherwise. There is no reason to delay payment of the Type I and Type 2 claimants any further, nor any reason to delay the proposed pro rata payment to the Type 3 claimants. Clearly though, certainty is needed in relation to the matters addressed in the Plan of Distribution (e.g. priority of claims and distribution procedures) so that the Independent Fiduciary may proceed in taking further acts in liquidating the Benefit Plan and certainty is needed that in receiving the distributions a claimant need not worry as to any future attempt to reverse or "clawback" such payments. Moreover, an order setting forth the requested prohibitions upon the Medical Providers should be one that gives certainty to the Independent Fiduciary, the Benefit Plan Liquidation Estate and the other claimants that they can rely upon those prohibitions and not have to wait to see if later a Medical Provider claimant attempts to undo those prohibitions. Simply put, there is no just reason for delay in making the provisions of the order granting the Motion final pursuant to Rule 54(b).

In further support of its Rule 54(b) motion/request, the Independent Fiduciary notes that the IUIIW Court and the SBWA Court orders that approved the plans of distribution and imposed the

limitations upon medical providers were entered as final under Rule 54(b). See **Exhibit G** at pp. 4-5 and **Exhibit H** at pp. 11-12.

Accordingly, the Independent Fiduciary moves, pursuant to Rule 54(b) Fed. R. Civ. P., that the Court find that there is no just reason for delay and to expressly direct the Clerk to enter the Court's order granting the relief requested herein as final regarding all matters addressed in that order.

## XI.  CONCLUSION

For the reasons set forth herein, the Independent Fiduciary moves the Court to issue an order granting the relief requested in the Motion, to find that no just reason exists against entry of that order as final and to expressly instruct the Clerk to enter its Order as final as to all matters addressed herein. Rule 54(b) Fed. R. Civ. P.

Respectfully submitted,

*s/ Alan F. Curley*
Alan F. Curley
Robinson Curley P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100
acurley@robinsoncurley.com

*s/ J. Graham Matherne*
J. Graham Matherne
Andrew J. Pulliam
Wyatt, Tarrant & Combs, LLP
333 Commerce Street, Suite 1050
Nashville, Tennessee 37201
(615) 244-0020
gmatherne@wyattfirm.com
apulliam@wyattfirm.com

*Counsel to the Independent Fiduciary*