UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
**MARTIN J. WALSH**, Secretary of Labor, :
United States Department of Labor, :
  :
              Plaintiff, :
  : No. 1:17-cv-07931
    v. : Hon. John F. Kness
  :
**AEU BENEFITS, LLC,** :
**AEU HOLDINGS, LLC,** :
**BLACK WOLF CONSULTING, INC.,** :
**SD TRUST ADVISORS, LLC,** :
**and the AEU HOLDINGS, LLC** :
**EMPLOYEE BENEFIT PLAN,** :
  :
              Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - :

**ORDER APPROVING INDEPENDENT FIDUCIARY'S
PLAN OF DISTRIBUTION ATTACHED AS EXHIBIT A HERETO**

Before the Court is the Independent Fiduciary's Motion to Approve Plan of Distribution ("Motion to Approve") (D.E. #588, #588-1) and Independent Fiduciary's Agreed Motion to Amend Plan of Distribution ("Agreed Motion to Amend") (D.E. #629) (together, the "Motions"). Pursuant to Order entered on March 10, 2023 (D.E. #681), there being no objection, no pending motion to intervene to object, nor any request to reconsider, the Court GRANTS the Agreed Motion to Amend. The Court has previously entered its Order regarding the Motion to Approve (D.E. #611), and has considered, pursuant thereto, the Independent Fiduciary's Status Report as to Lack Of Objections to Motion to Approve Plan (D.E. #625).

Upon review of the Motions, attendant filings, and the related Orders and submissions, the Motion to Approve is GRANTED and the Independent Fiduciary's Plan of Distribution (including the amendments allowed by the Court through its granting of the Agreed Motion to Amend), set

forth in its entirety as Exhibit A hereto, is APPROVED. In addition, pursuant to Rule 54(b) Fed. R. Civ. P., and upon the reasoning set forth in the Independent Fiduciary's Motion to Approve filings (*see* D.E. #589 at pp. 29-34), the Court expressly determines that there is no just reason to delay and directs entry of a final judgment as to this Order approving Exhibit A hereto.

Upon entry of this Order, the Independent Fiduciary shall sign and date the Independent Fiduciary's Plan of Distribution (Exhibit A hereto), shall file same in this action under a Notice of Filing and shall post the Independent Fiduciary's Plan of Distribution and a copy of this Order on the website dedicated to this matter (www.receivermgmt.com/aeubenefitplan-htm).

SO ORDERED in No. 17-cv-07931

Date: March 28, 2023

JOHN F. KNESS
United States District Judge

# Exhibit A
# Independent Fiduciary's Plan of Distribution/Interim Distribution

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor, <br><br>　　　　　　　　　Plaintiff, <br><br>AEU BENEFITS, LLC, <br>AEU HOLDINGS, LLC, <br>BLACK WOLF CONSULTING, INC., <br>SD TRUST ADVISORS, LLC, <br>and the AEU HOLDINGS, LLC <br>EMPLOYEE BENEFIT PLAN, <br><br>　　　　　　　　　Defendants. | No. 1:17-cv-07931 <br>Hon. John F. Kness |

## INDEPENDENT FIDUCIARY'S PLAN OF DISTRIBUTION

### A. Background

1.　Pursuant to the Court's Preliminary Injunction Order entered on December 13, 2017 (D.E. # 59), Receivership Management Inc. was appointed Independent Fiduciary (hereinafter "Independent Fiduciary") of the AEU Holdings, LLC Employee Benefit Plan and Participating Plans (hereafter "Benefit Plan"). Under the authority granted by the Preliminary Injunction Order, the Independent Fiduciary filed a Motion to Terminate the Benefit Plan (D.E. #63). On December 21, 2017, the Court issued an Order (D.E. #74) granting the Motion to Terminate, and among other items, directed the Independent Fiduciary, within a reasonable time after the January 31, 2018 Benefit Plan's termination date, to establish a procedure for submitting claims against the Benefit Plan Liquidation Estate. Said claims procedure would incorporate the appeal process regarding any adverse claim determination as set forth in Exhibit A of the Court's December 13, 2017 Preliminary Injunction. (D.E. #59).

2. Prior to the issuance of the above-referenced Preliminary Injunction, the Court, based upon 28 U.S.C. § 1651 ("All Writs Act"), entered, on November 15, 2017, an order staying all actions, and prohibiting the institution of actions or collection activity by Medical Providers against Benefit Plan Participants (amongst others) regarding amounts allegedly owed to the Medical Provider. *See* Order Staying All Proceedings Against Participants ("All Writs Act Injunction Orders") (D.E. #38).

3. On April 13, 2018, the Independent Fiduciary submitted a Motion to Approve its Proposed Orderly Plan of Liquidation. (D.E. #140). On April 18, 2018, the Court issued its Order Approving the Orderly Plan of Liquidation and directed the Independent Fiduciary to submit a Notice of Filing with the approved Plan of Liquidation (D.E. # 146). On April 20, 2018, the Independent Fiduciary filed the Plan of Liquidation. (D.E. #147).

4. The Plan of Liquidation (D.E. #147) established the procedures that would be followed in the liquidation of the Benefit Plan regarding claims against the Benefit Plan Liquidation Estate. The Independent Fiduciary would issue Medical Claim Determination Statements ("MCDSs") to all Medical Providers and Participants which would set forth unpaid amounts owed to the Medical Providers from the Benefit Plan ("Plan Responsibility Amount") and amounts owed to the Medical Providers from the Participants ("Patient Responsibility Amount" or "Member Responsibility Amount") for matters such as co-pays, deductibles, etc. The Medical Provider and Participant could either accept the MCDS as accurate or could object/appeal/request reconsideration. Any Participant who paid to a Medical Provider Plan Responsibility Amounts relating to his/her medical billing could, under the Plan of Liquidation, request reimbursement of those amounts. There was also a proof of claim procedure, which allowed for a Proof of Claim form to be submitted to the Independent Fiduciary regarding non-

medical claims, the review and determination of which would give rise to, in essence, a non-medical claim determination statement regarding the Proof of Claim.

5. The terms of the Court-approved Liquidation Plan, as set forth in Paragraph 7, then provides as follows:

> As soon as is possible after all claims have been processed, all appeals have been finalized, all appeal periods have concluded, and all assets collected, the Independent Fiduciary will file an additional Plan with the Court concerning distribution of available assets to all approved claimants resulting from the Medical Claims Determination Statement and Non-medical Claims Determination Statement. If there is any possibility of an interim distribution, the Independent Fiduciary will so advise the Court.

D.E. #147 at ¶7, p.5. This filing constitutes the Independent Fiduciary's Plan of Distribution.

### B. Claim Determinations Are Complete

6. All claims have been adjudicated and all pending objections, appeals and requests for reconsideration[1] regarding claims have been determined and the appeal periods concluded on October 23, 2020.

7. As part of its obligations, the Independent Fiduciary also conducted its own review of the MCDS data to attempt to identify typographical errors, mathematical errors, duplicates and applicable discounts. This review and the appeals process resulted in the Independent Fiduciary staff reviewing over 35,000 claim lines.

8. Pursuant to its duties, the Independent Fiduciary also conducted an audit of a sampling of the appeals decisions and the applicable MCDSs to ensure the appeals decisions were accurately reflected on the MCDSs.

---

[1] The Independent Fiduciary received nearly 2,000 appeals and requests for reconsideration. No requests for external review were received arising from the Independent Fiduciary's determination of those appeals/requests for reconsideration.

3

9. Any issues or errors identified by the Independent Fiduciary's review of the MCDS data and audits were corrected.

10. The total of all finalized and adjudicated claims against the Benefit Fund Liquidation Estate is $54,843,905.55.

### C. Pending Asset Collection Activity

11. Currently there are two asset recovery actions pending before this Court.

   a) *Receivership Management Inc. (as Independent Fiduciary) v. Locke Lord, LLP* (1-18-cv-08158), and

   b) *Receivership Management Inc. (as Independent Fiduciary) v. A.J. Corso, Inc., et al.* (1:19-cv-01385),

The Independent Fiduciary likely will not be pursuing any more affirmative filings regarding asset recovery. There have been, however, numerous settlements effected by the Plaintiff/Secretary of Labor, United States Department of Labor ("Secretary"), some of the proceeds of which have been paid to the Independent Fiduciary and some of which will be paid, over time, to the Independent Fiduciary.[2]

### D. Reserve

12. The Independent Fiduciary will reserve approximately $3,000,000, plus the amounts to be paid over time resulting from the Secretary's settlements, for activities that remain after payment of the Interim Distribution. These activities include, but are not limited to, matters relating to the Benefit Plan's litigation pending before the Court, responding to inquiries from the Internal Revenue Service, the U.S. Department of Labor, Participants, Employers and Medical Providers, providing various notices to affected individuals or entities, communicating with

---

[2] Additional recoveries from pending actions could give rise to consideration by the Independent Fiduciary of making a further interim distribution, or would be part and parcel (along with other assets available for distribution) of a final distribution at the closure of these proceedings.

claimants and maintaining records for a period of six (6) years after the closure of this matter pursuant to ERISA and U.S. Department of Labor rules.

### E. Claim Classification and Priority

13. There are five (5) claim classifications in this Plan of Distribution. They are as follows, in descending order of priority:

    a)     Independent Fiduciary Fee and Expense Claims.

    b)     Approved and determined amounts for Benefit Plan Participants who submitted timely claims for reimbursement of amounts they paid which were the responsibility of, and should have been paid by, the Benefit Plan (hereinafter "Type 1 Claimants") (*see* Exhibit 1 at pp. 1-5). Approved and determined amounts that should have been paid by the Benefit Plan are referred to as "Plan Responsibility Amounts."

    c)     Approved and determined amounts for Employers who submitted timely claims for reimbursement of Plan Responsibility Amounts they paid (hereinafter "Type 2 Claimant") (*see* Exhibit 1 at p. 6).

    d)     Approved and determined amounts of timely submitted unpaid Medical Provider claims, as reflected on the MCDS or updates/appeal results regarding the MCDS, from Medical Providers who/which provided services to Benefit Plan Participants (hereinafter "Type 3 Claimants") (*see* Exhibit 2 "Plan Pay" column, which shows the Plan Responsibility as to the unpaid claim).

    e)     Approved and determined amounts of non-medical claims that were timely submitted, plus the one non-medical claim that was received past the submission deadline (hereinafter "Type 4 Claimants") (*see* Exhibit 3).

14. The Type 1, 2, 3 and 4 Claims noted above constitute all of the approved claims submitted as against the Benefit Plan Liquidation Estate—a total of $54,843,905.55.

### F. Plan of Distribution

15  As assets become available for distribution, the Independent Fiduciary will pay each type of claim in order of priority until payment is made in full as to that type of claim. Less than 100% payments to a type of claim will be made pro rata.

16. Medical Providers, who/which cash/deposit a pro rata Interim Distribution, agree that their unpaid Plan Responsibility claim is partially satisfied, but only to the extent of the interim distribution amount and will be prohibited from reporting negative credit information or engaging in any collection activity regarding a Participant in relation to the Plan Responsibility Amount still owed. The Medical Providers, that cash the interim distribution checks, agree not to engage or threaten to engage in collection efforts against Participants for the remaining unpaid portion of the Plan Responsibility Amount, not to assign or transfer that unpaid portion to another person or entity and to look solely to the AEU Benefit Plan and its Participating Plans for payment of unpaid amounts in accordance with the Orderly Plan of Liquidation. Medical Providers that cash/deposit a pro rata Interim Distribution will receive further interim distributions and/or final distributions, pro rata or otherwise. Medical Providers that cash/deposit a pro rata Interim Distribution are not prohibited from pursuing a Participant for any Member or Patient Responsibility Amount owed to the Medical Provider nor are they prohibited from reporting negative credit information or engaging in collection activity regarding the Participant based <u>solely</u> upon unpaid Member or Patient Responsibility Amounts.

17. Medical Providers which do not deposit/cash an Interim Distribution may not be subject to the restrictions or prohibitions set forth in Paragraph 17 above. Medical Providers that

do not deposit/cash an Interim Distribution, however, will still be subject to the restrictions and prohibitions set forth in the Court's All Writs Act Injunction Order[3] (D.E. #38) until the closure of the Benefit Plan Liquidation Estate or until further order of Court. *Id*. at ¶ 1-3. Medical Providers which do not deposit/cash the Interim Distribution will forego payment of the pro rata percentage of its unpaid claims represented by that Interim Distribution. The Medical Provider Interim Distribution checks will be void 120 days after the date of the check. The amounts of the voided checks (i.e. those not cashed within the 120 day period) will continue to be under the control of the Independent Fiduciary which will, at a later time, provide the Court a recommendation for treatment/disposition of those funds.

### G.  Interim Distribution

18. As set forth in the Court-approved Plan of Liquidation, "if there is any possibility of an interim distribution, the Independent Fiduciary will so advise the Court." D.E. #147, at ¶7, p. 5. With the Reserve addressed as set forth above, the Independent Fiduciary will make an Interim Distribution in the amount of $6,735,462.46.

19. Of that amount, $377,443.85 will be distributed to Type 1 Claimants (*see* Exhibit 1 at pp. 1-5) with a cover letter accompanying that distribution (*see* Exhibit 4 hereto) explaining that the Type 1 Claimant was receiving 100% of the approval amount of his/her/its claim.

20. Next, $8,970.99 will be distributed to the Type 2 Claimants (*see* Exhibit 1 at p. 6) with a cover letter accompanying that distribution (*see* Exhibit 4 hereto) explaining that the Type 2 Claimant was receiving 100% of the approved amount of his/her/its claim.

---

[3] The Court's All Writs Act Injunction Order prohibits Medical Providers from pursuing any action against a Benefit Plan Participant and/or engaging in any negative credit reporting or collection activity as to a Benefit Plan Participant relating to amounts owed to the Medical Providers

21. After 100% payments to the Type 1 and Type 2 Claimants, there will remain $6,349,047.62 to distribute, pro rata, to the Type 3 Claimants. Exhibit 2 attached hereto sets forth the listings of the Type 3 Claimants and other information including the pro rata Interim Distribution to be made to each Type 3 Claimant. *See* Exhibit 2 hereto column entitled "Interim Distribution." The pro rata Interim Distribution will be accompanied by a letter (*see* Exhibit 5 attached hereto) that will give notice and explain various matters attendant to the pro rata distribution including, but not limited to, notice that a Medical Provider who/which cashes/deposits the pro rata distribution will look solely to the AEU Benefit Plan and its Participating Plans for unpaid Plan Responsibility Amounts in accordance with the Orderly Plan of Liquidation[4] and that by cashing/depositing the pro rata distribution, the Medical Provider is prohibited from reporting negative credit information as to Participants relating to unpaid Plan Responsibility Amounts or pursuing collection activity as to any Participant regarding any remaining Plan Responsibility Amount owed. That letter will also state that not cashing/depositing the Interim Distributions checks will mean that the Medical Provider will forego the ability to receive the pro rata amount of its unpaid claims represented by the Interim Distribution. *See* Exhibit 5 attached hereto.

22. There will be no assets available for an Interim Distribution to the Type 4 Claimants. The listing of these Type 4 Claimants is set forth in Exhibit 3. Each Type 4 Claimant will receive a letter (*see* Exhibit 6 hereto) stating that the Type 4 claim was final in classification and amount, that there are no assets available for an interim distribution to Type 4 Claimants and that if funds did become available for a Type 4 Claim distribution, the Independent Fiduciary would so notify the Type 4 Claimant.

---

[4] The Medical Provider would still be entitled to share in future interim and final distributions by the Independent Fiduciary, pro rata or otherwise.

## H. Interim Distribution Payment Procedures

### a) Type 1 Claimants

23. Upon the Court's Order Approving Plan of Distribution becoming final and non-appealable, the Independent Fiduciary will issue checks to each of the Type 1 Claimants. The checks will be valid for 120 days from the date of check.

24. The envelope containing the check will be addressed to each Type 1 Claimant's address in the Independent Fiduciary's records and the envelope will be marked "Postmaster: Address Correction Requested/Please Forward." The mailing will be sent by United States Postal Service first class mail along with a cover letter, a copy of which is attached as Exhibit 4. The cover letter will identify the tracking numbers associated with the claims that are being paid.

25. Any mailings returned to the Independent Fiduciary as undeliverable will be researched to determine a revised address if one is identifiable by reasonable and economically feasible measures. If a new address can be determined, a check will be reissued and mailing resent as described above.

26. Funds reflecting checks for Type 1 Claimants that remain uncashed 120 days from the date of issuance/reissuance of the checks, and checks for claimants for whom no revised address can be determined as set forth above, will be disbursed to the Unclaimed Property Fund of the state of the Type 1 Claimant's last known address following the applicable state's regulations. The Independent Fiduciary will maintain, for the period of six (6) years from the closure of these proceedings, records indicating to what state's Unclaimed Property Fund each unclaimed Type 1 Claim Amount was sent.

9

**b) Type 2 Claimants**

27.     Upon the Court's Order Approving Plan of Distribution becoming final and non-appealable, the Independent Fiduciary will issue checks to each of the Type 2 Claimants. The checks will be valid for 120 days from the date of the check.

28.     The envelope containing the check will be addressed to each Type 2 Claimant's address in the Independent Fiduciary's records and the envelope will be marked "Postmaster: Address Correction Requested/Please Forward." The mailing will be sent by United States Postal Service first class mail along with a cover letter, a copy of which is attached as Exhibit 4. The cover letter will identify the tracking numbers associated with the claims that are being paid.

29.     Any mailing returned to the Independent Fiduciary as undeliverable will be researched to determine a revised address if one is identifiable by reasonable and economically feasible measures. If a new address can be determined, a check will be reissued and mailing resent as described above.3

30.     Funds reflecting checks for Type 2 Claimants that remain uncashed 120 days from the date of issuance/reissuance of the checks, and checks for claimants for whom no revised address can be determined as set forth above, will be disbursed to the Unclaimed Property Fund of the state of the Type 2 Claimant's last known address following the applicable state's regulations. The Independent Fiduciary will maintain, for a period of six (6) years from the closure of these proceedings, records indicating to what state's Unclaimed Property Fund each unclaimed Type 2 Claim Amount was sent.

**c) Type 3 Claimants**

31.     Upon of the Court's Order Approving Plan of Distribution becoming final and non-appealable, the Independent Fiduciary will issue checks for the appropriate pro rata amounts to the

10

Type 3 Claimants. The checks will be valid for 120 days from the date of the checks. The envelope containing the check will be addressed to each Type 3 Claimant's address in the Independent Fiduciary's records and the envelope will be marked "Postmaster: Address Correction Requested/Please Forward." The mailing will be sent by United States Postal Service first class mail along with a cover letter. *See* Exhibit 5. The cover letter will identify the tracking numbers associated with the claims that are being paid pro rata.

32. Any mailing returned to the Independent Fiduciary with a forwarding address noted will be resent with a reissued check to the forwarding address noted on the returned envelope.

33. After 120 days, any checks (or reissued checks, if applicable) returned, refused, or uncashed/not deposited relating to Type 3 Claimants will be voided. The funds at issue with the voided checks will remain under the control of the Independent Fiduciary. The Independent Fiduciary will make recommendation to the Court regarding disposition and treatment of those funds at an appropriate time in the progression, toward closing, of the Benefit Fund Liquidation Proceedings.

### d) Type 4 Claimants

34. Upon the Court's Order Approving Plan of Distribution becoming final and non-appealable, the Independent Fiduciary will send a letter (*see* Exhibit 6) that will inform the Type 4 Claimant that there are no funds available for a distribution, pro rata or otherwise, to the Type 4 Claimant and that if funds do become available, the Independent Fiduciary will be in further contact with the Type 4 Claimant.

35. The envelope of the mailing to the Type 4 Claimant will be marked "Postmaster: Address Correction Requested/Please Forward." Any mailing returned to the Independent

11

Fiduciary with a forwarding address noted will be resent to the forwarding address noted on the returned envelope.

### I. Participant Protections Resulting From Type 3 Claimant/Medical Provider Acceptance of an Interim Distribution

36. Consistent with the Participant protections provided under the All Writs Act Injunction Order previously entered (D.E. #38), cashing/depositing a distribution, pro rata or otherwise, by a Type 3 Claimant a) constitutes agreement by that Medical Provider to look solely to the AEU Benefit Plan and its Participating Plans for payment of unpaid Plan Responsibility Amounts in accordance with the Orderly Plan of Liquidation and b) establishes a prohibition upon the Medical Provider from reporting negative credit information or pursuing collection activity regarding the Participant as to any unpaid Plan Responsibility Amount. A Medical Provider which cashes an Interim Distribution would not waive its right to receive further interim distributions or a final distribution at the closing of these proceedings. Cashing of an Interim Distribution also will not waive the Medical Provider's ability to pursue a Participant for "Member Responsibility"/"Patient Responsibility" amounts nor prohibit the reporting of negative credit information or pursuit of collection activity based <u>solely</u> on amounts of "Member Responsibility"/"Patient Responsibility" owed by the Participant to the Medical Provider. Should a Medical Provider refuse or fail to cash/deposit the Interim Distribution payment within 120 days of the date of the check, the check payment will be cancelled and the funds held by the Independent Fiduciary for further disposition upon recommendation made to the Court. By refusing or failing to cash/deposit the Interim Distribution check within the 120 day period, the Medical Provider foregoes receipt of that percentage of its unpaid claims represented by the Interim Distribution. Any Medical Provider who does not cash/deposit a distribution check will still be bound by the

restrictions set forth in the All Writs Act Injunction Order (D.E. #38) until the closure of these liquidation proceedings or until further Order of the Court.

  37. Consistent with the Participant protections provided under the All Writs Act Injunction Order previously entered (D.E. #38), the cashing of an Interim Distribution check by a Type 3 Claimant shall:

    a) prohibit collection activities and actions as against Benefit Plan Participants which include, but are not be limited to, the filing of a lawsuit or other adverse action, threatening to file a lawsuit, attempting to assert any other law, regulations or rules to attempt to collect any Plan Responsibility Amount, attempting to enforce any forms or other documents signed by the Participant or other person to obtain the Medical Provider's services asserting any alleged right to collect amounts remaining due which were the responsibility of the Benefit Plan; and

    b) prohibit the negative credit reporting as to any Participant of any Plan Responsibility Amount remaining due, the selling or transfer in any manner of such debts to any other person or entity, and any request for payment of any type including but not limited to sending a statement, collection letter or other request for payment.

### J. Notification to Type 3 Claimants of Release and Prohibitions

  38. Type 3 Claimants received either letter or postcard mailings giving notice that the Independent Fiduciary's Plan of Distribution would, if ordered by the Court, include the limitations and prohibitions set forth in Paragraphs 37 and 38. Moreover, Type 3 Claimants will be notified of the limitations and prohibitions set forth in Paragraphs 37 and 38 by the cover letter which will be sent with the Interim Distribution pro rata distribution checks. The letter that will accompany the pro rata interim distribution will direct the Type 3 Claimant to review the Court's Order Approving Plan of Distribution which established the limitations and prohibitions, upon Medical

Providers who cash their distribution and will set forth how to locate that Order and this Plan of Distribution. A copy of the letter is attached as Exhibit 5.

### K. Notification of Participants Regarding Medical Provider's Acceptance of Interim Distribution

39. As soon as practicable after the expiration of the 120 day period for the Medical Providers to accept the Interim Distribution, the Independent Fiduciary will correspond with the Benefit Plan Participants informing them as to whether Medical Provider(s) accepted the Interim Distribution. The Independent Fiduciary will send the above-referenced correspondence to the applicable Participants based upon the most current address information on file with the Independent Fiduciary. To the extent that mailings are returned as undeliverable, the Independent Fiduciary will use reasonable and economically feasible measures to locate the Participants and, if a revised address is so identified, will resend the correspondence to that revised address.

### L. Requests for Replacement Medical Claims Determination Statements

40. Participants and Medical Providers were provided MCDSs with the applicable tracking numbers in May/June, 2018. At the time a determination on an appeal was issued, the Participants and Medical Providers who appealed their claims also received amended MCDSs if the appeal determination or related reconsideration altered the previously issued MCDS. Additionally, if an audit by the Independent Fiduciary identified an issue with an MCDS, an amended one was issued with a cover letter.

41. Due the costs and expense associated with sending replacement MCDSs and the limited assets of the Benefit Plan Liquidation Estate, if a Participant or Medical Provider requests another copy of their MCDSs, the Independent Fiduciary will handle the requests as follows:

a) The Independent Fiduciary will establish a dedicated email box (aeu@receivermgmt.com) and telephone line (615-370-5733) with voicemail to permit Participants and Medical Providers to request replacement MCDSs. The telephone line will direct Participants and Medical Providers to request via email the replacement MCDSs statements by providing the tracking numbers and the contact information for the authorized person or entity to receive the MCDS (including the name, address and telephone number). The Independent Fiduciary will post and provide a form for Participants and Medical Providers to request the replacement MCDSs.

b) The Independent Fiduciary will respond to requests from Participants and Medical Providers by encrypted email. No MCDS statement will be faxed or mailed by regular mail.

## M. Ability to Seek Additional Relief

42. The Independent Fiduciary reserves the ability to further move the Court to address other claims for relief pursuant to the Court's retention of jurisdiction under the Preliminary Injunction entered in this action (D.E. #59 ¶ 25 at p. 13) and under the All Writs Act (28 U.S.C. §1651).

    Robert E. Moore, Jr.
    President of Receivership Management, Inc.
    Court-Appointed Independent Fiduciary of
    the AEU Holdings, LLC Employee Benefit
    Plan and Participating Plans

Date: _____